Liisa A. Hancock, #11244
JEFFS & JEFFS, P.C.
90 North 100 East
P.O. Box 888
Provo, UT, 84603
Telephone: (801) 373-8848
Email: lahancock@jeffslawoffice.com
*Attorney for Thorpe Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DIVISION, DISTRICT OF UTAH

| | |
|---|---|
| JANENE THORPE, an individual; CHRISTOPHER THORPE, Sr., an individual, CHRISTOPHER THORPE, Jr., an individual; CHARLIE THORPE, an individual, <br><br> Plaintiffs, <br> vs. <br><br> CEDAR HILLS CITY, a government entity; AMERICAN FORK CITY, a government entity; AMERICAN FORK CITY POLICE DEPARTMENT, a government entity; DARREN FALSLEV, in his official capacity and individual capacities AMERICAN FORK CITY POLICE CHIEF; C. SLATE BLACKBURN, in his official and individual capacities; PHILLIP W.S. CRAIG, in his official and individual capacities; JOSEPH A. NORDIN in his official and individual capacities; JENNIFER L. NAKAI, in her official and individual capacities; KANDACE N. KONECNY, in her personal and individual capacities; SETH WAITE in his official and individual capacities; SERGEANT ADAMSON in his official and individual capacities and JOHN or JANE DOES 1-15, in their official individual capacities, <br><br> Defendants. | **Case No. 2:23-CV-00242** <br><br> **COMPLAINT** <br> **and** <br> **JURY DEMANDED** <br><br> Judge David Barlow <br><br> Magistrate Judge _____ |

Page 1 of 90

## PRELIMINARY STATEMENT

This is a civil rights action in which Plaintiffs seek relief for Defendants' violation of rights guaranteed by the United States Constitution, specifically the Fourth and Fourteenth Amendments as well as the Utah Constitution. These rights are further clarified and supplemented by the Civil Rights Act of 1871, codified as 42 U.S.C. §§ 1983 and 1988. Plaintiffs seek compensatory and punitive damages, affirmative and equitable relief, attorney fees, costs, interest, and any other relief as this Court deems just and equitable. This matter also involves state causes of action for pattern of unlawful behavior and intentional infliction of emotional distress for which Plaintiffs seek compensatory and punitive damages, affirmative and equitable relief, attorney fees, costs, interest and any other relief as this Court deems just and equitable.

## JURISDICTION AND VENUE

1. This is an action for injunctive relief and damages pursuant to 42 U.S.C. §§ 1983 and 1988 based upon the multiple and continuing violations of Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution.

2. This Court has jurisdiction over Plaintiff's federal claim under 28 U.S.C. §§ 1331, 1343, 1983, and 1988. Jurisdiction also exists under the Declaratory Judgment Act 28 U.S.C. § 2201(a) and 2202.

3. This Court has supplemental jurisdiction over Plaintiff's Utah state law and common law claims, which are based on Utah state law under 28 U.S.C. §1367.

4. The claims made in this Complaint occurred and arose in the State of Utah, in this District, and in the Central Division. Venue is therefore proper under 28 U.S.C. §§ 1391 and 1331.

5. Plaintiff is seeking damages under federal law pursuant to the claims for relief specified below, in amounts to be proven at trial.

6. Plaintiff is seeking damages under Utah state law pursuant to supplemental jurisdiction pursuant to the claims for relief specified below, in amounts to be proven at trial.

7. This Court has authority to award costs and attorney fees pursuant to 42 U.S.C. § 1988 and as allowed under Utah state law.

**PARTIES**

8. Plaintiff Janene Thorpe ("Janene") is an individual residing in Utah County, Utah at 9267 N. Canyon Heights Drive, Cedar Hills, Utah ("Thorpe Property").

9. Plaintiff Christopher Thorpe, Sr ("Chris") is an individual residing in Utah County, Utah at 9267 N. Canyon Heights Drive, Cedar Hills, Utah.

10. Plaintiff Christopher Thorpe, Jr. ("Taylor") is an individual residing in Utah County, Utah. Taylor is the son of Janene and Christopher Sr., and lives with Janene and Christopher Sr.

11. Plaintiff Charlie Thorpe ("Charlie") is an individual residing in Utah County, Utah. Taylor is the son of Janene and Christopher Sr., and lives with Janene and Christopher Sr.

12. Cedar Hills City ("Cedar Hills") is a political subdivision of the State of Utah, which may be sued in its own name pursuant to law. The policies of Cedar Hills directly caused the Plaintiffs harm, justifying an award of damages against Cedar Hills in Plaintiffs' favor.

13. American Fork City ("AF City") is a political subdivision of the State of Utah, which may be sued in its own name pursuant to law. The American Fork Police Department ("AFPD") is an agency/department of the AF City who have agency jurisdiction over the Cedar Hills area by virtue

of agreement with Cedar Hills City. The policies of AF City and AF Police directly caused the Plaintiffs' harm, justifying an award of damages against the City in Plaintiff's favor.

14. The American Fork Police Department ("AFPD") is an agency/department of AF City who has agency jurisdiction over the Cedar Hills area by virtue of agreement with Cedar Hills City. The policies of AFPD directly caused the Plaintiffs' harm, justifying an award of damages against the AFPD in Plaintiff's favor.

15. Defendant Chief of Police Darren Falslev's ("Chief Falslev"), authority to act was derived from Utah state law and/or the commands and directives of his superiors, and therefore he is a person liable under 42 U.S.C. § 1983. At all times material hereto, he was responsible for enforcing the laws, rules and of AFPD and for Cedar Hills. Chief Falslev is sued in his official and personal capacity.

16. Defendant Officer C. Slate Blackburn's ("Officer Blackburn"), authority to act was derived from Utah state law and/or the commands and directives of his superiors, and therefore he is a person liable under 42 U.S.C. § 1983. At all times material hereto, he was responsible for enforcing the laws, rules and polices of AFPD and for Cedar Hills. Officer Blackburn is sued in his official as well as his personal capacity.

17. Officer Phillip W.S. Craig's ("Officer Craig") authority to act was derived from Utah state law and/or the commands and directives of his superiors, and therefore he is a person liable under 42 U.S.C. § 1983. At all times material hereto, he was responsible for enforcing the laws, rules and polices of AFPD and for Cedar Hills. Officer Craig is sued in his official as well as his personal capacity.

18. Officer Joseph A. Nordin's ("Officer Nordin") authority to act was derived from Utah state law and/or the commands and directives of his superiors, and therefore he is a person liable under 42 U.S.C. § 1983. At all times material hereto, was responsible for enforcing the laws, rules and polices of AFPD and for Cedar Hills. Officer Nordin is sued in his official as well as his personal capacity.

19. Sergeant Jennifer L. Nakai's ("Sergeant Nakai") authority to act was derived from Utah state law and/or the commands and directives of her superiors, and therefore she is a person liable under 42 U.S.C. § 1983. At all times material hereto, she was responsible for enforcing the rules and policies for Cedar Hills. Sergeant Nakai is sued in her official as well as her personal capacity.

20. Detective Kandace N. Konecny's ("Detective Konecny") authority to act was derived from Utah state law and/or the commands and directives of her superiors, and therefore she is a person liable under 42 U.S.C. § 1983. At all times material hereto, she was responsible for enforcing the laws, rules and polices of AFPD and for Cedar Hills. Detective Konecny is sued in her official as well as her personal capacity.

21. Officer Seth Waite's ("Officer Waite") authority to act was derived from Utah state law and/or the commands and directives of his superiors, and therefore he is a person liable under 42 U.S.C. § 1983. At all times material hereto, he was responsible for enforcing the laws, rules and polices of AFPD and for Cedar Hills. Detective Murray is sued in his official as well as his personal capacity.

22. Sergeant Adamson's ("Sergeant Adamson") authority to act was derived from Utah state law and/or the commands and directives of his superiors, and therefore he is a person liable under 42 U.S.C. § 1983. At all times material hereto, he was responsible for enforcing the laws, rules

and polices of AFPD and for Cedar Hills. Detective Murray is sued in his official as well as his personal capacity.

23. Collectively, the above-named Defendant Chief, Officers, Lieutenants, Detectives, and Sergeants are referred to at times as ("the AFPD Officers").

24. Defendants John/Jane Does 1-15 are other unnamed City, Department, and/or State employees/entities who, in addition to named Defendants, are responsible for acts alleged herein.

25. This action is brought against all defendants including Doe Defendants in their individual and official capacities. Their authority to act was derived from AF City, Cedar Hills City, AFPD, Utah state law, Federal Law and/or the commands and directives of their superiors. All acts of the individuals and entities were performed under color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Utah and the Federal Government.

26. Plaintiffs allege that any required statutory Notice of Claim required of any of the claims in this Complaint, as they deal with federal and/or state constitution violations, as state notice of such claims was provided and complied with.

## BACKGROUND FACTS

*General Background*

27. The AFPD Officers named herein are direct representatives of the American Fork Police Department and are under the direct command of the then American Fork Police Chief, Darren Falslev.

28. Chris and Janene Thorpe with their two sons, Taylor and Charlie moved into their home, the Thorpe Property, in Cedar Hills on or about June 21, 2016.

29. The Thorpes soon began experiencing aggression and harassment from their backyard neighbors, Edward and Maria Sanches (individually "Edward" and "Maria", collectively "Sanches") at 9254 Emerald Lake Cove, Cedar Hills.

30. The rear of the Thorpe Property abuts the middle part of the rear of the Sanches Property. The Sanches Property extends across the entirety of the back boundary line and beyond both sides of the Thorpe Property. *Ex. A Parcel Map.*

31. Thorpe backyard extends west from the home ("Upper Backyard"), before sloping sharply down to their lower yard ("Lower Backyard"), which are separated by a retaining wall with an approximate 10-foot height difference. *Id.*

32. Before the Thorpes moved in, the Sanches treated the Lower Backyard as their own: planting trees on/across the boundary line; placing a shed partly on the Lower Backyard; built and maintained the retaining wall; maintained the Lower Backyard; among other acts of control.

33. The Thorpes' use of the Lower Backyard opposed the Sanches' open intent to claim it.

34. The Sanches' escalated their acts of challenge to the Thorpes use of the Thorpe Lower Backyard: removing/moving their items, changing boundary line markers, trespassing and refusing to move off the property; harassing the Thorpes when using their Lower and Upper Backyard— including going onto the Lower Backyard to observe, record, and inspect the Thorpes in their yard and windows without permission and against repeated requests to stop; placing surveillance cameras (including in places to record the Thorpe Property otherwise unobservable to the Sanches); among other acts threatening the Thorpes' use of their backyard.

35. Cedar Hills, AFPD, and AFPD Officers early on took sides supporting and encouraging the Sanches' actions and actively participating in the Sanches actions against the Thorpes.

36. Most of the Sanches claims against the Thorpes occurred on the Thorpes' Lower Backyard: claims the Thorpes were killing trees on "Sanches Property"; dumping yard waste on "Sanches Property"; claiming trespass by the Thorpes; among other allegations—which instead were all on the Thorpe Lower Backyard the Sanches were trying to take from the Thorpes.

37. Cedar Hills, AFPD, AFPD Officers never investigated who owned the Lower Backyard.

38. Cedar Hills, AFPD, AFPD Officers threatened the Thorpes with fines, citations, arrest for the Thorpes' use of their own property while ignoring and doing nothing about violations by the Sanches of trespass, violation of privacy, stalking, and other unlawful acts by the Sanches.

39. Cedar Hills, AFPD, AFPD Officers almost never asked, sought out or listened to the Thorpes version of the allegations.

40. AFPD, AFPD Officers rarely investigated and never properly investigated the Sanches allegations, falsified "evidence", sought charges against Thorpes without sufficient evidence.

41. AFPD, AFPD Officers rarely took the Thorpes calls, if they did, did not return or follow up with the Thorpes, and left the Thorpes without access to AFPD services.

42. AFPD, AFPD Officers told the Thorpes to not call or use other emergency services.

43. AFPD, AFPD Officers exhibited a bias against the Thorpes.

44. AFPD, AFPD Officers knew both the Thorpes and the Sanches videoed backyards, with the Sanches video/surveilling the entirety of the Thorpe Lower and Upper Backyard, and into their home, but failed to request this evidence in their investigations of alleged Thorpe actions.

45. AFPD's failure to take corrective action against the Sanches' bad acts while addressing most, if not all, of the Sanches' complaints against the Thorpes, encouraged the Sanches to continue and increase their onslaught of accusations and claims against the Thorpes.

46. Cedar Hills, AFPD, AFPD Officers' responses to Sanches' allegations by threatening, intimidating, and failing to address the Sanches' bad acts caused the Thorpes to not be able to use, or to minimally use their backyard because of fear of new allegations, citations, and intimidation by AFPD as well as the continued sanctions of the Sanches' violation of the Thorpes' privacy.

47. The Sanches filed a quiet title action ("Quiet Title") to try to legally condone their unlawful acts to take the Lower Backyard—the complaint included a trespass action against the Thorpes for using their own Lower backyard. *Case #180300305, Provo 4th District.*

48. The Thorpes counterclaimed and the Parties ultimately stipulated to the boundary line as asserted by the Thorpes and as represented by a 2/1/2019 Withers Survey.

49. Unhappy with not taking the Lower Backyard, the Sanches increased their harassment of the Thorpes and doubled down on their efforts to use AFPD, AFPD officers in their efforts.

50. AFPD and AFPD Officers continued improperly construing "evidence" against the Thorpes, falsifying it in favor of Sanches' allegations while not properly investigating/verifying.

51. AFPD and AFPD Officers continued to not respond or do anything about illegal actions of the Sanches toward the Thorpes and most times intentionally did not take the Thorpes' calls.

52. Threats by AFPD, AFPD Officers increased, *i.e.*, Thorpes only called non-emergency dispatch for issues with the Sanches dispute. Sergeant Nakai claimed they called 911 and threatened them with retaliation and charges if they did call 911 or complained.

53. AFPD, AFPD Officers rarely picked up the phone when the Thorpes called.

54. The few times AFPD did pick up, they did not send officers to investigate, otherwise follow up, or review information from the Thorpes.

55. When AFPD Officers did come, they blamed the Thorpes, threatened them, or cited, them while taking no or nominal actions to address the Sanches' actions. Moreover, AFPD allowed the Sanches to continue to video the Thorpes on their property and into their home, even coming onto the Thorpe property to do so.

56. For example, Sergeant Nakai threatened the Thorpes with citations unless they immediately changed lighting on their Lower Backyard (placed to protect against the false allegations) to prevent any ambient lighting going onto the Sanches Property.

57. Sergeant Nakai, Detective Konecny, Officers Craig and Blackburn ignored video evidence showing no wrongdoing by the Thorpes to yell, intimidate, threaten, assault, and otherwise expressed disbelief of the Thorpes.

58. Cedar Hills also refused to take action when contacted by the Thorpes but also supported the Sanches' wrongdoing through its employees' actions.

59. Cedar Hill's Mayor, Denise Anderson, is a close friend of the Sanches and they are understood to regularly socially do things together.

60. AFPD, AFPD Officers, Chief Falslev allowed AFPD to be tools used by the Sanches to unlawfully claim the Thorpe Lower Backyard by:

    a. Allowing AFPD, AFPD Officers to create reports against the Thorpes when they legally used their backyard and creating incorrect reports.

    b. Sanctioning false allegations against the Thorpes by failing to investigate or verify.

    c. Encouraging ongoing harassment and claims by the Sanches by responding to and finding ways unsupported by evidence to support the Sanches' claims.

    d. Allowing the Sanches continued video and physical trespass to continue.

e. Failing to take any action against the Sanches but allowing constant violation and obtaining of videos of the Thorpes that the Sanches could not otherwise see or view.

f. Sanctioning the violations of the Thorpes' privacy and property rights, preventing the Thorpes' regular use of their property and right to be secure in their home.

g. Encouraging and sanctioning the Sanches' unlawful acts by accepting that video surveillance and then interpreting it contrary to its substance in favor of the Sanches.

h. Encouraging the Sanches ongoing harassment by writing reports consistent with the Sanches complaints without proper independent investigation and verification.

i. Creating an environment where AFPD and AFPD officers believe all complaints by the Sanches and immediately reject, presume the Thorpes act wrongfully.

j. AFPD's support and condoning of the Sanches has resulted in the Thorpes being unable to use their Upper and Lower Backyards, to perform more than minimal yardwork, or to enjoy other normal uses of their backyard and they have lost both the enjoyment and use of a significant part of their property—let alone the caution they must use in draping their windows to prevent intrusion into their home.

61. Cedar Hills, AFPD, AFPD Officers fully adopted the ideology of the Sanches as the "good guys" and the Thorpes are the "bad guys" and acted, promoted and created a culture supporting this ideology in their treatment of the Thorpes, and by doing so violated Utah Law, the Police Officer Code of Conduct, and AFPD's own internal Code of Conduct, policies, and rules.

62. AFPD, Chief Falslev, AFPD Officers early on stopped using best practices in their actions toward the Thorpes and began denying the Thorpes of their United States and Utah Constitutional Rights, as well as creating a pattern and policy in the AFPD that AFPD Officers were encouraged

under the color of Utah state law to not follow state and federal law, best practices, code of police conduct and other required policies as to Janene and the Thorpes.

63. Cedar Hills, AFPD, Chief Falslev and the AFPD Officers bought into the Sanches' adept interpersonal skills to malign the Thorpes and create an expectation and practice within the AFPD to accept, adopt and falsify "evidence" supporting negative treatment of the Thorpes.

64. The Thorpes' direct and straight forward manner is not culturally accepted, disliked by AFPD and results in the Thorpes being often misunderstood and mischaracterized.

65. AFPD Officers Nakai, Waite, Craig, Blackburn, Konecny, and Adamson intentionally and wrongfully interpreted the Thorpes' straight forward, frank manner and attempts to understand what was happening to them as being obstructive and non-compliant.

***Specific Police Timeline and Actions***

66. On 1/13/21 using Sergeants Nakai, Adamson, and Nordin's reports, Cedar Hills in Case #211100077 issued three charges against Janene: (1) U.C.A. §76-10-2701, littering on public/private land, C Misdemeanor; (2) U.C.A. §76-10-801, public nuisance, B Misdemeanor; (3) U.C.A. §76-10-102(4)(C), disorderly conduct after being asked to cease, B Misdemeanor.

67. Janene plead not guilty to the summons served on 1/25/21. All three charges were dismissed on February 14, 2021 as unsupportable.

68. For Charge 1, U.C.A. §76-10-2701 requires that a person throw items onto another's property without the owner's permission. Charge 1 was unsupported by the information, officer reports, and evidence. The officer reports misstated what the video evidence showed. The information and officer reports did not address the statute's elements and the statute is not applicable to a person's own property. No one approached Janene or asked her to cease any acts.

69. For Charge 2, U.C.A. §76-10-804 requires a finding of a public nuisance—which cannot be found on private property not viewable by public. Moreover, the evidence again was misstated and did not support the charge.

70. For Charge 3, U.C.A. §76-9-102(4) requires that a person did not comply with an officer's request to stop and again requires a public place. The information and officer reports did not address the statute's elements and the statute is not applicable to a person's own property. No one approached Janene or asked her to cease any acts.

71. These charges were forwarded by AFPD and AFPD Officers believed to be Nakai, Nordin, and Adamson knowing there was no evidence against the Thorpes.

72. Moreover, dates supplied by Nakai, Nordin, and Adamson did not align with claims by the Sanches, *i.e.*, cited dates between 6/5/20 and 8/8/20 but Count 1 cites to 9/19/20.

73. Nakai, Nordin, and Adamson's reports claim they reviewed video evidence, but the Officers' summaries of video and other evidence, demonstrates an intentional failure to correctly summarize and describe evidence against the Thorpes or at a minimum gross or reckless negligence and failure to appropriately investigate and analyze the "evidence" and "allegations".

74. An AFPD Case #20AF0360 initiated on 7/4/20 by Sergeant Adamson against Janene was based on Sanches' complaint of dog feces, orange peels, and dirty diapers in their backyard where they provided videos purportedly identifying Janene as the culprit.

75. The video shows nothing linking anyone to the alleged acts—which is strange when the Sanches constantly video their property, the Thorpe Property, and the Thorpes. The only "proof" is Edward's claiming the culprits must be the Thorpes in retaliation to the Quiet Title Settlement.

76. Proper investigation by AFPD Officers would have shown that the Sanches lost the Quiet Title, the Lower Backyard was the Thorpes, had to move their shed, were told to stop surveilling/trespassing on Thorpe Property (which kept doing) and that it was the Sanches who were retaliating.

77. Detective Murray followed up with Edward, but made no other investigative efforts.

78. No one from AFPD asked, discussed, requested any information from the Thorpes.

79. Detective Murray's failure to investigate was consistent with AFPD, Chief Falslev and AFPD Officers' policy and pattern to believe and accept the Sanches side in any dispute between the two neighbors and to find reasons to charge the Thorpes.

80. Detective Murray's report says that Edward knew he had no proof for AFPD to act.

81. Detective Murray stated he watched all of Edward's video and saw no evidence of a perpetrator and that there was no probable cause of a crime.

82. Yet, Detective Murray affirmatively acted against Janene and submitted the case to Cedar Hills' prosecutors for screening and charges were made against Janene.

83. No one else from AFPD asked, discussed, requested any information from the Thorpes.

84. AFPD and AFPD Officers knew both the Thorpes and Sanches videoed their yards (the Sanches surveilling both) and should have requested videos from both.

85. Had AFPD done so, they would have learned that the neighborhood is frequented by dogs, coyotes, raccoons, and other wild animals that defecate on the neighborhood yards as captured on video by the Thorpes and learned the Sanches' disabled son wears adult diapers.

86. AFPD and Sergeants Nakai and Adamson, Detective Murray and Officer Nordin chose to follow AFPD's pattern and policy by seeking charges against the Thorpes without evidence.

87. AFPD and AFPD Officers, intentionally and willfully chose to use their authority of law to abuse the legal system to threaten and traumatize the Thorpes because of their biases.

88. On July 15, 2020, Cedar Hills' prosecutor declined filing charges.

89. Unsatisfied the prosecutor, the Sanches continued their ongoing barrage of complaints against the Thorpes to the AFPD—including Officer Nakai—who continued to welcome and entertain their complaints while ignoring and not acting on the Thorpes.

90. The Sanches reasserted the same or similar complaints against the Thorpes. This time adding that someone threw chicken bones and other garbage on their property.

91. Once again, no evidence showed any wrongdoing by any of the Thorpes.

92. The Sanches then alleged allegations that the Thorpes threw a rock at Maria.

93. The Sanches provided a "new" video with a "media created" on 9/16/2020 @ 12:44 claiming new wrongdoing by Janene even though the video was used in 7/9/2020 complaint.

94. Responding to the "new" incident, Sergeant Nakai visited the Sanches in their home.

95. Sergeant Nakai's reported three things: (1) the trash complaint (feces, food, adult diapers with excrement); (2) rocks thrown at Maria; and (3) verbal abuse toward Maria done by Janene.

96. There is no video or audio of Janene or any of the Thorpes performing any of the actions.

97. Edward also played a phone video for Sergeant Nakai, but said it did not show what happened and so narrated it despite the video showing opposite of what he claimed.

98. Seargent Nakai intentionally did not provide the full video in discovery requests associated with Case #211100077, instead providing an edited zoomed in phone video, which shows someone tossing yard waste underhand onto the Thorpe Lower Backyard, but not who.

99. Sergeant Nakai asked for charges despite no investigation or contact with the Thorpes, and did not request video from the Thorpes, knowing they would have clarifying video.

100. The Sanches then alleged Janene intentionally sprayed Edward with water.

101. Again, the video provided by the Sanches video did not show what they allege—it shows water streaming from the Upper to the Lower Backyard directed at the bottom of tree trunk on the Thorpe property the Quiet Title Settlement required them to maintain. There is the expected spray passing both sides of the trunk onto the Sanches property.

102. Edward stands several feet to the north away from the stream. Filming, he walks directly into the stray spray around the trunk—no change in the stream was made. He then yells, "juvenile and pathetic". The spray is immediately redirected away.

103. The person spraying is never shown and never heard to talk or yell at Edward.

104. But Edward yells at the sprayer to "get a life". The water is turned off.

105. Edward stays and continues to video. Seeing Brittney Thorpe in the Upper Backyard, he yells at her: "dumbass daughter". No sound or action comes from above.

106. Later, Chris is heard above asking someone, "do you need more dirt anywhere?"

107. The camera turns to the property line showing Maria videoing the Upper Backyard; then turns up, showing Chris doing yardwork and Edward yells "Oh boy, tough guy. Tough guy".

108. Going closer, Edward yells at Brittney: "Hey Cutie, how are ya?" "You're so intimidating"

109. The Thorpes do not respond or engage during the entire incident.

110. AFPD Officers, specifically Sergeant Nakai, reviewed this video to find Janene (although never shown) to be the aggressor (although never shown) and tries to charge her.

111. The Thorpes' videos from the same time period confirm they were not the aggressors.

112. Sergeant Nakai intentionally abused her authority under the color of Utah state law, picked her side, pre-determined the Thorpes had to be at fault, falsified the evidence in her report, failed to investigate property and wrongfully attempted to charge Janene knowing it was unsupported.

113. The Thorpes did not call the police on Edward's trespass and harassment at this time, because they knew AFPD and AFPD Officers would not respond and would turn it on them.

114. Officer Nordin states he reviewed the video, but he also misstates and falsifies the evidence claiming among other things that Edward asked Janene to stop and that Brittney said rude things to him, despite no video evidence showing the same.

115. Upon information and belief, Officer Nordin was with AFPD since the Sanches complaints started, knew AFPD's attitude, policy and treatment toward the Thorpes and acted in step with it.

116. Upon information and belief, Officer Nordin regularly worked with and was trained by Sergeant Nakai as they were coworkers in the same office.

117. Officer Nordin, Officer Nakai, AFPD and AFPD Officers pattern and policy against the Thorpes is consistent in his intentional, knowing, or gross negligence in his false report.

118. Like Officer Nakai, Officer Nordin knowingly, intentionally, or with gross or reckless negligence made no effort to correctly investigate prior to requesting charges against Janine.

119. Upon information and belief, Office Nakai and Nordin intentionally wrote their reports in a manner to get Janene charged with something contrary to the evidence shown.

120. After the charges were dismissed for lack of evidence, the Sanches tried again. On 4/22/21 Maria called AFPD with a new complaint. This time, Officer Waite took Maria's call.

121. Upon information and belief, Officer Waite had been with AFPD during prior allegations made by the Sanches against the Thorpes, had knowledge of AFPD's attitude and policy and treatment of the Thorpes, as well as worked regularly with Sergeant Nakai as they were coworkers in the same office.

122. Upon information and belief Sergeant Nakai was a superior to Officer Waite.

123. Officer Waite created a report alleging Janene threw rocks at Maria in her backyard.

124. Officer Waite reported he viewed the Sanches' video, but he summarized incorrectly and falsely to make it appear that Janene had thrown rocks at Maria.

125. The video Officer Waite reviewed, IMG_3169~video.MOV, does not match his report.

126. There are no sounds of pinging rocks as he claims nor is Janene shown throwing rocks.

127. Maria is heard saying "THIS SHOULD GET JANENE!" before she puts down her phone. Less than 3 seconds later, a rock comes into view from the right-hand side of the screen to hit the rock wall—completely on the Thorpe's property—about 5 feet below Janene kneeling in the Upper Backyard, from where she could not have thrown the rock the direction it traveled.

128. Later Janene is bent over, head down behind bushes picking up and tossing something underhand onto her Lower Backyard and not near Maria, who has not moved.

129. Despite saying she feared injury, Maria did not move or run away.

130. Officer Waite's summary does not match the actual footage he claims to have reviewed.

131. Officer Waite requests no additional footage from the Thorpes or Sanches and makes no attempt to communicate with the Thorpes regarding the allegations.

132. The Thorpes' videos of the same show Janene did not intentionally throw things at Maria.

133. The disparity between the video provided by Maria and Officer Waite's summary is consistent with prior summaries prepared by Officer Nordin, Detective Nakai and Murray and consistent with AFPD and AFPD Officers practice and policy toward the Thorpes.

134. Case #21AF03282 was generated the same day dispatch received the complaint, on 4/22/21. But Officer Waite waited to generate his report until 4 days later, 4/26/21.

135. Officer Waite excuses not contacting Janene because of time constraints and call volume, yet he took time to walk the property in addition to review Maria's story and video.

136. The next day, 4/23/21, Officers Craig and Blackburn assaulted Janene and the Thorpes in their home and Officer Waite only writes his report after the assault on 4/26/21 in a manner that falsifies the evidence and appears to be written to justify Officers Craig and Blackburn actions by claiming Janene was dangerous.

137. Not happy that nothing was done on her 4/22/21 complaint, Maria made new claims of rock throwing against Janene on 4/23/2021—giving Officer Blackburn the 4/22/21 video and a new video.

138. In the new video, no rocks are seen, but something lands on the Thorpe property 10 feet away from Maria.

139. Maria stands at the edge of the property where she claims rocks were being thrown at her, but does not move or run, or show any concern or fear of danger.

140. Officer Blackburn reports "[t]he video recorded on 4/23/21 was unable to catch a suspect however you can clearly hear multiple loud thuds landing near where Maria was standing."

141. Nothing shows where items causing the "thuds" allegedly landed or came from.

142. The Sanches provide no other video despite having cameras trained on both yards.

143. Contrary to Officer Waite's claims that AFPD was too busy to call Janene on the 4/22/21 claims, Officers Blackburn and Craig responded to the Maria's 4/23/21 claims, prepared the citation, and went to serve the Thorpes to serve the citation—but again sought no video from either the Thorpes or Sanches or no explanation from the Thorpes, despite no imminent harm preventing them from making a thorough investigation.

144. Officer Blackburn and Craig's intent was to interpret and falsify facts against Janene to justify a citation as they had an animus toward Janene.

145. If they had properly investigated the complaint, they would have found that Janene was not even home at the time the alleged actions occurred on 4/23/21—between about 3 and 7 p.m.

### AFPD Unlawful Entry and Assault on the Thorpes

146. On 4/23/2021 Officers Blackburn, Craig, and Waite, determined to cite Janene based solely on the questionable allegations of Maria and with no identifiable perpetrator.

147. With insufficient evidence and no proper investigation, Officer Blackburn created the citation with 2 charges against Janene: (1) Assault Attempt to do Bodily Injury to Another, 76-5-102(1)(A) and (2) Disorderly Conduct After Being Asked to Cease, 76-9-102(4)(B).

148. In 2021, U.C.A. §76-5-102(1) defined assault as: "(a) an attempt, with unlawful force or violence, to do bodily injury to another." (In 5/4/2022 U.C.A. §76-5-102 was amended).

149. Neither Janene or the Thorpes were informed of the citation or charges before service.

150. Neither Janene or the Thorpes were told to stop the alleged actions.

151. Officer Blackburn signed the sworn certification of the citation certifying and attesting to his "knowledge" and "belie[f]" that Janene committed the claimed offense.

152. But Officer Blackburn's report says he did not know who threw the rock.

153. Officer Blackburn's sworn certification identifies the charge for only the 4/23/21 allegation and for one incident—despite making two separate charges.

154. The Officers Blackburn and Craig then lazily ambled to the Thorpes' door on 4/23/21.

155. Both officers wore body cameras which started recording as they walked to the door.

156. The Thorpes also had a door camera which upon sensing movement also recorded.

157. Officer Blackburn knocked with his right hand holding Janene's citation in his left hand.

158. He returned his left hand to his side as he and Officer Craig waited for the door to open.

159. Officer Craig stood a few feet in front of the door, his thumbs snugly tucked in his vest.

160. Neither Officer discussed any safety concerns or plan as they approached and waited at the door. Both appeared relaxed and unconcerned about safety as they waited.

161. When Chris halfway opened the door, the Officers maintained their relaxed approach to the encounter—despite Chris' right hand remaining behind the door.

162. Chris was not asked to present his hands and it was clear that the Officers had no personal safety concerns as they maintained their same relaxed position.

163. Officer Blackburn stepped toward the door, introduced himself and asked for Janene.

164. Chris confirmed that Janene was home and Officer Backburn asked to talk to her.

165. Chris asked why they needed to speak to her.

166. Officer Craig said, "He could not talk to Chris because it is about Janene".

167. Officer Craig again, asks if he could talk to Janene?

168. Chris again asks, "Sure. Why?"

169. Because of Janene's medical issues, the repeated prior wrongful charges against Janene, prior threats and intimidation by AFPD Officers, their clear antagonism and disdain of the Thorpes, Chris was understandably cautious and concerned.

170. Janene was still emotionally and physically weak from her tumor surgery; shaky on her feet after relearning to walk; struggled with memory; easily confused; and easily talked into agreeing to untrue things that happened because she did not trust her memory.

171. Prior interactions with AFPD and her prior experience with being wrongfully charged with actions Janene did not do had significantly disturbed and impacted Janene emotionally, caused increased and harmful anxiety, stress, and emotional turmoil.

172. Chris was understandably protective of Janene and sheltered her from additional stressors that could potentially cause her additional medical and emotional harm.

173. Janene previously was served a citation by Officer Nordin who told the Thorpes that she did not have to sign or physically accept a citation. An officer could write on the citation her refusal to sign and leave it on the doorway and leave. So Chris question the Officers' need to talk to Janene directly since Officer Nordin told them they could leave the citation at the door.

174. Officer Craig told Chris he could not tell him why he wanted to speak with Janene.

175. Officer Craig's statement is incorrect and unlawful.

176. Chris also knew there was no requirement—no warrant was produced—for him to get his wife and said, "Okay, you don't need to talk to her either" and closed the front door.

177. Officer Blackburn and Officer Craig stood looking at each other for a moment.

178. Not being able to serve the citation how he wanted, Officer Craig rang the doorbell and knocked. He changed to an aggressive stance placing his left foot on the door threshold.

179. Mr. Thorpe partially opened the door once more and listened to Officer Craig.

180. Officer Craig said they just need to talk to Janene "real quick".

181. Chris asked if they were under arrest. The conversation continued as follows:

Officer Craig: "She is."
Christopher: "Why?"
Officer Craig: "We can't tell you that. It's not about you."
Christopher: "I'm her husband."
Officer Craig: "I understand, but it's about her, not about you."
Christopher: "She's under arrest?"
Officer Craig: "She is. So, we need to talk to her. She's not going to jail, but she is under arrest."
Christopher: "Is she going to be read her Miranda rights?"
Officer Craig: "She will. If we have questions for her."

182. Acting under the color of Utah state law, Officer Craig intentionally misrepresented that Janene was under arrest to get compliance by Chris instead of just leaving the citation.

183. Per Utah Law, including Utah Code §§ 77-7-1, 77-7-2 Officer Craig did not have a warrant and by law could not arrest Janene based on the charges in the citation and because no crime had been committed in his presence by Janene.

184. Chris had no obligation to open the door or to talk to the police or to get Janene.

185. Even if an arrest was warranted and justified, at this point, neither Officer had contact with Janene or had seen Janene and without contact an arrest had not been made.

186. Neither Officer showed or presented to Chris that they had a warrant allowing entrance into the Thorpe home to arrest Janene.

187. Neither Officer showed or presented to Chris that they had a warrant requiring Chris to bring Janene to the door or to allow extraction of Janene.

188. Even if an arrest was warranted and justified, Utah Code §§ 77-7-6 sets forth the manner of making the arrest:

(1) The person making the arrest shall inform the person being arrested of his intention, cause, and authority to arrest him. Such notice shall not be required when: (a) there is reason to believe the notice will endanger the life or safety of the officer or another person or will likely enable the party being arrested to escape; (b) the person being arrested is actually engaged in the commission of, or an attempt to commit, an offense; or (c) the person being arrested is pursued immediately after the commission of an offense or an escape.

189. Per Utah Code §77-7-7,

If a person is being arrested and flees or forcibly resists after being informed of the intention to make the arrest, the person arresting may use reasonable force to effect the arrest. Deadly force may be used only as provided in Section 76-2-404.

190. At this point, neither Officer informed Janene of his intention to arrest her; the cause of her arrest; or their authority to arrest her. Nor did they inform Chris.

191. No element of the requirements for Janene's arrest were present.

192. Mr. Thorpe told Officer Craig "One second" and attempted to close the door to his home.

193. Officer Craig stopped its closure moving his foot partially across the threshold, keeping his thumbs tucked under his vest while ordering: "Don't shut the door."

194. Chris knew his rights and knew that without a warrant, the Officers could not prevent him from closing his door or require further communication with the Officers.

195. Chris was not under arrest, nor was he accused of performing any criminal offenses at this time and the conversation continued:

Chris:          I am allowed to shut my door.
Officer Craig: No.
Chris:          Yeah, I actually am.
Officer Craig: No. (shakes head side to side—thumbs still tucked inside armpits of vest).
Chris:          You're allowed to move your foot.
Officer Craig: No. (shakes head side to side)
Chris:          Yes, you're allowed to move your foot.
Officer Craig: No (shakes head side to side). The citation is for assault,

> and I'm not letting you go in there…
> Chris:         Assault?
> Officer Craig: …to grab weapons. Yes. So, she can come out here and we can talk about it, or we can go in and get her.

196. The video shows Chris continued to speak calmly, exhibited no aggression, spoke rationally, and provided no evidence of violence or antagonism toward the Officers.

197. Both Officers continued to maintain a casual and unconcerned demeanor. Officer Craig's vocalizations showed his frustrations being unable to serve the citation his way on Janene.

198. Officer Craig now told Chris that: "the citation is for assault."

199. Not to be thwarted, Officer Craig escalated the situation, made unlawful statements, took unlawful actions, and increasingly made foundationless emotional accusations—i.e., claiming Chris closed the door to grab weapons basing the claims on the throwing rock citation.

200. Officer Craig's irrational escalation is consistent with AFPD and AFPD Officers pattern and policy of bias toward the Thorpes. AFPD, AFPD Officers, and Officer Craig had experience with the Thorpe/Sanches dispute, knew that the Thorpes were frustrated, called them out on inaccuracies of law and fact, but had never showed violence, weapons or any physical aggression.

201. Because of the constant threat and fear of wrongful actions against them, the Thorpes learned the law to know what AFPD and Officers could/could not do to protect themselves.

202. As a result of AFPD's prior actions, misrepresentations, Chris did not simply accept the Officers requests and instead sought understanding, questioned the validity of their actions.

203. As a result, AFPD and in this specific situation, Officer Craig and Blackburn did not appreciate Chris' knowledge of their rights and questioning of their requests.

204. Officer Craig's actions and statements of are exemplative of AFPD's pattern and policy against Janene and the Thorpes, including unlawful actions, misstatements of law, misrepresentations, and use of authority to wrongfully intimidate and threaten.

205. Officer Craig further escalated the situation by stating, "So, she can come out here and we can talk about it, or we can go in and get her" contrary to Utah law.

206. Officer Craig allowed Chris to keep the door partially closed and did nothing as Chris left the door and went inside out of Officer Craig's sight with no show of concern for his safety.

207. Officer Craig's report stated that he could see someone standing beyond the doorway through the crack between the door and the wall (Taylor Thorpe) but again showed no concern.

208. Chris returned with Janene—and, as expected, with no weapons in hand.

209. Officer Blackburn focused on getting Janene outside: "Alright Janene, if you can just come out and talk to us." Both she and Chris objected.

210. Not to be deterred, Officer Craig pointed to the threshold and ordered: "come right here." Both she and Chris objected again.

211. Chris said they would listen to the Officers, but would not talk to them per lawyers' advice.

212. At this point, neither Officer had informed Janene that she was under arrest. Nor was there any action or appearance that she was under arrest.

213. Officer Blackburn informed Janene of her citation for assault and disorderly conduct.

214. Janene told Officer Blackburn that she was not home during the times alleged earlier that day and could not have performed the alleged actions.

215. Officer Blackburn dismissed her statements and said, "So, you can sign this, or you don't have to." *Emphasis added.* His instructions mirrored Officer Nordin's in a prior citation service.

216. Janene knew she had no legal obligation to go to the threshold, outside, or sign the citation.

217. Chris asked "How long ago was this?" referring to the alleged incident.

218. Officer Craig, escalating again, shook his head back and forth and states, "No, you said you don't want to talk so we're not going to talk."

219. Officer Craig turned to Janene ordering her, "You can sign it" – referring to the citation.

220. Janene instead followed Officer Blackburn's statement she was not required to sign

221. Believing the interaction was done, there was no warrant, Janene was not under arrest, Chris said, "Okay, thank you. We'll talk to you later" and began to close the front door.

222. Officer Craig losing his cool, further escalated by moving his left foot further into the home to block the door from closing and stating, "Don't you…"

223. Officer Craig angrily turned back to Janene and demanded, "Sign it. It's a charge."

224. Chris calmly restated Officer Blackburn's prior statement, "We do not have to sign it" and was almost able to close the door.

225. Again, Janene was not told that she was under arrest nor read any of her Miranda rights.

226. Officer Craig blew up, yelling "You do not…", then threw both hands against the door, violently shoving it open and stormed into the Thorpe home.

227. Officer Blackburn simultaneously used his right foot to force the door open following Officer Craig through the door into the home.

228. The Thorpes did nothing to precipitate the Officers' escalation and aggressiveness.

229. No one in the home had performed any illegal actions.

230. No one was in immediate harm or risk of life.

231. But for Janene not going outside or signing the citation, she and Chris followed directions.

232. Janene's fight or flight response overtook her. Terrified by two large officers ferociously barreling into invading her home for no reason—Officer Craig charging directly at her—Janene in her terror raced back into the adjacent open area front room frantic to escape harm.

233. Officer Craig pushed Chris to the side in his pursuit of Janene making no effort to neutralize Christopher or otherwise indicate fear for his personal safety but focused solely on defenseless Janene.

234. As Janene retreated, she passed her son, Taylor who had been observing the interaction.

235. As Officer Craig barreled toward him in his pursuit of his mother, Taylor instinctively and protectively raised his hands, pleading Officer Craig to stop, scared for himself and his mom.

236. Officer Craig initiated contact with Taylor, shoved him aside, to run down Janene.

237. Officer Craig locked onto Janene's left hand applying significant pressure to her arm and violently, abruptly yanked on Janene and started dragging her toward the entryway.

238. Meanwhile after pushing Chris from the doorway, Officer Blackburn sauntered to the front room holding his clipboard in his left hand and fumbling with the citation with his right.

239. Officer Blackburn did nothing else to secure Chris or Taylor, turned his back to them, and at times turned his gun side to Taylor showing no safety concern from the Thorpe men.

240. After latching onto Janene's arm, Officer Craig wrenched Janene into a standing position. clenching Janene's left arm between both his hands.

241. Officer Blackburn attached to her right arm with his left hand and still holding the clipboard by his right hand, he raised his right hand to increase control over Janene's arm and slammed the clipboard into Janene's face, jaw and neck—knocking her out of breath as well.

242. When she finally could, an injured, battered, traumatized and bruised Janene pulled back and yelled out, "Get this out of my face!" and started reacting emotionally to the violent trauma being inflicted on her from both sides and both officers.

243. Fearing the impact of the Officer's attack on Janene with her brain tumor, Chris started trying to calm Janene to prevent further damage from the Officers' attack.

244. Chris came to her, repeated her name to get her to focus to help her calm down, reduce her fear, and prevent her having a major medical emergency if he could not calm her.

245. Taylor, also concerned about his mother's state and knowing what could happen, came to her to comfort her saying, "Mom, mom, mom, calm down."

246. Officer Craig released his right-hand vice grip on her arm and told everyone to calm down. Realizing he was still clamped onto Janene, he released his other hand from her arm.

247. Placing his right hand on Janene's left shoulder, he seemed to try to console her.

248. For the very first time, Officer Craig spoke in a conciliatory tone and used mannerisms to de-escalate—contrary to his prior tone and mannerisms that escalated the confrontation. He tried to explain away their violent and terrifying actions accosting Janene and her family.

249. Officer Blackburn continued to stand with Janene tightly gripping her right upper arm.

250. Contrary to his prior instruction, Officer Blackburn ordered Janene to sign the citation.

251. When Chris reminded Officer Blackburn that she was not required to sign, Officer Blackburn now admonished Chris by saying, "We are not done here."

252. Chris corrected Officer Blackburn by telling him, "You are done here."

253. Officer Blackburn still said, "Okay, you guys do need to accept this copy of the citation."

254. Christopher reminded Officer Blackburn that he could set the citation on the ground.

255. Officer Blackburn finally let go of Janene's arm.

256. The Officers realizing their unlawful escalation, unlawful entry, and unlawful use of excessive force kept trying to explain away and justify their actions and assaults on the Thorpes.

257. The Officers' actions upended the Thorpes' security and trust that they were safe in their own home—particularly from Officers who were supposed to protect not injure them.

258. The Officers remained standing in the living room and would not leave.

259. Chris pointing to the open front door requested them to leave-at least twenty-five times.

260. Starting to leave the home, Officer Craig started saying he did not want to turn his back on Chris even though up until that time, the Officers disregarded the three Thorpe men, had turned their backs to them, exposed their guns to them, and shown no fear while terrorizing a feeble woman. The Thorpes showed no aggression but instead were proactively working to calm the situation and the two Officers down.

261. Back at the threshold, Officer Craig still tried to rationalize their unlawful behavior and misstate Utah Law: "With you guys retreating back before we were done with the process, that gives me grounds to go in and detain her."

262. Janene told them that the Officers hurt her and caused her injuries.

263. Neither Officer attempted to offer Janene help but continued excusing their bad acts.

264. Neither Officer arrested anyone in the home—no unlawful acts had been performed in the Officers' presence. Although they did manufacture and falsify evidence after.

265. While not assaulted by the Officers, the Thorpes' youngest son, Charlie witnessed the entire assault by the Officers.

266. Janene could not be calmed down. Janene experienced extreme emotional distress from the assault. The assault resulted in a concussion, for which she is still being treated; a dislocated jaw, for which she is still being treated; severe bruising and cuts from the Officers fingernails to both her upper and lower arms; severe bruising on her upper leg; permanent bruises on her lower left leg; torn ligament that she is still receiving treatment from for her right food; significant Post Traumatic Stress Disorder PTSD for which she is still being treated; nightmares; trauma responses upon seeing police in the community, among other physical and emotional injuries. She does not feel safe in her own home.

267. Chris Thorpe has experienced extreme emotional distress from the assault to him and from what he witnesses the Officers doing to his wife; he still has nightmares; looks over his shoulder when out and about; fears when loud knocks are on his door, PTSD, and is also receiving emotional therapy and treatment and still has ongoing follow-up appointments. He is even more protective of his wife than before and is fearful of letting her out of his sight. He does not feel safe in his home.

268. Taylor Thorpe, who was 26 years old at the time has experienced extreme emotional distress, nightmares, PTSD, a significantly reduced trust and increased fear of police. Taylor works in the medical industry in a Hospital Emergency Room. It makes his job increasingly very difficult each and every time he sees an Officer come in to the ER. He checks on his mom regularly to make sure she is safe.

269. Charlie Thorpe, who was 18 years old at the time, has experienced extreme emotional distress, nightmares, PTSD, hard time sleeping, a reduced trust and increased fear of police and especially the American Fork Police Department.

270. All have experienced a significant reduced trust in police and in their safety and security while in their own home.

271. AFPD still allows the Sanches to video the Thorpes in their yard and their home.

272. AFPD has made additional baseless threats to the Thorpes since the incident and did not stop until the Notice of Claim letter was served on them in this matter.

273. The Thorpes' therapist gave them homework to be pro-active in securing their home and to make sure this type of incident never happened again and to find ways to prevent it.

274. The Thorpes have had to subsequently purchase non-breakable window film and have had it professionally installed on all windows of the home.

275. The Thorpes have purchased a Mesh-tech Security Screen door that is virtually un-penetrable and had to have it professionally installed to have a slight sense of any security.

276. The hardest part for the Thorpes to deal with is the emotional and mental PTSD. They cannot understand that the police, the purported good guys, are not really good guys, will harm them for doing nothing, and cannot be trusted.

277. They are working to relearn that police are there to protect them despite their now feeling they need protection from the police.

278. Each time they see a media report on police unlawfully hurting/killing civilians, they relive their own experience and have to go through the process of relearning to trust police again.

279. With AFPD all around their community, it is a struggle for them to live and conduct business in American Fork, Cedar Hills, and other jurisdictions AFPD serves.

*AFPD Actions After the Assault*

280. After Officers Blackburn and Craig's unlawful acts, AFPD, AFPD Officers, Chief Falslev and Officers Blackburn, Craig, Waite, Detective Konecny and Sergeant Nakai, began a cover-up of the incident and initiated its smear campaign against the Thorpe family.

281. AFPD, AFPD Officers, Chief Falslev and Officers Blackburn, Waite, Craig, Detective Konecny and Sergeant Nakai agreed together to fabricate reports to make it appear as if there were years of justifying behavior in their interactions with the Thorpes to justify the actions taken by Officers Blackburn and Craig.

282. AFPD, AFPD Officers, Chief Falslev and Officers Blackburn, Craig, Waite, Detective Konecny and Sergeant Nakai agreed and worked together to create false and misleading reports regarding the precipitating claims against Janene and to create false and misleading reports regarding the unlawful acts taken by Officers Blackburn and Craig on 4/23/2021.

283. Officer Blackburn's report, consistent with his citation for the alleged rock throwing incident, and contrary to all video footage claimed the reason the Officers' unlawful entry and unlawful use of force occurred because:

> Officer Craig opened the door due to both Janene and Christopher retreating into the residence without me having issued the citation. Officer Craig stopped Janene from fleeing and began bringing her back to the front door. I assisted Officer Craig to bring her back so the citation could be issued.

284. His report contains no legal justification for entry into the home, for an arrest, for the assault, or for any actions they took-- as Utah Law does not support their actions.

285. Officer Craig's report and contrary to the footage of the assault on Janene and the Thorpe family, claims: "While I was escorting Mrs. Thorpe, Son Thorpe, and Mr. Thorpe grabbed onto Mrs. Thorpe making it so I could not escort her out of the residence."

286. Contrary to Officer Craig's report, Officer Blackburn writes, "While in the living room officers decided to let Janene go…"

287. Contrary to the report, because there was no arrest, no cause under Utah Law for an arrest, no warrant, and no lawful justification for the Officers to enter the home, there was no resisting of arrest.

288. Neither report sets forth any lawful explanation or statement of exigency justifying the Officers entry into and storming of the Thorpe residence and taking the actions they did.

289. Officer Blackburn's reports contains no reference to an exigency storming the home and assaulting Janene and the Thorpes.

290. Officer Blackburn's report has no reference to any threat or fear for safety justifying the forced entry and assault.

291. Officer Waite waited to write his report on the 4/22/2021 complaint Maria made to him until 4/26/21—despite protocol requiring him to write it the same day as the complaint—after the unlawful entry, use of force and assault of Janene and the Thorpes.

292. Officer Waite's delayed and inaccurate or falsified summary of the video seems designed to create a false impression of violence by the Thorpes after the assault against the Thorpes.

293. Officer Blackburn's statement in his report that "[t]he Thorpes have been a problem with the police department for a while and have unexpected behaviors when dealing with police."

294. Officer Blackburn provided no explanation or examples of the alleged behaviors.

295. Upon information and belief, until after 4/23/2021 no written reports set forth any unexpected behaviors by the Thorpes.

296. Neither Officer Blackburn or Officer Craig's discussions or actions approaching the Thorpe home on 4/23/2021 indicate any concern for "unexpected behaviors"; problems dealing with the police, or concerns for safety and no actions by the Thorpes.

297. Instead, AFPD and AFPD Officers willfully chose not to properly investigate allegations by the Sanches against the Thorpes, willfully failed to follow up on complaints by the Thorpes, consciously did not take calls from the Thorpes, and looked for means to target and find ways to cite Janene and the Thorpes.

298. On 4/23/21, when the Thorpes called AFPD dispatch about Officers Craig and Blackburn's assault and other actions on Janene, Chris, Taylor, and Charlie to talk to someone with higher authority about the incident, they specifically requested that someone other than Sergeant Nakai address the issue because of her known animus against them.

299. AFPD intentionally sent Sergeant Nakai, despite knowing the Thorpes had just been through a traumatizing event at AFPD's hands and it appears to be a further uncalled for deliberate antagonization to the Thorpes.

300. The Thorpes called AFPD to send a different sergeant to take their report and statement. A different sergeant showed up the next day, took pictures of Janene's injuries, handed them a witness report, and they never heard from him or anyone else from AFPD about the incident.

301. There was no further follow-up with the Thorpes regarding the incident, no inquiry into Janene's injuries, no apologies.

302. AFPD and the Officers response to the unlawful entry, unlawful use of force, and assault; to the actions and statements contrary to law performed by Officers Blackburn and Craig, failure to follow up with the Thorpes on their reports regarding the incident, tailoring reports to misrepresent video footage, and maltreatment and withholding of rights available to other citizens of Cedar Hills is consistent with the pattern of AFPD and AFPD Officers toward the Thorpes.

303. After the assault, the Sanches continued their physical and video trespass onto the Thorpes property and into their home.

304. The Sanches made new complaints to Detective Konecny and Sergeant Garcia for things they observed in the Thorpe Upper backyard claiming it was retaliation to the assault charges.

305. Edward said "they had been advised by Officers to stay away from the property line and keep their doors locked in case of retaliation"—confirming AFPD animus against Thorpes.

306. Once again, the report by Detective Konecny was inconsistent with the video footage, contains no evidence of any investigation or videos asked for or obtained from the Thorpes, although Detective Konecny at least called to talked to Janene about the complaint this time.

307. Detective Konecny reports that she reviewed all prior cases and that the "Thorpes have been instigating and exhibiting disorderly conduct toward the Sanches over the last 4 years" despite the video evidencing otherwise.

308. Detective Konecny states that the "Thorpes have ALWAYS been uncooperative with police and difficult to have contact with. On many occasions the Thorpes do not answer their phones or doors during an investigation" contrary to prior Officer's statements, including Officer Waite's report stating that he did not contact the Thorpes, and internal officer statements to not

take their calls, and the Thorpes video evidence that the Officers did not come by their home to investigate, as well as the Officers failed to call or follow up with the Thorpes on allegations.

309. Christopher's opening of the door to Officers Craig and Blackburn on April 23, 2021 and his calm demeanor during the interaction contradicts Detective Konecny's report.

310. The Thorpes questioned the AFPD when they did not follow Utah Law, did not cozy up to them like the Sanches, which AFPD did not like and labeled as "uncooperative" and "difficult".

311. Detective Konecny adopted the pattern of treatment of and bias toward the Thorpes.

312. With her mind and bias already made against the Thorpes, Detective Konecny issued her findings against only Janene and not the other Thorpes that she violated retaliation and stalking statutes and again issued her a citation.

313. On 5/3/21, Detectives Konecny and Garcia again met with the Sanches on property line. They all took pictures of the Thorpes Upper Backyard and windows and seemed bothered by the Thorpes sign in their back window saying "Don't look in the bedroom windows."

314. The Detectives made no attempt to talk to the Thorpes.

315. On 6/10/22, Officer Godfrey called Janene threatening she would be charged with a crime if she called the American Fork Hospital—the treating hospital for her the night of the 4/23/21 assault. He gave no explanation.

316. AFPD continued its pattern and policy of animus against the Janene and the Thorpes.

317. AFPD continued to create an environment of fear and to prevent the Thorpes from access to public resources in case of emergencies.

318. AFPD continued to provide no explanation and to perform no real investigation.

319. AFPD continued to be supported by Cedar Hills, AF City, in its policies and actions of the Officers in direct opposition to their written policies, to the law, and to the Utah and United States Constitutions in their treatment of and interactions with the Thorpes.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
*(42 U.S.C. 1983 Cause of Action—Officers Craig and Blackburn)*

320. Plaintiffs incorporate by reference all preceding paragraphs.

321. Defendants Officers Craig and Blackburn, acting under color of Utah state law and under their authority as employees of the AFPD, violated the federal constitutional and statutory law when they performed an unlawful trespass, search and seizure, restraint and arrest, assault and use of force when they entered the Thorpe home and held the Thorpes without consent, without probable cause or a warrant, and without exigent circumstances.

322. Defendants' actions caused Janene, Chris, Taylor, and Charlie Thorpe to suffer bodily harm and deprived Janene, Christopher, Charlie, and Taylor of their right to be secure in their home against unreasonable trespass, search and seizure, restraint and arrest, and use of force in violation of the Fourth and Fourteenth Amendment of the United States Constitution and Utah Constitution.

323. Defendants knew their actions violated Janene, Chris, Taylor, and Charlie's right to be free from unlawful trespass, searches and seizure, restraint and arrest, and use of force and knowingly and willfully violated those rights. The illegality of Defendants' actions was well established at the time of this conduct.

324. As a direct and proximate result of the unconstitutional and unlawful conduct of Defendants, as set forth above, Janene, Chris, Taylor, and Charlie suffered injuries and damages including, but not limited to, physical injury, mental and emotional anguish.

325. Defendants' actions were done with egregious, intentional or reckless disregard and indifference to the rights of Janene, Chris, Taylor, and Charlie and the likelihood of causing emotional distress and other harm.

326. Defendants acted intentionally with ill will and spite towards the Thorpes in violation of their federally protected rights, such that their violations were performed maliciously or wantonly.

327. Defendants' actions are in violation of both the Fourth and Fourteenth Amendments of the United States and the Utah Constitutions.

328. The violation of Plaintiffs' rights is actionable under 42 U.S.C. § 1983 and they are entitled to judgment against Defendants, jointly and severally, under that section for damage in an amount to be proven at trial, but not less than 1 million dollars

329. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than 1 million dollars.

330. Plaintiffs are entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

331. Plaintiffs are entitled to punitive damages under 42 U.S.C. §§ 1983 and as otherwise allowed by law.

## SECOND CAUSE OF ACTION
(*42 U.S.C. 1983 Cause of Action—Against Defendants AFPD, Chief Falslev, AFPD Officers*)

332. Plaintiffs incorporate herein by reference all preceding paragraphs;

333. Defendants AFPD, Chief Falslev, and AFPD Officers had a custom of targeting the Thorpes, and in particular Janene Thorpe;

334. Defendants AFPD, Chief Falslev, and AFPD Officers had a custom of not taking, responding to or acting on calls/complaints/and actions alleged by the Thorpes;

335. Defendants AFPD, Chief Falslev, and AFPD Officers had a custom of exhibiting prejudicial behavior against the Thorpes, and in particular Janene Thorpe;

336. Defendants AFPD, Chief Falslev, and AFPD Officers had a custom, pattern, and policy of making threats and intimidation against the Thorpes, and in particular Janene Thorpe;

337. Defendants AFPD, Chief Falslev, and AFPD Officers had a custom, pattern, and policy of exercising preferential behavior toward the Sanches to the detriment of the Thorpes, and in particular Janene Thorpe;

338. Defendants AFPD, Chief Falslev, and AFPD Officers had a custom, pattern, and policy of misrepresenting evidence received by the Sanches against the Thorpes in order to obtain charges against the Thorpes, and in particular Janene Thorpe;

339. Defendants AFPD, Chief Falslev, and AFPD Officers had a custom, pattern, and policy writing and coordinating reports in a manner to protect its department and officers from their unlawful actions performed egregiously, intentionally and or with reckless disregard;

340. Defendants AFPD, Chief Falslev, and AFPD Officers had a custom, pattern, and policy of failing to or not properly investigating actions as alleged against or by the Thorpes, by not questioning the Thorpes; by not responding to the Thorpes, by not obtaining all applicable evidence in any complaints by or against the Thorpes, and in particularly the Thorpes;

341. Defendants AFPD, Chief Falslev, and AFPD Officers intentionally, negligently or recklessly failed to or were indifferent to training or supervising its officers as to unlawful search and seizure, unlawful forcible entry, unlawful restraint and arrest, unlawful excessive use of force, and other improper or unlawful use of authority;

342. Defendants AFPD, Chief Falslev, and AFPD Officers intentionally, negligently or recklessly failed to take action, to train, or otherwise prevent the unlawful and improper actions within its law force to prevent such unlawful, improper and unconstitutional actions from being performed against its citizens-and in particular citizens to which it had an obvious bias.

343. Defendants AFPD, Chief Falslev, and AFPD Officers had a custom, policy and pattern of condoning the type of actions taken against the Thorpes as complained herein.

344. Defendant AFPD, Chief Falslev, and AFPD Officers' customs, policies, patterns resulted in an AFPD custom of egregious actions and bias toward the Thorpes, of automatically attributing bad acts and intentions toward the Thorpes without sufficient evidence, of determining the Thorpes were automatically guilty of any alleged actions, and as a result of acting with reckless disregard in their treatment, escalation, interactions and responses to the Thorpes;

345. Defendant AFPD, Chief Falslev, and AFPD Officers' customs and animus toward the Thorpes, and in particular, Janene Thorpe, directly resulted in its Defendant Officers' unlawful actions toward the Thorpes as set forth herein, including and not limited to unlawful search and seizure; unlawful detention, unlawful use of force, unlawful forcible entry, among other unlawful actions.

346. As a direct and proximate result of Defendant AFPD, Chief Falslev, and AFPD Officers' customs and biases Defendant AFPD, Chief Falslev, and AFPD Officers' conduct toward the Thorpes resulted in the violations of the constitutional rights of Janene, Chris, Taylor, and Charlie under the Fourth and Fourteenth Amendments of the United States Constitution.

347. As a result of Defendant AFPD, Chief Falslev, and AFPD Officers' unconstitutional conduct, the Thorpes were harmed and suffered injury including but not limited to physical, emotional, and financial harm.

348. Defendants' actions were done with egregious, intentional or reckless disregard and indifference to the rights of Janene, Chris, Taylor, and Charlie and the likelihood of causing emotional distress and other harm.

349. Defendants acted intentionally with ill will and spite towards the Thorpes in violation of their federally protected rights, such that their violations were performed maliciously or wantonly.

350. The violation of Plaintiffs' rights is actionable under 42 U.S.C. § 1983 and they are entitled to judgment against Defendants, jointly and severally, under that section for damage in an amount to be proven at trial, but not less than 1 million dollars.

351. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than 1 million dollars.

352. Plaintiffs are entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

353. Plaintiffs are entitled to punitive damages under 42 U.S.C. §§ 1983 and as otherwise allowed by law.

### THIRD CAUSE OF ACTION
### (*42 U.S.C. § 1983—Against Defendants Cedar Hills City, American Fork City, and AFPD*)

354. Plaintiffs incorporate by reference all preceding paragraphs.

355. Defendant Cedar Hills City intentionally entered into and hired AFPD to perform vital services for Cedar Hills.

356. Defendants Cedar Hills City, American Fork City and their political subdivisions, including the American Fork Police Department, Defendants' AFPD maintained unconstitutional policies, customs, supervision, or practices that violated constitutionally protected rights of the Plaintiffs.

357. Upon information and believe, Defendants failed to have a written policy in place or if they had a written policy customarily did not follow or ensure that such practices were followed, and failed to appropriately supervise those it contracted with to perform vital functions for them.

358. Upon information and belief, if Defendants had policies, rules, practices and laws in place regarding excessive force in serving citations, making arrests, search and seizure, and other unconstitutional practices in their performing duties associated with interacting with individuals alleged to have committed a crime, such as Janene, as well as other bystanders, and home residents, of whom unlawful trespass, search and seizure, arrest and restraint, assault and force is used against, Defendants failed to take reasonable efforts to ensure that such policies, rules, practices and laws were enforced among its employees and contracted entities used to perform its vital services.

359. Defendants failed to adequately train and educate employees and subdivisions regarding their constitutional duties, excessive use of force, use of force and its reasonableness based on the circumstances, alternative methods for serving citations not requiring force, for appropriately identifying and distinguishing between characteristics and circumstances of imminent threat of bodily harm to officers or bystanders, of laws associated with serving a citation, among other policies that would have prevented the excessive use of force and in the absence of reasonable

suspicion creating a routine of unconstitutional behavior, in deliberate indifference and disregard of the welfare of the public at large-including the Plaintiffs.

360. Upon information and belief, Defendants had policies, rules, practices and laws in place regarding search and seizure of Plaintiffs' home without any consent, probable cause, warrant or exigent circumstances.

361. Upon information and belief, Defendants had policies, rules, practices and laws in place regarding assault and arrest of Plaintiffs without any consent, probable cause, warrant or exigent circumstances.

362. Defendants failed to adequately train and educate employees regarding the constitutional rights of its citizens as to privacy in their home, the unlawful search and seizure of a home, unlawful use of force, unlawful restraint and arrest, and other constitutional rights when there is and when there is no reasonable suspicion, probable cause, exigent circumstances or warrant to the extent that there is a creation of a routine practice of unconstitutional behavior, in deliberate indifference to the welfare of the public at large, including the Plaintiffs.

363. Upon information and belief, Defendants failed to have a written policy regarding the procedure on how to effectively serve a misdemeanor citation on a person at their home without violating their and bystanders/residents of the home's constitutional rights or had a written policy that, according to custom and practice, was not customarily followed.

364. By not requiring, instituting, or supervising such a training program, by not having a written policy, and/or failing to enforce such policy, and/or to properly supervise, these Defendants showed egregious, reckless disregard and deliberate indifference to the welfare of the public at large, including these Plaintiffs.

365. Defendants' actions are in violation of both the Fourth and Fourteenth Amendments of the United States and the Utah Constitutions.

366. The violation of Plaintiffs' rights is actionable under 42 U.S.C. § 1983 and they are entitled to judgment against Defendants, jointly and severally, under that section for damage in an amount to be proven at trial, but not less than 1 million dollars.

367. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than 1 million dollars.

368. Plaintiffs are entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

369. Plaintiffs are entitled to punitive damages under 42 U.S.C. §§ 1983 and as otherwise allowed by law.

## FOURTH CAUSE OF ACTION
### (*42 U.S.C. 1983 Cause of Action—Against Defendant Cedar Hills City*)

370. Plaintiffs incorporate herein by reference all preceding paragraphs;

371. Defendant Cedar Hills City intentionally entered into and hired AFPD to perform vital services for Cedar Hills.

372. Defendant Cedar Hills City egregiously or deliberately failed to or was indifferent to training or supervising AFPD and its Officers and did not ensure that appropriate training occurred as to unlawful search and seizure, unlawful forcible entry, unlawful excessive use of force, unlawful restraint and arrest, the impact of bias and conflict of interest and the resultant unconstitutional actions, and as to taking or prevent actions within its law force to prevent such unlawful and unconstitutional actions from being performed against its citizens-and in particular citizens to which it had an obvious bias.

373. Such customs, actions, and deliberate indifference by Defendant Cedar Hills City proximately caused and resulted the biases, unlawful actions, and failure of the AFPD and its Officers in its actions leading to and causing the unlawful acts of its Officers toward the Thorpes.

374. Defendant Cedar Hills City's customs, biases, and deliberate failure to require, ensure, train or supervise directly caused customs, biases, and unconstitutional actions toward the Thorpes by AFPD and its Officers, including and not limited to unlawful search and seizure, unlawful detention and arrest, unlawful use of force, unlawful forcible entry, among other unlawful actions.

375. As a result of Defendant Cedar Hills City customs, actions, and egregious and deliberate indifference to training and supervision of AFPD and its Officers, the Plaintiffs were harmed and their constitutional rights were violated.

376. Defendants' actions are or directly and proximately resulted in violation of both the Fourth and Fourteenth Amendments of the United States.

377. The violation of Plaintiffs' rights is actionable under 42 U.S.C. § 1983 and they are entitled to judgment against Defendants, jointly and severally, under that section for damage in an amount to be proven at trial, but not less than 1 million dollars.

378. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than 1 million dollars.

379. Plaintiffs are entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

**FIFTH CAUSE OF ACTION**
(*Under 42 U.S.C. § 1983—Against Defendants Craig and Blackburn*)

380. Plaintiffs incorporate herein by reference all preceding paragraphs.

381. Defendants Craig and Blackburn, acting under the color of Utah state law and under their authority as employees of the AFPD, acted with excessive force against Janene in the service of a misdemeanor citation beyond what was reasonably necessary to perform the service and in violation of law. Defendants performed such action:

a.  knowing the nature of the crime alleged against Janene at the time the force was applied;

b.  knowing or should have known or had reasonable expectation of knowledge as to the circumstances surrounding the service of the misdemeanor citation based on a history of no prior threats to officer safety by the Thorpes, including Janene;

c.  observing and experiencing no threat of harm, immediate or otherwise, by the Thorpes;

d.  not informing Janene or any of the Thorpes that one or all was under arrest;

e.  otherwise knowing and regularly using less hostile, alternative methods to serve citations—not requiring any use of force or physical interaction between them and Janene;

f.  stating availability of alternative methods of service;

g.  when Janene knowing her rights did not intentionally resist Defendants but only acknowledged availability of alternative less-confrontive means to receive the citation;

h.  when Chris knowing their rights did not intentionally resist Defendants but only acknowledged availability of alternative less-confrontive means to receive the citation;

i.  knowing and not observing any other lives at risk or risk to life or physical harm during or before the service of the citation;

j.  when Defendants were culpable for creating the escalated interaction by incorrectly misrepresenting law and not using known and admitted alternative means of service;

k.  when there was nothing under law justifying any arrest of Janene or any of the Thorpes;

l.  when there was no warrant as to Janene or any of the Thorpes;

m.  when there was nothing under law justifying any restraint/detention of Janene or any of the Thorpes in their home;

n.  when there was nothing under law justifying entrance into the home by the Defendants;

o.  when there was nothing under law justifying any use of force against Janene or the Thorpes;

p.  when Defendants initiated any and all escalation;

q.  when it was practical for Defendants to give warning of imminent use of force before escalating, but did not;

r.  when it was a situation where a reasonable officer, would have and should have accurately perceived a mistaken fact i.e., that there was no threat or any perceived threat from any of the Thorpes, including Janene, in their interactions with the Thorpes;

s.  when Defendants' actions did not suggest any fear or harm from Janene or the Thorpes;

t.  when there was no probable cause for a reasonable officer to believe Janene or any other Thorpe had or was committing a crime involving the infliction or threatened infliction of serious physical harm to any person;

u.  when the Officers' actions and statements before and after their use of excessive force against Janene and the Thorpes showed no perception of any imminent threat of harm.

v.  when the actions the Officers took was not reasonable or proportional to any actions performed by Janene or the Thorpes.

w.  when the actions the Officers took were in violation of the law.

382. Defendants' actions caused Janene to suffer bodily harm, severe emotional distress and deprived Janene the right to be secure in her person against the unlawful and excessive use of

force, unlawful entry into her home, and from unlawful detention in violation of the Fourth and Fourteenth Amendment of the Constitution of the United States.

383. Defendants knew their actions violated Janene's right to be free from unlawful and excessive use of force, unlawful entry into her home, and from unlawful detention in violation of the Fourth and Fourteenth Amendments of United States, but proceeded to violate those rights.

384. As a direct and proximate result of the unconstitutional conduct of Defendants, as set forth above, Janene suffered significant injuries and damages including, but not limited to, physical, mental and emotional anguish.

385. Defendants' actions were done with egregious, intentional or reckless disregard and indifference to the rights of Janene and the likelihood of causing emotional distress and other harm.

386. Defendants acted intentionally with ill will and spite towards the Thorpes in violation of their federally protected rights, such that their violations were performed maliciously or wantonly.

387. The violation of Janene's rights is actionable under 42 U.S.C. § 1983 and they are entitled to judgment against Defendants, jointly and severally, under that section for damage in an amount to be proven at trial, but not less than 1 million dollars.

388. Janene is entitled to general and special damages in an amount to be determined at trial.

389. Janene is entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

390. Janene is entitled to punitive damages under 42 U.S.C. §§ 1983 and as otherwise allowed by law.

### SIXTH CAUSE OF ACTION
**(*Under 42 U.S.C. § 1983—Against Defendants Craig and Blackburn*)**

391. Plaintiffs incorporate herein by reference all preceding paragraphs.

Page 49 of 90

392. Defendants, acting under the color of Utah state law and under their authority as employees of the AFPD, acted with excessive force against, unlawfully entered and detained, and otherwise acted unlawfully as described herein against Chris, Taylor, and Charlie Thorpe in the service of a misdemeanor citation at their home on Janene beyond what was reasonably necessary to perform the service and in violation of the law. The officers performed such action:

a. knowing the nature of the crime alleged against Janene and that there were no allegations of crime against Chris, Taylor, and Charlie at the time of the unlawful acts;

b. knowing or should have known or had reasonable expectation of knowledge as to the circumstances surrounding the service of the misdemeanor citation based on a history of no prior threats to officer safety by the Thorpes, including Janene;

c. observing and experiencing no threat of harm, immediate or otherwise, by the Thorpes to anyone as well as no risk to life during or before the service of the citation;

d. when Chris, Taylor, and Charlie were not under arrest and were never informed that they were under arrest by the Officers;

e. when the Officers knew the availability of alternative methods to serve the citation, i.e., not requiring signature, placing it on the Thorpes doorstep, not requiring any use of force or physical interaction among Christopher, Charlie, and Taylor and the Officers;

f. when the Officers stated the availability of alternative methods to serve the citation, i.e., not requiring signature, placing it on the Thorpes doorstep, not requiring any use of force or physical interaction among Christopher, Charley, and Taylor and the Officers but still performed the unlawful actions;

g. when the Thorpes, as well as Janene, knowing her rights, were not resisting the Officers but acknowledging there was no legal requirement that the Officers be allowed into their home, that Janene sign or physically take the citation directly from the Officers;

h. when there were no other lives at risk;

i. otherwise knowing and regularly using less hostile, alternative methods to serve citations—not requiring any use of force or physical interaction between them and Janene;

j. stating availability of alternative methods of service;

k. when Janene knowing her rights did not intentionally resist Defendants but only acknowledged availability of alternative less-confrontive means to receive the citation;

l. when Chris knowing their rights did not intentionally resist Defendants but only acknowledged availability of alternative less-confrontive means to receive the citation;

m. knowing and not observing any other lives at risk or risk to life or physical harm during or before the service of the citation;

n. when Defendants were culpable for creating the escalated interaction by incorrectly misrepresenting law and not using known and admitted alternative means of service;

o. when there was nothing under law justifying any arrest of Janene or any of the Thorpes;

p. when there was no warrant as to Janene or any of the Thorpes;

q. when there was nothing under law justifying any restraint/detention of Janene or any of the Thorpes in their home;

r. when there was nothing under law justifying entrance into the home by the Defendants;

s. when there was nothing under law justifying any use of force against Janene or the Thorpes;

t. when Defendants initiated any and all escalation;

u.  when it was practical for Defendants to give warning of imminent use of force before escalating, but did not;

v.  when it was a situation where a reasonable officer, would have and should have accurately perceived a mistaken fact i.e., that there was no threat or any perceived threat from any of the Thorpes, including Janene, in their interactions with the Thorpes;

w.  when Defendants' actions did not suggest any fear or harm from Janene or the Thorpes;

x.  when there was no probable cause for a reasonable officer to believe Janene or any other Thorpe had or was committing a crime involving the infliction or threatened infliction of serious physical harm to any person;

y.  when the Officers' actions and statements before and after their use of excessive force against Janene and the Thorpes showed no perception of any imminent threat of harm.

z.  when the actions the Officers took was not reasonable or proportional to any actions performed by Janene or the Thorpes.

aa. When the actions the Officers took were in violation of the law.

393.Defendants' actions caused Chris, Taylor, and Charlie to suffer bodily harm, severe emotional distress and deprived Janene the right to be secure in their persons against the unlawful and excessive use of force, unlawful entry into her home, and from unlawful detention in violation of the Fourth and Fourteenth Amendment of the Constitution of the United States.

394.Defendants' actions further caused severe emotional distress and anguish to Chris, Taylor, and Charlie as bystanders of the unlawful entry, physical force, and detention and other excessive and unlawful actions taken against Janene in their presence.

395. Defendants knew their actions violated Chris, Taylor, and Charlie's right to be free from unlawful excessive force, trespass and entry into their home, detention and restraint, but proceeded to violate those rights. The illegality of the Defendants' actions was established at the time of this conduct.

396. As a direct and proximate result of the unconstitutional conduct of Defendants, as set forth above, Chris, Taylor, and Charlie suffered injuries and damages including, but not limited to, physical, mental and emotional anguish.

397. Defendants' actions were done with egregious, intentional or reckless disregard and indifference to the rights of Janene, Chris, Taylor, and Charlie and the likelihood of causing emotional distress and other harm.

398. Defendant's actions toward Janene, Chris, Taylor, and Charlie were outrageous, intolerable and offended against the generally accepted standards of decency and morality.

399. Defendants acted intentionally with ill will and spite towards the Thorpes in violation of their federally protected rights, such that their violations were performed maliciously or wantonly.

400. The violation of Chris, Taylor, and Charlie rights is actionable under 42 U.S.C. § 1983 and they are entitled to judgment against Defendants, jointly and severally, under that section for damage in an amount to be proven at trial, but not less than 1 million dollars.

401. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than 1 million dollars.

402. Plaintiffs are entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

403. Plaintiffs are entitled to punitive damages under 42 U.S.C. §§ 1983 and as otherwise allowed by law.

### SEVENTH CAUSE OF ACTION
#### (*Under 42 U.S.C. § 1983—Against Defendant Craig*)

404. Plaintiffs incorporate herein by reference all preceding paragraphs.

405. Defendant Craig acting under the color of Utah state law and under his authority as an employee of the AFPD, unlawfully entered the Thorpe home and unlawfully detained Chris and Janene Thorpe during the service of a misdemeanor citation at the Thorpe home beyond what was reasonably necessary to perform the service of the misdemeanor citation as set forth more fully in the causes of actions above.

406. Defendant with full knowledge that he had no warrant, that there was no probable cause to arrest Janene nor to detain Chris; that he had not otherwise attempted to arrest Janene or Chris, that Chris was under no lawful requirement to bring Janene to the door; that neither Chris or anyone else in the home had manifested any actions of or indications of threat toward the Officers or anyone else; and that there were other lawful alternatives available for the Officers' service of the citation on Janene, unlawfully entered the Thorpe home by placing his foot inside the door to prevent its closure, unlawfully detained Chris by not allowing him to close his door until he got Janene, making false statements that Janene was under arrest, wrongfully requiring Janene to come outside of the home while unlawfully detaining them, and otherwise unlawfully entering the home; and acted with unlawful force toward Janene, Chris, Charlie, and Taylor Thorpe.

407. Defendant's unlawful actions caused Janene and the Thorpes to suffer bodily harm and deprived the Janene and the Thorpes from their right to be secure in their persons against the use

of excessive force in violation of the Fourth and Fourteenth Amendment of the Constitution of the United States.

408. Defendant knew his actions violated the Thorpes' right to be free from unlawful excessive force, trespass and entry into the home, and restraint and detention, but proceeded to violate those rights. The illegality of the Defendant's actions was established at the time of this conduct.

409. Defendant's actions toward Janene and the Thorpes were outrageous, intolerable and offended against the generally accepted standards of decency and morality.

410. As a direct and proximate result of the unconstitutional conduct of Defendant, Janene, Chris, Taylor and Charlie suffered significant injuries and damages including, but not limited to, mental and emotional anguish.

411. Defendants' actions were done with egregious, intentional or reckless disregard and indifference to the rights of Janene, Chris, Taylor, and Charlie and the likelihood of causing emotional distress and other harm.

412. Defendant acted intentionally with ill will and spite towards the Thorpes in violation of their federally protected rights, such that his violations were performed maliciously or wantonly.

413. The violation of Plaintiffs' rights is actionable under 42 U.S.C. § 1983 and they are entitled to judgment against Defendant Craig under that section for damage in an amount to be proven at trial, but not less than 1 million dollars.

414. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than 1 million dollars.

415. Plaintiffs are entitled to attorney fees and costs against Defendant under 42 U.S.C. § 1988.

416. Plaintiffs are entitled to punitive damages under 42 U.S.C. §§ 1983 and as otherwise allowed by law.

## EIGHTH CAUSE OF ACTION
### (Under 42 U.S.C. § 1983—Against Defendant Blackburn)

417. The Plaintiffs incorporate herein by reference all preceding paragraphs.

418. Defendant Blackburn, acting under color of Utah state law and under his authority as an employee of the AFPD, took no action to stop, restrain or prevent Officer Craig's unlawful entry into the Thorpe home and use of excessive force against Janene, Chris, Taylor and Charlie; and Chris and Janene's unlawful detention as set forth in the causes of actions during the service of a misdemeanor citation beyond what was reasonably necessary to perform the service.

419. Officer Blackburn did nothing to stop, deescalate or otherwise prevent Officer Craig's unlawful actions knowing that the Officer Craig acted beyond what was reasonably necessary based on the circumstances and were unlawful.

420. Defendant observed Officer Craig's escalation, including his false statements that Chris was required to bring Janene to the door, that Janene was under arrest, that Janene was required to sign the citation, despite no requirement to do so, and Officer Craig's unlawful entry into the Thorpe home when he used his foot to prevent Chris from closing his door and unlawful detention when Chris was not under arrest and when the Officers had no warrant, probable cause or any other lawful manner to detain Chris and prevent his closer of his door, upon Officer Craig's entry into the Thorpe home and ensuing use of force.

421. Defendant's failure to act and prevent Officer Craig's unlawful actions caused Janene and the Thorpes to suffer bodily harm and deprived the Thorpes from their right to be secure in her

person against the use of excessive force in violation of the Fourth and Fourteenth Amendment of the Constitution of the United States.

422. Defendant knew his failure to act violated the Thorpes' right to be free from unlawful excessive force, but proceeded to violate those rights. The illegality of the Defendants' actions was established at the time of this conduct.

423. Defendants' actions were done with egregious, intentional or reckless disregard and indifference to the rights of Janene, Chris, Taylor, and Charlie and the likelihood of causing emotional distress and other harm.

424. Defendant's actions toward Janene, Chris, Taylor, and Charlie were outrageous, intolerable and offended against the generally accepted standards of decency and morality.

425. Defendant acted intentionally with ill will and spite towards the Thorpes in violation of their federally protected rights, such that his violations were performed maliciously or wantonly.

426. As a direct and proximate result of the unconstitutional conduct of Defendants, as set forth above, Janene, Chris, Taylor, and Charlie suffered significant injuries and damages including, but not limited to, mental and emotional anguish.

427. The violation of Janene, Chris, Taylor, and Charlie's constitutional rights under both the United States and Utah Constitutions is actionable under 42 U.S.C. § 1983, and they are entitled to judgment against the Defendants, jointly and severally, under that section for damages jn an amount to be proven at trial, but not less than 1 million dollars.

428. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than 1 million dollars.

429. Plaintiffs are entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

430. Plaintiffs are entitled to punitive damages under 42 U.S.C. §§ 1983 and as otherwise allowed by law.

## NINTH CAUSE OF ACTION
### (Under 42 U.S.C. § 1983—Against Defendants Nordin, Waite, Nakai, Adamson, Craig, Blackburn, Konecny, Falslev)

431. Plaintiffs incorporate by reference all preceding paragraphs.

432. Defendants Nordin, Nakai, Craig, Blackburn, and Konecny acting under the color of Utah state law and under their authority as employees of the AFPD, deprived the Defendants of their constitutional due process rights under the Fourteenth Amendment.

433. Defendants deliberately sought to deprive the Thorpes of access to and protection of law enforcement and other lifesaving services, their right to use and enjoyment of their real property, without notice, the opportunity to be heard, and decision by a neutral decision-maker.

434. Defendants took action to intentionally falsify records, misrepresent facts and evidence in matters involving Janene and the Thorpes, to threaten Janene and the Thorpes, to intentionally not take calls from Janene or the Thorpes, to create a policy, pattern, and culture against Janene and the Thorpes, to not take action against individuals violating the law and the Thorpes rights, to support and protect individuals and Officers who took unlawful action against the Thorpes, and to otherwise intimidate, threaten, and cause the Thorpes to fear to use their property, to feel safe and protected in their home, and to lose their constitutional rights under both the United States and Utah Constitutions.

435. Defendants singled out the Thorpes in their unlawful and unconstitutional treatment;

436. Defendants' actions toward the Thorpes demonstrated a personal animus against the Thorpes which caused them to take such unlawful and unconstitutional actions.

437. Defendants' actions were based on a personal animus toward the Thorpes;

438. Defendants acted intentionally with ill will and spite towards the Thorpes in violation of their federally protected rights, such that their violations were performed maliciously or wantonly.

439. Defendants' actions resulted in the Thorpes being denied their constitutional rights under both the Fourth and Fourteenth Amendments of the United States and Utah Constitutions.

440. As a direct and proximate cause of the unlawful and unconstitutional conduct of Defendants, as set forth above, Janene, Chris, Taylor and Charlie suffered injuries and damages including, but not limited to, physical injury, mental and emotional anguish.

441. Defendants' actions are in violation of both the Fourth and Fourteenth Amendments of the United States and the Utah Constitutions.

442. Defendants' actions were done with egregious, intentional or reckless disregard and indifference to the rights of Janene, Chris, Taylor, and Charlie and the likelihood of causing emotional distress and other harm.

443. The violation of Plaintiffs' rights is actionable under 42 U.S.C. § 1983 and they are entitled to judgment against Defendants, jointly and severally, under that section for damage in an amount to be proven at trial.

444. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than 1 million dollars, but not less than 1 million dollars.

445. Plaintiffs are entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

446. Plaintiffs are entitled to punitive damages under 42 U.S.C. §§ 1983 and as otherwise allowed by law.

## TENTH CAUSE OF ACTION
### (42 U.S.C. 1983 Cause of Action—Against Defendant Cedar Hills City)

447. Plaintiffs incorporate herein by reference all preceding paragraphs;

448. Defendant Cedar Hills City acted under color of Utah state law.

449. Acting under color of Utah state law, Defendant Cedar Hills City intentionally entered into and hired AFPD to perform vital services for Cedar Hills.

450. Cedar Hills owed a duty to use reasonable care in investigating and contracting with law enforcement agencies to perform its law enforcement and citizen protection.

451. Cedar Hills owed a duty to Plaintiffs to ensure that no conflict of interest existed in its relationship with AFPD that would result in inaccurate, unlawful, biased enforcement of the law and use of police powers in its interactions with its citizens.

452. Cedar Hills failed to use reasonable care and acted with negligence when it:

453. Failed to supervise, properly train, ensure that adequate supervision and training was occurring by the contract law enforcement agency.

454. Failed to supervise and properly train its employees regarding conflict of interest, bias, and proper interaction between its employees and other contracted agencies.

455. Failed to ensure that its laws were properly investigated and enforced.

456. As a result of Cedar Hills' negligence and reckless disregard for the safety and unlawful treatment of its citizens, the Plaintiffs were harmed and suffered greatly as a result of Cedar Hills' negligence and Cedar Hills is liable to the Plaintiffs.

457. As a result of the above-described conduct, Plaintiffs have suffered, and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of enjoyment of life, physical pain and suffering and as a result, Plaintiffs should be awarded damages and attorney fees as allowed by law;

458. The Thorpes have experienced significant physical pain and suffering as well as significant emotional distress, and all Plaintiffs, and in particular Janene has and will continue to incur and should be awarded her expenses for medical and psychological treatment, physical therapy, and counseling, among other expenses, including interest and attorney fees as allowed by statute.

459. The violation of Plaintiffs' rights is actionable under 42 U.S.C. § 1983 and they are entitled to judgment against Defendants, jointly and severally, under that section for damage in an amount to be proven at trial, but not less than 1 million dollars.

460. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than 1 million dollars.

461. Plaintiffs are entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

462. Plaintiffs are entitled to punitive damages under 42 U.S.C. §§ 1983 and as otherwise allowed by law.

## ELEVENTH CAUSE OF ACTION
### (*Under 42 U.S.C. § 1983-Conspiracy Against Defendants Blackburn and Craig*)

463. Plaintiffs incorporate herein by reference all preceding paragraphs.

464. On or about 4/23/2021, Defendants Blackburn and Craig acting under color of Utah state law conspired to deprive Janene Thorpe of her federally protected rights to be free from search

and seizure in her own home, to unlawful restraint and arrest, and from the unlawful use of force as guaranteed under the United States Constitutions as set forth in the above causes of action.

465. Defendants Blackburn and Craig agreed to take whatever actions it took to serve the citation on Janene including conducting an unlawful trespass, search and seizure, use of excessive force or any other lawful or lawful means to sign the citation.

466. Defendants Blackburn and Craig agreed to take whatever actions it took, whether it was in depravation of Janene's civil rights and whether it was unlawful or not, to get Janene out of the home to serve the citation and to try to unlawfully arrest her.

467. Defendants Blackburn and Craig acting under color of Utah state law and did in fact perform such unlawful actions that deprived Janene of her constitutional rights, of her right to be secure in her own home, as well as unlawfully arrested and detained Janene and used unlawful and excessive force against her.

468. Defendants acted intentionally with ill will and spite towards Janene in violation of her federally protected rights, such that their violations were performed maliciously or wantonly.

469. As a result of the above-described conduct, Plaintiffs have suffered, and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of enjoyment of life, physical pain and suffering and as a result, Plaintiffs should be awarded damages and attorney fees as allowed by law;

470. Janene has experienced significant physical pain and suffering as well as significant emotional distress, Janene has and will continue to incur and should be awarded her expenses for medical and psychological treatment, physical therapy, and counseling, among other expenses, including interest and attorney fees as allowed by statute.

471. The violation of Plaintiffs' rights is actionable under 42 U.S.C. § 1983 and they are entitled to judgment against Defendants, jointly and severally, under that section for damage in an amount to be proven at trial, but not less than 1 million dollars.

472. Janene is entitled to general and special damages in an amount to be determined at trial.

473. Janene is entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

474. Janen is entitled to punitive damages under 42 U.S.C. §§ 1983 and as otherwise allowed by law.

## TWELFTH CAUSE OF ACTION
### (*Under 42 U.S.C. § 1983-Conspiracy Against Defendants Blackburn and Craig*)

475. Plaintiffs incorporate herein by reference all preceding paragraphs.

476. On or about 4/23/2021, Defendants Blackburn and Craig acting under color of Utah state law conspired to deprive Chris, Taylor, and Charlie Thorpe of their federally protected rights to be free from search and seizure in their own home, to unlawful restraint and arrest, and from the unlawful use of force as guaranteed under the United States and Utah Constitutions as set forth in the above causes of action.

477. Defendants Blackburn and Craig agreed to take whatever actions it took to serve the citation on Janene including conducting an unlawful trespass, search and seizure, use of excessive force or any other lawful or lawful means against anyone in the Thorpe home to sign the citation.

478. Defendants Blackburn and Craig agreed to take whatever actions it took, whether it was in depravation of Janene or her family's civil rights and whether it was unlawful or not, to get Janene out of the home to serve the citation and to try to unlawfully arrest her.

479. Defendants Blackburn and Craig acting under color of Utah state law and did in fact perform such unlawful actions that deprived Christ, Taylor, and Charlie of their constitutional rights, of their right to be secure in their own home, as well as unlawfully arrested and detained them in their own home and used unlawful and excessive force against them in attempt to arrest and detain Janene.

480. As a result of the above-described conduct, Plaintiffs have suffered, and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of enjoyment of life, physical pain and suffering and as a result, Plaintiffs should be awarded damages and attorney fees as allowed by law;

481. The Thorpes have experienced significant physical pain and suffering as well as significant emotional distress, and all Plaintiffs, and in particular Janene has and will continue to incur and should be awarded her expenses for medical and psychological treatment, physical therapy, and counseling, among other expenses, including interest and attorney fees as allowed by statute.

482. The violation of Plaintiffs' rights is actionable under 42 U.S.C. § 1983 and they are entitled to judgment against Defendants, jointly and severally, under that section for damage in an amount to be proven at trial, but not less than 1 million dollars.

483. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than 1 million dollars.

484. Plaintiffs are entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

485. Plaintiffs are entitled to punitive damages under 42 U.S.C. §§ 1983 and as otherwise allowed by law.

## THIRTEENTH CAUSE OF ACTION
*(Under 42 U.S.C. § 1983-Conspiracy Against Defendants Blackburn, Craig, Waite, Konecny, Nakai and Falslev)*

486. Plaintiffs incorporate herein by reference all preceding paragraphs.

487. After the 4/23/2021 incident, Defendants Blackburn, Craig, Waite, Konecny, Falslev, and Nakai, acting under color of Utah state law conspired to deprive Janene, Christopher, Taylor and Charlie Thorpe of their federally protected rights to be secure in their own home, to be free from search and seizure in her own home, to unlawful restraint and arrest, and from the unlawful use of force as guaranteed under the United States Constitutions as set forth in the above causes of action by conspiring together to take actions to cover up and misrepresent the events of 4/23/2021.

488. Defendants agreed to make misrepresentations regarding their prior interactions and prior actions of AFPD and other AFPD Officers with the Thorpes to justify their unlawful actions and deprivation of the Thorpes rights.

489. Defendants Konecny, Nakai, Blackburn, Craig, and Waite agreed to and did falsify or otherwise misrepresent evidence provided to them by the Sanches in their reports about the complaints the Sanches made to them in order to justify the actions of Defendants Blackburn and Craig in their violation of the Plaintiffs' rights on 4/23/2021.

490. Defendants Konecny, Nakai, Blackburn, Craig and Waite agreed to and did agree to perform other acts, including but not limited to agreeing that Defendants Konecny and Nakai— already openly biased against the Thorpes—to further "investigate" and make reports on the 4/23/21 incident and who made false statements and misrepresentations regarding the 4/23/21 incident and interactions with the Thorpes for the purpose of covering up Officer Blackburn and Craig's unlawful actions.

491. Defendants Konecny, Nakai, Blacburn, Craig and Waite agreed to and did proliferate a continuing culture after the incident against the Thorpes, including making disparaging comments and statements against the Thorpes, misrepresenting their interactions toward the Thorpes, including threats of future arrest and retaliation by AFPD Officers of the Thorpes use of their Upper and Lower Backyard depriving the Thorpes use of their property.

492. As a result of the above-described conduct, Plaintiffs have suffered, and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of enjoyment of life, physical pain and suffering and as a result, Plaintiffs should be awarded damages and attorney fees as allowed by law;

493. The Thorpes have experienced significant physical pain and suffering as well as significant emotional distress, and all Plaintiffs, and in particular Janene has and will continue to incur and should be awarded their expenses for medical and psychological treatment, physical therapy, and counseling, among other expenses, including interest and attorney fees as allowed by statute.

494. The violation of Plaintiffs' rights is actionable under 42 U.S.C. § 1983 and they are entitled to judgment against Defendants, jointly and severally, under that section for damage in an amount to be proven at trial, but not less than 1 million dollars.

495. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than 1 million dollars.

496. Plaintiffs are entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

497. Plaintiffs are entitled to punitive damages under 42 U.S.C. §§ 1983 and as otherwise allowed by law.

## FOURTEENTH CAUSE OF ACTION
### *(U.C.A. §76-10-1601, et. seq--Pattern of Unlawful Activity-Defendants American Fork Police Department and AFPD Officers)*

498. Plaintiffs herein incorporate all preceding paragraphs.

499. At all times herein, AFPD Officers were employees of the Defendants American Fork Police Department.

500. At all times herein AFPD allowed its officers to perform the following unlawful actions and behaviors to create a pattern of unlawful behaviors in violation of U.C.A. §76-10-1601,

501. Defendants Falslev Nakai, Nordin, Blackburn, Adamson, Craig, Waite, and Konecny, among other AFPD Officers engaged in a pattern of unlawful behavior and have acted, engaged in, requested or intentionally aided other persons to engage in conduct that was unlawful or attempted to do so in violation of U.C.A. §76-10-1601, et. seq. as including but not limited to the following actions:

502. On 4/23/21 Defendants Blackburn and Craig assaulted the Thorpes in their home as defined and in violation of §76-5-102, 103 when they forcibly attacked the Thorpes.

503. On 4/23/21 Defendants Blackburn, and Craig violated U.C.A. §§ 76-8-201 and 202 by committing official misconduct in their egregious, willful and unlawful acts toward the Thorpes, including but not limited to Defendants Blackburn and Craigs egregious and intentional or reckless disregard of the Utah and United States Constitution when they unlawfully entered, detained, and assaulted the Thorpes in their home among other unlawful actions.

504. On 4/23/21 Defendants Blackburn, and Craig violated U.C.A. §§ 76-8-201 and 202 by committing official misconduct in their egregious, willful and unlawful acts toward the Thorpes, including but not limited to Defendants Blackburn and Craigs egregious and intentional or reckless

disregard of the Utah and United States Constitution when they unlawfully entered, detained, and assaulted the Thorpes in their home among other unlawful actions.

505. Defendants Nakai, Nordin, Blackburn, and Craig violated U.C.A. §§ 76-8-201 and 202 by committing official misconduct in their egregious, willful and unlawful acts toward the Thorpes, including acting egregiously, intentionally, or with reckless disregard in altering, excluding or misrepresenting evidence and information in police reports-including doing so after Blackburn and Craig's unlawful actions, in failing to properly investigate allegations against the Thorpes or to investigate actions complained by the Thorpes, in attempting to threaten and take actions to prevent the Thorpes from being able to use their outside property, in not enforcing the law; allowing biases to influence their actions; and otherwise by their actions toward the Thorpes and their failure to act in support of the Thorpes-including their failure to stop the Sanches from videoing them in their yard, home, and property.

506. Defendants Nakai, Nordin, Blackburn and Craig violated U.C.A. § 76-8-504 by making false statements that they believed, knew or should have known to be untrue, some of which were made under a form bearing notification that the false statements were punishable, which were provided to prosecutors with the intent to deceive the prosecutors or other officers, in a manner that either knowingly created a false impression or was misleading, or with which the Defendants knew or should have known were false.

507. Defendants' unlawful actions caused direct and proximate harm to the Plaintiffs, including physical, emotional, financial and other harm.

508. Defendants' unlawful actions have caused the Plaintiffs to feel unsafe both in their home and in their yard and unable to regularly use their yard for fear of what Defendants may do to them.

509. Defendants' actions were done with wanton, malicious, egregious, intentional or reckless disregard and indifference to the rights of Janene, Chris, Taylor, and Charlie and the likelihood of causing emotional distress and other harm.

510. Defendants should be jointly and severally liable to Plaintiffs for the harm and damages they have caused them.

511. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than 1 million dollars.

512. Plaintiffs are entitled to attorney fees as allowed by Utah State law.

513. Plaintiffs are entitled to punitive damages as allowed by Utah State law.

**FIFTEENTH CAUSE OF ACTION**
**(U.C.A. §76-10-1601, et. seq.—Against Defendants Nakai, Nordin, Blackburn, Waite, Adamson, Craig and Konecmy)**

514. Plaintiffs herein incorporate all preceding paragraphs.

515. Defendants Nakai, Nordin, Blackburn, Waite, Craig, and Konecmy have engaged in a pattern of unlawful behavior and have acted, engaged in, requested or intentionally aided other persons to engage in conduct that was unlawful or attempted to do so in violation of U.C.A. §76-10-1601, et. seq. as follows:

516. Defendants Blackburn and Craig assaulted the Thorpes in their home as defined and in violation of §76-5-102, 103 when they forcibly attacked the Thorpes.

517. Defendants Blackburn, and Craig violated U.C.A. §§ 76-8-201 and 202 by committing official misconduct in their egregious, willful and unlawful acts toward the Thorpes, including but not limited to Defendants Blackburn and Craigs egregious and intentional or reckless disregard of

the Utah and United States Constitution when they unlawfully entered, detained, and assaulted the Thorpes in their home among other unlawful actions.

518. Defendants Blackburn, and Craig violated U.C.A. §§ 76-8-201 and 202 by committing official misconduct in their egregious, willful and unlawful acts toward the Thorpes, including but not limited to Defendants Blackburn and Craigs egregious and intentional or reckless disregard of the Utah and United States Constitution when they unlawfully entered, detained, and assaulted the Thorpes in their home among other unlawful actions.

519. Defendants Nakai, Nordin, Blackburn, Adamson, Waite and Craig violated U.C.A. §§ 76-8-201 and 202 by committing official misconduct in their egregious, willful and unlawful acts toward the Thorpes, including acting egregiously, intentionally, or with reckless disregard in altering, excluding or misrepresenting evidence and information in police reports-including doing so after Blackburn and Craig's unlawful actions, in failing to properly investigate allegations against the Thorpes or to investigate actions complained by the Thorpes, in attempting to threaten and take actions to prevent the Thorpes from being able to use their outside property, in not enforcing the law; allowing biases to influence their actions; and otherwise by their actions toward the Thorpes and their failure to act in support of the Thorpes-including their failure to stop the Sanches from videoing them in their yard, home, and property.

520. Defendants Nakai, Nordin, Blackburn, Waite, Adamson and Craig violated U.C.A. § 76-8-504 by making false statements that they believed, knew or should have known to be untrue, some of which were made under a form bearing notification that the false statements were punishable, which were provided to prosecutors with the intent to deceive the prosecutors or other

officers, in a manner that either knowingly created a false impression or was misleading, or with which the Defendants knew or should have known were false.

521. Defendant's unlawful actions caused direct and proximate harm to the Plaintiffs, including physical, emotional, financial and other harm.

522. Defendant's unlawful actions have caused the Plaintiffs to feel unsafe both in their home and in their yard and unable to regularly use their yard for fear of what Defendants may do to them.

523. Defendants' actions were done with egregious, intentional or reckless disregard and indifference to the rights of Janene, Chris, Taylor, and Charlie and the likelihood of causing emotional distress and other harm.

524. Defendants should be jointly and severally liable to Plaintiffs for the harm and damages they have caused them.

525. Plaintiffs are entitled to general and special damages in an amount to be determined at trial.

526. Plaintiffs are entitled to attorney fees as allowed by law.

527. Plaintiffs are entitled to punitive damages as allowed by law.

### SIXTEENTH CAUSE OF ACTION
*(For Violations of Article I, § 14 of Utah Constitution – Unreasonable searches forbidden – American Fork Police Department, Darren Falslev, Craig and Blackburn)*

528. Plaintiffs herein incorporate all preceding paragraphs.

529. Chris Thorpe clearly and expressly communicated to Officers Craig and Blackburn, members and representative of the American Fork Police Department under Darren Falslev's command, that the officers were not allowed into their home.

530. Chris Thorpe respectfully requested that the document be left on the doorstep for Janene Thorpe to look at later as allowed by Utah law.

531. Officers Craig and Blackburn acting under the color of Utah state law ignored Chris Thorpe and instead barged into the Thorpe home.

532. Officers Craig and Blackburn forced their way into the Thorpe home and began chasing Janene around.

533. Officers Craig and Blackburn did not have a warrant for entry to the Thorpe home or for Janene's arrest.

534. Officer Craig's and Blackburn's actions are a direct violation of Chris, Janene, and Taylor, and Charlie Thorpe's Utah Constitutional Right against unreasonable searches or seizures.

535. Officers Craig and Blackburn are direct representatives of the American Fork Police Department and are under the direct command of Darren Falslev, the American Fork Police Chief.

536. Defendants should be jointly and severally liable to Plaintiffs for the harm and damages they have caused them.

537. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than 1 million dollars.

538. Plaintiffs are entitled to attorney fees as allowed by law.

539. Plaintiffs are entitled to punitive damages as allowed by law.

## SEVENTEENTH CAUSE OF ACTION
*(Case Appropriate under  Article I, § 11 of Utah Constitution – Redress of Injuries – All Defendants)*

540. Plaintiffs herein incorporate all preceding paragraphs.

541. Plaintiffs have suffered serious injury in violation of their State Constitution rights by all of the listed defendants.

542. Plaintiffs are constitutionally guaranteed to have remedy for their civil injuries under the State Constitution.

543. Defendants have violated Plaintiffs' Civil Rights.

544. Defendants should be jointly and severally liable to Plaintiffs for the harm and damages they have caused them.

545. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than 1 million dollars.

546. Plaintiffs are entitled to attorney fees as allowed by law.

547. Plaintiffs are entitled to punitive damages as allowed by law.

## EIGHTEENTH CAUSE OF ACTION
*(For Violations of Article I, §7 of The Utah Constitution – Due process of law – American Fork Police Department, Darren Falslev, Nakai, Konecney, Nordin, Craig and Blackburn)*

548. Plaintiffs herein incorporate all preceding paragraphs.

549. Officers Nakai, Konecny, Murray, Nordin, Craig, and Blackburn repetitively delivered citations and charges to Plaintiffs' house, with most of the citations and charges being levied against Janene Thorpe.

550. The officers repeatedly did so without thoroughly checking facts and following the correct procedures of law before issuing the citations and/or charges.

551. Officer Murray submitted a charge against Janene Thorpe although Officer Murray recognized that the charge had no merit beforehand.

552. Officers Craig and Blackburn forced their way into the Thorpe home and assaulted Janene and forced her to sign a citation that had been improperly levied against her.

553. Officers Nakai, Konecny, Murray, Nordin, Craig, and Blackburn repeatedly came around threatening the Thorpes regarding actions they had not taken and without even attempting to look into the surrounding evidence.

554. Defendants are jointly and severally liable to Plaintiffs for the harm and damages they have caused them.

555. Plaintiffs are entitled to general and special damages in an amount to be determined at trial.

556. Plaintiffs are entitled to attorney fees as allowed by law.

557. Plaintiffs are entitled to punitive damages as allowed by law.

### NINETEENTH CAUSE OF ACTION
#### *(Assault – Defendants Craig and Blackburn)*

558. Plaintiffs herein incorporate all preceding paragraphs.

559. Craig and Blackburn came to the Thorpe home on or around 4/23/2021 with a citation for Mrs. Thorpe.

560. Officers Craig and Thorpe sought entry to the Thorpe home without any appropriate warrant.

561. The Thorpe's denied the officer's entry, calmly requested the officers leave the citation at the door, and attempted to close the door.

562. Officer Craig engaged in inappropriate behavior that escalated the situation while talking with Christopher. Thorpe at the door of the home.

563. After repeated requests to leave the citation, Officer Craig became enraged and forced his way into the Thorpe's house.

564. Officer Craig commenced chasing after Janene, which included barreling pass Taylor.

565. Officer Blackburn also forced his way into the home and acted in a menacing manner.

Page 74 of 90

566. Both of the officer's actions caused Christopher, Janene, and Taylor Thorpe to fear immediate harm to their persons.

567. Officers Craig and Blackburn assaulted Christopher, Janene and Taylor Thorpe.

568. Defendants are jointly and severally liable to Plaintiffs for the harm and damages they have caused them.

569. Plaintiffs are entitled to general and special damages in an amount to be determined at trial.

570. Plaintiffs are entitled to attorney fees as allowed by law.

571. Plaintiffs are entitled to punitive damages as allowed by law.

## TWENTIETH CAUSE OF ACTION
### (Battery – Defendants Craig and Blackburn)

572. Plaintiffs herein incorporate all preceding paragraphs.

573. Officers Craig and Blackburn forced their way into the Thorpe home on or around 4/23/21.

574. Once Officer Craig was in the Thorpe home, Officer Craig pushed Christopher out of the way to chase after Janene.

575. Officer Craig also pushed Taylor out of the way while he chased after Janene.

576. Once Officer Craig reached Janene, he strongly grabbed her arm and yanked her arm, dragging her back towards the door.

577. Officer Blackburn pushed Christopher out of the way upon entering the house.

578. Once Officer Craig had dragged Janene to the front door, Officer Blackburn grabbed her other arm tightly.

579. Janene's arms were both hurt from the officer's actions.

580. Christopher and Taylor also sustained injuries from being pushed out of the way.

581. Craig and Blackburn are jointly and severally liable to Plaintiffs for the harm and damages they have caused them.

582. Plaintiffs are entitled to general and special damages in an amount to be determined at trial.

583. Plaintiffs are entitled to attorney fees as allowed by law.

584. Plaintiffs are entitled to punitive damages as allowed by law.

## TWENTY-FIRST CAUSE OF ACTION
### *(Trespassing – Craig and Blackburn)*

585. Plaintiffs herein incorporate all preceding paragraphs.

586. Christopher expressly denied Officer Craig and Officer Blackburn entry to the Thorpe house on or around 4/32/21.

587. When Christopher tried to close the door the second time, Officer Craig stopped the door from closing.

588. After becoming enraged, Officer Craig forced his way into the Thorpe home.

589. After Officer Craig forced his way into the Craig home, Officer Blackburn also pushed the door into Christopher while trying to get into the home.

590. Both police officers did not have a valid warrant or permission to enter the home.

591. Also, the Sanches couple have repeatedly entered onto the Thorpe property without permission.

592. Sanches, Craig and Blackburn are jointly and severally liable to Plaintiffs for the harm and damages they have caused them.

593. Plaintiffs are entitled to general and special damages in an amount to be determined at trial.

594. Plaintiffs are entitled to attorney fees as allowed by law.

595. Plaintiffs are entitled to punitive damages as allowed by law.

## TWENTY-SECOND CAUSE OF ACTION
### *(False Imprisonment – Craig and Blackburn)*

596. Plaintiffs herein incorporate all preceding paragraphs.

597. On or around 4/23/21, Craig and Blackburn restrained Janene.

598. Neither officer asked permission to detain Janene.

599. Neither officer had a warrant or any kind of justification to detain Janene.

600. Janene was held against her will and suffered false imprisonment.

601. Craig and Blackburn are jointly and severally liable to Plaintiffs for the harm and damages they have caused them.

602. Plaintiffs are entitled to general and special damages in an amount to be determined at trial.

603. Plaintiffs are entitled to attorney fees as allowed by law.

604. Plaintiffs are entitled to punitive damages as allowed by law.

## TWENTY-THIRD CAUSE OF ACTION
### *(Intentional Infliction of Emotional Distress –Craig, Blackburn, Nakai)*

605. Plaintiffs herein incorporate all preceding paragraphs.

606. On or around 4/23/21, Officers Craig and Blackburn forced their way into the Thorpe home.

607. Christopher and Taylor were pushed aside as Officer Craig chased and detained Janene and as Officer Blackburn pushed his way into the Thorpe house.

608. Christopher and Taylor watched Janene was physically detained by both officers and started to suffer serious mental distress.

609. Janene's anguish was so prevalent that Christopher and Taylor both made efforts to calm her down.

610. Janene was not able to calm down for a while and until after the officers left.

611. The officer's actions caused Christopher, Taylor, and Janene to suffer severe emotional distress.

612. Sanches, Craig, and Blackburn are all severally liable to Plaintiffs for the harm and damages they have caused them.

613. Plaintiffs are entitled to general and special damages in an amount to be determined at trial.

614. Plaintiffs are entitled to attorney fees as allowed by law.

615. Plaintiffs are entitled to punitive damages as allowed by law.

## TWENTY-FOURTH CAUSE OF ACTION
### *(Violation of U.C.A § 53-6-210.5 – Duty to intervene and report officer misconduct –Darren Falslev, Nakai, Konecny, Waite, Nordin, Craig and Blackburn)*

616. Plaintiffs herein incorporate all preceding paragraphs.

617. Under U.C.A. § 53-6-210.5, police officers have a duty to stop and/or report misconduct done by other police officers.

618. Officer Craig and Officer both made egregious acts of misconduct when visiting the Thorpe home on 4/23/21.

619. Neither Officer reported the other for the misconduct or took action to intervene.

620.

621. Darren Falslev, and Officers Nakai, Konency, Waite, Nordin, Craig and Blackburn are severally liable to Plaintiffs for the harm and damages they have caused them.

622. Plaintiffs are entitled to general and special damages in an amount to be determined at trial.

623. Plaintiffs are entitled to attorney fees as allowed by law.

624. Plaintiffs are entitled to punitive damages as allowed by law.

## TWENTY-FIFTH CAUSE OF ACTION
### *(Respondeat Superior – Darren Falslev, AFPD, Cedar Hills City, American Fork City)*

625. Plaintiffs herein incorporate all preceding paragraphs.

626. Officers Nakai, Craig, Blackburn, Nordin, Waite, and Konecny are officers of the American Fork Police Department.

627. All of the officers represent the AFPD and are bound by the rules enforced by the AFPD, Cedar Hills City, and American Fork City.

628. The officers were acting within their scope of employment when they served citations, harassed, falsified evidence, ignored, endangered, and continuously intervened with the Thorpe's life.

629. The officers' actions, within the scope of their employment, caused the Thorpes to suffer harm.

630. Darren Falsley, AFPD, Cedar Hills City, and American Fork City are jointly and severally liable to Plaintiffs for the harm and damages they have caused them.

631. Plaintiffs are entitled to general and special damages in an amount to be determined at trial.

632. Plaintiffs are entitled to attorney fees as allowed by law.

633. Plaintiffs are entitled to punitive damages as allowed by law.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants in the causes of actions as follows:

1. First Cause of Action as against Defendants Craig and Blackburn:

   a. For Plaintiffs' general and special damages in an amount to be determined at trial, but not less than 1 million dollars under 42 U.S.C. § 1983.

b. For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988

c. For punitive damages as allowed by law under 42 U.S.C. § 1983

d. For interest as provided by law.

e. For such other and further relief as the Court deems equitable, just and reasonable.

2. Second Cause of Action as against Defendants AFPD, Chief Falslev and AFPD Officers:

a. For Plaintiffs' general and special damages in the amount at trial, but not less than 1 million dollars, under 42 U.S.C. § 1983.

b. For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988

c. For punitive damages as allowed by law under 42 U.S.C. § 1983

d. For interest as provided by law.

e. For such other and further relief as the Court deems equitable, just and reasonable.

3. Third Cause of Action as against Defendants Cedar Hills City, American Fork City and American Fork Police Department:

a. For Plaintiffs' general and special damages in the amount at trial, but not less than 1 million dollars, under 42 U.S.C. § 1983.

b. For punitive damages as allowed by law under 42 U.S.C. § 1983

c.  For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988

d.  For interest as provided by law.

e.  For such other and further relief as the Court deems equitable, just and reasonable.

4.  Fourth Cause of Action as against Defendant Cedar Hills City:

a.  For Plaintiffs' general and special damages in the amount at trial, but not less than 1 million dollars, under 42 U.S.C. § 1983.

b.  For punitive damages as allowed by law under 42 U.S.C. § 1983

c.  For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988

d.  For interest as provided by law.

e.  For such other and further relief as the Court deems equitable, just and reasonable.

5.  Fifth Cause of Action as against Defendants Craig and Blackburn:

a.  For Plaintiffs' general and special damages in the amount at trial, but not less than 1 million dollars, under 42 U.S.C. § 1983.

b.  For punitive damages as allowed by law under 42 U.S.C. § 1983

c.  For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988

d.  For interest as provided by law.

   e.   For such other and further relief as the Court deems equitable, just and reasonable.

6.   Sixth Cause of Action as against Defendants Craig and Blackburn, jointly and severally for the allegations contained in Plaintiffs' Sixth Cause of Action as follows:

   a.   For Plaintiffs' general and special damages in the amount at trial, but not less than 1 million dollars, under 42 U.S.C. § 1983.

   b.   For punitive damages as allowed by law under 42 U.S.C. § 1983

   c.   For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988

   d.   For interest as provided by law.

   e.   For such other and further relief as the Court deems equitable, just and reasonable.

7.   Seventh Cause of Action as against Defendant Craig

   a.   For Plaintiffs' general and special damages in the amount at trial, but not less than 1 million dollars, under 42 U.S.C. § 1983.

   b.   For punitive damages as allowed by law under 42 U.S.C. § 1983

   c.   For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988

   d.   For interest as provided by law.

   e.   For such other and further relief as the Court deems equitable, just and reasonable.

8.   Eighth Cause of Action as against Defendant Blackburn

    a.  For Plaintiffs' general and special damages in the amount at trial, but not less than 1 million dollars, under 42 U.S.C. § 1983.

    b.  For punitive damages as allowed by law under 42 U.S.C. § 1983

    c.  For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988

    d.  For interest as provided by law.

    e.  For such other and further relief as the Court deems equitable, just and reasonable.

9.  Ninth Cause of Action as against Defendants Nordin, Waite, Nakai, Craig, Adamson, Blackburn, Konecny, and Falslev

    a.  For Plaintiffs' general and special damages in the amount at trial, but not less than 1 million dollars, under 42 U.S.C. § 1983.

    b.  For punitive damages as allowed by law under 42 U.S.C. § 1983

    c.  For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988

    d.  For interest as provided by law.

    e.  For such other and further relief as the Court deems equitable, just and reasonable.

10. Tenth Cause of Action as against Defendant Cedar Hills

    a.  For Plaintiffs' general and special damages in the amount at trial, but not less than 1 million dollars, under 42 U.S.C. § 1983.

    b.  For punitive damages as allowed by law under 42 U.S.C. § 1983

    c.   For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988

    d.   For interest as provided by law.

    e.   For such other and further relief as the Court deems equitable, just and reasonable.

11. Eleventh Cause of Action as against Defendants Blackburn and Craig

    a.   For Plaintiffs' general and special damages in the amount at trial, but not less than 1 million dollars, under 42 U.S.C. § 1983.

    b.   For punitive damages as allowed by law under 42 U.S.C. § 1983

    c.   For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988

    d.   For interest as provided by law.

    e.   For such other and further relief as the Court deems equitable, just and reasonable.

12. Twelfth Cause of Action as against Defendants Blackburn and Craig

    a.   For Plaintiffs' general and special damages in the amount at trial, but not less than 1 million dollars, under 42 U.S.C. § 1983.

    b.   For punitive damages as allowed by law under 42 U.S.C. § 1983

    c.   For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988

    d.   For interest as provided by law.

e.  For such other and further relief as the Court deems equitable, just and

reasonable.

13. Thirteenth Cause of Action as against Defendants Blackburn, Craig, Waite, Konecny,

Nakai, and Falslev

a.  For Plaintiffs' general and special damages in the amount at trial, but not less

than 1 million dollars, under 42 U.S.C. § 1983.

b.  For punitive damages as allowed by law under 42 U.S.C. § 1983

c.  For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. §

1988

d.  For interest as provided by law.

e.  For such other and further relief as the Court deems equitable, just and

reasonable.

14. Fourteenth Cause of Action as against Defendants American Fork Police Department

and AFPD Officers for the allegations contained in Plaintiffs' Fourteenth Cause of

Action as follows:

a.  For Plaintiffs' general and special damages due to Defendants unlawful

conduct in an amount to be determined at trial, but not less than 1 million

dollars, under U.C.A. *§76-10-1601, et. seq*

b.  For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

c.  For punitive damages as allowed by law under Utah Law.

d.  For interest as provided by law.

e.   For such other and further relief as the Court deems equitable, just and reasonable.

15. Fifteenth Cause of Action as against Defendants Nakai, Nordin, Blackburn, Waite, Adamson, Craig and Konecmy

   a.   For Plaintiffs' general and special damages due to Defendants unlawful conduct in an amount to be determined at trial, but not less than 1 million dollars, under U.C.A. *§76-10-1601, et. seq*

   b.   For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

   c.   For punitive damages as allowed by law under Utah Law.

   d.   For interest as provided by law.

   e.   For such other and further relief as the Court deems equitable, just and reasonable.

16. Sixteenth Cause of Action as against Defendants American Fork Police Department, Falslev, Craig and Blackburn

   a.   For Plaintiffs' general and special damages due to Defendants' unlawful conduct in an amount to be determined at trial, but not less than 1 million dollars.

   b.   For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

   c.   For punitive damages as allowed by law under Utah law.

   d.   For interest as provided by law.

   e.   For such other and further relief as the Court deems equitable, just and reasonable.

17. Seventeenth Cause of Action as against all Defendants:

    a.  For Plaintiffs' general and special damages due to Defendants' unlawful conduct in an amount to be determined at trial, but not less than 1 million dollars.

    b.  For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

    c.  For punitive damages as allowed by law under Utah law.

    d.  For interest as provided by law.

    e.  For such other and further relief as the Court deems equitable, just and reasonable.

18. Eighteenth Cause of Action as against Defendants American Fork Police Department, Darren Falslev, Nakai, Konecny, Nordin, Craig and Blackburn:

    a.  For Plaintiffs' general and special damages due to Defendants' unlawful conduct in an amount to be determined at trial, but not less than 1 million dollars.

    b.  For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

    c.  For punitive damages as allowed by law under Utah law.

    d.  For interest as provided by law.

    e.  For such other and further relief as the Court deems equitable, just and reasonable.

19. Nineteenth Cause of Action as against Defendants Craig and Blackburn:

a. For Plaintiffs' general and special damages due to Defendants' unlawful conduct in an amount to be determined at trial, but not less than 1 million dollars.

b. For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

c. For punitive damages as allowed by law under Utah law.

d. For interest as provided by law.

e. For such other and further relief as the Court deems equitable, just and reasonable.

20. Twentieth Cause of Action as against Defendants Craig and Blackburn

a. For Plaintiffs' general and special damages due to Defendants' unlawful conduct in an amount to be determined at trial, but not less than 1 million dollars.

b. For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

c. For punitive damages as allowed by law under Utah law.

d. For interest as provided by law.

e. For such other and further relief as the Court deems equitable, just and reasonable.

21. Twenty-first Cause of Action as against Defendants Craig and Blackburn

a. For Plaintiffs' general and special damages due to Defendants' unlawful conduct in an amount to be determined at trial, but not less than 1 million dollars.

b. For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

    c.  For punitive damages as allowed by law under Utah law.

    d.  For interest as provided by law.

    e.  For such other and further relief as the Court deems equitable, just and reasonable.

22. Twenty-second Cause of Action as against Defendants Craig and Blackburn

    a.  For Plaintiffs' general and special damages due to Defendants' unlawful conduct in an amount to be determined at trial, but not less than 1 million dollars.

    b.  For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

    c.  For punitive damages as allowed by law under Utah law.

    d.  For interest as provided by law.

    e.  For such other and further relief as the Court deems equitable, just and reasonable.

23. Twenty-first Cause of Action as against Defendants Craig and Blackburn

    a.  For Plaintiffs' general and special damages due to Defendants' unlawful conduct in an amount to be determined at trial, but not less than 1 million dollars.

    b.  For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

    c.  For punitive damages as allowed by law under Utah law.

    d.  For interest as provided by law.

    e.  For such other and further relief as the Court deems equitable, just and reasonable.

24. Twenty-third Cause of Action as against Defendants Craig and Blackburn

    a. For Plaintiffs' general and special damages due to Defendants' unlawful conduct in an amount to be determined at trial, but not less than 1 million dollars.

    b. For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

    c. For punitive damages as allowed by law under Utah law.

    d. For interest as provided by law.

    e. For such other and further relief as the Court deems equitable, just and reasonable.

25. Twenty-fourth Cause of Action as against Defendants Craig and Blackburn

    a. For Plaintiffs' general and special damages due to Defendants' unlawful conduct in an amount to be determined at trial, but not less than 1 million dollars.

    b. For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

    c. For punitive damages as allowed by law under Utah law.

    d. For interest as provided by law.

    e. For such other and further relief as the Court deems equitable, just and reasonable.

Dated and signed this 12th day of April, 2023.

JEFFS & JEFFS
/s/ *Liisa A.Hancock*_____
Attorney for Plaintiffs

Page 90 of 90