H. Craig Hall (1307)
Hyrum J. Bosserman (16404)
Kimberly A. Smith (17598)
BENNETT TUELLER JOHNSON & DEERE
3165 East Millrock Drive, Suite 500
Salt Lake City, Utah 84121
Telephone: (801) 438-2000
Email: chall@btjd.com; hbosserman@btjd.com;
ksmith@btjd.com

*Attorneys for Cedar Hills City*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH – CENTRAL DIVISION

| | |
|---|---|
| JANENE THORPE, an individual; CHRISTOPHER THORPE, Sr., an individual, CHRISTOPHER THORPE, Jr., an individual; CHARLIE THORPE, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> CEDAR HILLS CITY, a government entity; AMERICAN FORK CITY, a government entity; AMERICAN FORK CITY POLICE DEPARTMENT, a government entity; DARREN FALSLEV, in his official capacity as AMERICAN FORK CITY POLICE CHIEF; C. SLATE BLACKBURN, in his official and individual capacities; PHILLIP W.S. CRAIG, in his official and individual capacities; JENNIFER L. NAKAL in her official and individual capacities; KANDACE N. KONECHNY, in her official and individual capacities; SETH WIATE, in his official and individual capacity; and JOHN or JANE DOES 1-15, in their individual and/or official capacities; <br><br> Defendants. | **MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Case No. 2:23-cv-00242 <br><br> Judge Ann Marie McIff Allen <br><br> Magistrate Daphne A. Oberg |

1

Defendant Cedar Hills City ("*Cedar Hills*"), through its counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure and DUCivR 56-1, hereby submits this Motion for Partial Summary Judgment requesting summary judgment in favor of Cedar Hills on all the claims alleged by Plaintiffs Janene Thorpe, Christopher Thorpe, Sr., Christopher Thorpe, Jr., and Charlie Thorpe (collectively, "*Plaintiffs*") against Cedar Hills. These include Plaintiffs' Third, Fourth, Ninth, Tenth, Thirteenth, Seventeenth, Twenty-Fifth, and Twenty-Sixth Causes of Action. The Court should also deny Plaintiffs' request for punitive damages against Cedar Hills.

## RELIEF REQUESTED AND GROUNDS

In this case, Plaintiffs allege various constitutional violations, tort, and statutory claims against Defendants, including Cedar Hills, arising from an encounter Plaintiffs had with the police in April 2021. According to Plaintiffs, two American Fork police officers were serving a citation and summons on Plaintiff Janene Thorpe ("*Janene*") when they unlawfully entered Plaintiffs' home and seized Janene. This allegedly caused Plaintiffs damages. Simply because Plaintiffs were residents of Cedar Hills, they included Cedar Hills as a defendant in this lawsuit. But Cedar Hills was not involved.

Cedar Hills is a small city in Utah County northeast of American Fork. Because it is geographically small and has a relatively low population, Cedar Hills contracts with American Fork to provide Cedar Hills with all of its public safety services, including law enforcement. Pursuant to the contract, American Fork is an independent contractor, and it retains the sole right and authority to direct the manner in which it performs its services and to train its officers. American Fork does not routinely notify Cedar Hills in real time about complaints it receives, its investigations, or citations it issues. That is exactly what happened here. Prior to the encounter, American Fork did not inform Cedar Hills about the allegations against Janene or American Fork

Police Department's investigation. It did not inform Cedar Hills that it was issuing a citation or that the officers were going to Plaintiffs' home to serve a citation and summons. Cedar Hills did not even know about the citation or the police encounter in April 2021 until after it happened.

Setting aside the question of whether the officers violated Plaintiffs' constitutional rights, Cedar Hills cannot be liable as a matter of law. It is well settled that a municipality cannot be held liable for the constitutional violations of its employees or contractors unless the municipality *itself* caused the violation. Plaintiffs cannot show that Cedar Hills violated their rights. Specifically, Plaintiffs cannot identify any Cedar Hills policy or custom that directly caused or was the moving force behind the alleged constitutional violations. And they cannot show Cedar Hills was deliberately indifferent to their constitutional rights because Cedar Hills had never received any prior allegation or complaint that American Fork or American Fork Police Department had violated anyone's constitutional rights. Because there are no facts showing that Cedar Hills violated Plaintiffs' rights, Cedar Hills cannot be liable for the alleged violations of the United States Constitution or the Utah Constitution.

Plaintiffs also cannot succeed on any of the remaining claims against Cedar Hills. First, Plaintiffs bring a conspiracy claim under 42 U.S.C. § 1985. That claim, however, requires a conspiracy of class-based discrimination. Plaintiffs have not alleged any class-based discrimination, and there is no evidence that Cedar Hills actually conspired with anyone related to Plaintiffs or the police encounter. This is dispositive.

Second, Plaintiffs allege they are entitled to a remedy under the open courts provision of the Utah Constitution. This provision provides only a basis for challenging a legislative action. Plaintiffs have not challenged a legislative action, so this claim can be summarily dismissed.

Third, Plaintiffs allege Cedar Hills violated the intervening and reporting requirements set forth in Utah Code Ann. § 53-6-210.5. This statute first went into effect in May 2022 and did not exist at the time of the police encounter at issue. It also does not create a private right of action, it does not apply to cities like Cedar Hills, and Cedar Hills was not "present" during the alleged misconduct, as required by the statute. This claim fails as a matter of law.

Fourth, Plaintiffs assert Cedar Hills is liable for the non-constitutional claims under the doctrine of respondeat superior. Respondeat superior applies only to make an employer liable for the acts of its *employees* taken in the course of their employment. This doctrine does not apply to independent contractors. American Fork and its officers are not Cedar Hills employees; they are independent contractors. Moreover, there is no evidence that Cedar Hills maintained any control or direction over the methods of performing their services generally or with respect to Plaintiffs or this specific encounter. Cedar Hills cannot be liable under respondeat superior as a matter of law.

And finally, federal and Utah law prohibit an award against a municipality for punitive damages. Plaintiffs should be prohibited from seeking punitive damages against Cedar Hills. The Court should grant the Motion and summarily dismiss all of Plaintiffs' claims against Cedar Hills.

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.      Cedar Hills is a municipality and political subdivision of the State of Utah. Second Amended Complaint ("***Complaint***") ¶ 15, attached as Exhibit A.

2.      Cedar Hills does not have its own police department. Declaration of Chandler Goodwin ("***Goodwin Decl.***") ¶ 5, attached as Exhibit B.

3.       Cedar Hills contracts with American Fork City ("*American Fork*") to provide public safety services to Cedar Hills. *See* Public Safety Service Agreement, attached as <u>Exhibit C</u>; Goodwin Decl. ¶ 6, Ex. B.

4.       The Public Safety Service Agreement between Cedar Hills and American Fork (the "*Agreement*") states, in relevant part,

> American Fork shall at all times be considered an independent contractor for all purposes under this Agreement, including the performance of all responsibilities identified under Section 1. Nothing in this Agreement shall be deemed or construed to create a joint venture, partnership or employer/employee relationship between the parties. Neither party shall hold itself out as the representative or agent of the other party. Neither party has the right to exercise control over the other party, its employees, its Officers or its agents, and neither party shall seek such right. American Fork, its employees, and Officers assigned to Cedar Hills shall not be deemed employees or joint employees of Cedar Hills for any purpose. American Fork retains the sole right and authority to recruit, hire, promote, discipline, demote, discharge, determine rates of pay for, establish the terms and conditions of employment of, and/or to direct and control the manner in which its employees and Officers discharge their professional and work duties.
> American Fork is responsible for instructing and training its Officers consistent with this Agreement.

Public Safety Service Agreement § 4, Ex. C.

5.       Plaintiffs' claims stem from an incident (the "*Incident*") that occurred on April 23, 2021, in which American Fork police officers Defendant Philip Craig ("*Officer Craig*") and C. Slate Blackburn ("*Officer Blackburn*") allegedly unlawfully entered Plaintiffs' home and seized Plaintiff Janene Thorpe ("*Janene*"). *See* Complaint ¶¶ 209–361, Ex. A.

6.       Officer Craig and Officer Blackburn were American Fork police officers. *See id*.

7.       According to Plaintiffs, Plaintiffs' neighbor falsely accused Janene of throwing rocks at her. *See id.* ¶ 211.

8.       According to Plaintiffs, Officer Craig and Officer Blackburn prepared a citation based on these allegations "and went to [Plaintiffs'] to serve the citation." *Id.* ¶ 219.

9. That is when the Incident occurred. *Id.* ¶¶ 232–361.

10. Neither Cedar Hills nor any of its employees or officials were present during the Incident. Goodwin Decl. ¶ 7, Ex. B.

11. No Cedar Hills employee or official was notified about the rock-throwing allegations or investigation. *Id.* ¶ 8.

12. No Cedar Hills employee or official decided to issue the citation. *Id.* ¶ 9.

13. American Fork did not notify Cedar Hills or its employees or officials that its officers were issuing a citation. *Id.* ¶ 10.

14. American Fork did not notify Cedar Hills or its employees or officials that American Fork officers were going to Plaintiffs' home. *Id.* ¶ 11.

15. Cedar Hills and its employees and officials did not know about the Incident until after it happened. *Id.* ¶ 12.

16. Cedar Hills and its employees and officials do not direct American Fork or American Fork Police Department about how to perform their law enforcement services. *Id.* ¶ 13.

17. Cedar Hills did not direct American Fork or American Fork Police Department about how to interact with Plaintiffs leading up to or after the Incident. *Id.* ¶ 14.

18. Cedar Hills has never had any animosity towards Plaintiffs or intention to deprive Plaintiffs of their rights. *Id.* ¶ 15.

19. There is no evidence that Cedar Hills ever intended to deprive Plaintiffs of their rights.

20. Neither Cedar Hills nor its employees or officials met with the American Fork Police Department or its officers to discuss Plaintiffs. *Id.* ¶ 16.

21.     There is no evidence that Cedar Hills had a meeting of the minds with any other person to deprive Plaintiffs of their rights.

22.     Prior to Plaintiffs' allegations, Cedar Hills did not receive any complaints or allegations of police misconduct by American Fork or American Fork Police Department. *See* Cedar Hills's Response to Interrogatory No. 5, attached as Exhibit D; Goodwin Decl. ¶ 17, Ex. B.

23.     Prior to Plaintiffs' allegations, Cedar Hills did not receive any complaints or allegations of unlawful entry or violation of privacy rights by American Fork or American Fork Police Department. *See* Cedar Hills's Response to Interrogatory No. 5, Ex. D; Goodwin Decl. ¶ 18, Ex. B.

24.     Plaintiffs have not identified any Cedar Hills policy that deprived them of their rights. *See* Plaintiffs' Response to Interrogatory No. 13, attached as Exhibit E.

25.     When asked specifically about what Cedar Hills policy deprived them of their rights, Plaintiffs pointed only to ordinances they believed Cedar Hills was not properly enforcing against Plaintiffs' neighbors. Deposition of Christopher Thorpe ("***Chris Dep.***") at 100:9–103:20, attached as Exhibit F; Deposition of Janene Thorpe ("***Janene Dep.***") at 145:4–146:10, attached as Exhibit G.

26.     These include unidentified ordinances related to lighting and shed placement. Chris Dep. at 100:9–103:20, Ex. F; Janene Dep. at 145:4–146:10, Ex. G.

27.     As part of the Agreement, American Fork is obligated to train its officers. *See* Agreement § 4, Ex. C.

28.     American Fork Police Department has specific and detailed policies requiring training for its officers and employees. *See* Policy 207, attached as Exhibit H.

29.     American Fork Police Department conducts monthly trainings for its officers and employees, and Officer Craig and Officer Blackburn were trained. *See* Training History Reports, attached as <u>Exhibit I</u>.

30.     Plaintiffs have not alleged any class-based discrimination. *See generally* Complaint, Ex. A.

## **ARGUMENT**

Under Rule 56 "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Thao v. Grady Cnty. Crim. Justice Auth.*, 159 F.4th 1214, 1227 (10th Cir. 2025) (cleaned up). "[A] movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003). "Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* To survive summary judgment, "[t]he nonmovant must then bring forth specific facts showing a genuine issue for trial" that are "clearly identified through affidavits, deposition transcripts, or incorporated exhibits." *Thao*, 159 F.4th at 1227 (cleaned up). Here, based on the undisputed facts and complete lack of any evidence, Plaintiffs cannot succeed on their claims against Cedar Hills as a matter of law. Therefore, the Court should enter summary judgment in favor of Cedar Hills.

I.     **CEDAR HILLS IS NOT LIABLE FOR THE ALLEGED CONSTITUTIONAL VIOLATIONS UNDER 42 U.S.C. § 1983 OR UTAH LAW.**

In their Third, Fourth, Ninth, and Tenth Causes of Action, Plaintiffs seek to hold Cedar Hills liable for alleged violations of the United States Constitution (through 42 U.S.C. § 1983)

and the Utah Constitution. But they cannot meet their burden to establish municipal liability against Cedar Hills under federal or state law.

42 U.S.C. § 1983 provides a cause of action for plaintiffs to obtain damages resulting from federal constitutional violations. "Under § 1983, local governments are responsible only for their own illegal acts, meaning they are not vicariously liable for their employees' actions." *Manning v. City of Tulsa*, 170 F.4th 1287, 1299 (10th Cir. 2026). Accordingly, the typical respondeat superior theory does not apply to make municipalities liable for their employees' constitutional violations. *Thao*, 159 F.4th at 1227. Instead, to establish liability against a municipality like Cedar Hills under Section 1983, "a plaintiff must prove that (1) an official policy or custom (2) caused the plaintiff's constitutional injury and (3) that the municipality enacted or maintained that policy with deliberate indifference to the risk of that injury occurring." *George ex rel. Bradshaw v. Beaver Cnty. ex rel. Beaver Cnty. Bd. of Comm'rs*, 32 F.4th 1246, 1253 (10th Cir. 2022).

In Utah, a "plaintiff's remedy for a state constitutional violation rests in the common law." *Kuchcinski v. Box Elder Cnty.*, 2019 UT 21, ¶ 13, 450 P.3d 1056 (cleaned up). To establish damages for a violation of the Utah Constitution, a plaintiff must show "(1) that he or she suffered a flagrant violation of his or her constitutional rights; (2) that existing remedies do not redress his or her injuries; and (3) that equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries." *Id.* ¶ 31 (cleaned up). To meet the "flagrant violation" element for a municipality, there must be "an action pursuant to official municipal policy of some nature [that] caused a constitutional tort." *Id.* ¶ 32 (cleaned up). Utah borrows from Section 1983 jurisprudence to determine municipal liability. *See id.* Therefore, like under Section 1983, "the plaintiff must show (1) the existence of a municipal

9

policy or custom, (2) that this policy or custom evidences a deliberate indifference to the plaintiff's constitutional rights, and (3) that this policy or custom was closely related to the ultimate injury." *Id.* (cleaned up).

Even if Officer Craig and/or Officer Blackburn violated the United States Constitution or Utah Constitution during the Incident, Plaintiffs cannot prove the elements necessary for holding Cedar Hills liable for the alleged violations.

A. There Is No Cedar Hills Policy or Custom that Caused the Alleged Constitutional Violations.

To establish municipal liability under both federal and Utah law, Plaintiffs must identify an official policy or custom of Cedar Hills that deprived Plaintiffs of their rights. Under Section 1983, "[t]he 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80 (1986). An official policy or custom may be

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (cleaned up).

Utah is similar: an official policy or custom would include "[a] decision to adopt a particular course of action" or "a decision not to take any action to alleviate a constitutional violation." *Kuchcinski*, 2019 UT 21, ¶ 33 (cleaned up). "A policy of inaction could include an unwritten rule or policy, the lack of a policy, or the lack of an established practice of taking

10

action in such cases." *Id.* ¶ 33 n.53. Furthermore, the policy must be the "direct cause" or "moving force" behind the constitutional violation. *Aguilar v. Colo. State Penitentiary*, 656 F. App'x 400, 403 (10th Cir. 2016) (unpublished) (quoting *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003)); *see also Kuchcinski*, 2019 UT 21, ¶ 35 (requiring causation).

Plaintiffs generally allege Cedar Hills is liable based on its policies, customs, and failure to train. *See generally* Complaint, Ex. A. But Plaintiffs cannot identify any policy or custom of Cedar Hills that caused the alleged constitutional violations.

1. *Plaintiffs have not identified a formal or informal policy or custom of Cedar Hills that deprived them of their rights.*

A formal policy would include "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996) (cleaned up); *see also Kuchcinski*, 2019 UT 21, ¶ 33. Alternatively, "[i]f the violation cannot be characterized as official policy, then the [municipality] can still be held liable if the practice is so permanent and well settled as to constitute a custom or usage with the force of law." *Lankford*, 73 F.3d at 286 (cleaned up); *see also Kuchcinski*, 2019 UT 21, ¶ 33.

Here, Plaintiffs have not identified a single policy or custom of Cedar Hills that is unconstitutional. *See* Plaintiffs' Response to Interrogatory No. 13, Ex. E. Nor can they. Indeed, when asked at depositions about the policy or custom that deprived them of their rights, Plaintiffs identified only Cedar Hills's alleged failure to enforce its ordinances against Plaintiffs' neighbors. Specifically, Plaintiffs stated Cedar Hills refused to require Plaintiffs' neighbors to move their outdoor lighting, move their shed, and place their shed on a solid surface. *See* Chris Dep. at 100:18–23, 101:16–22, Ex. F. Notably, Plaintiffs could not identify any specific ordinance that applied. But even so, this is not a formal, written policy. Nor is it an informal

11

custom. Plaintiffs cannot show any other instances where Cedar Hills allegedly failed to enforce those supposed ordinances. *See Estate of Burnett v. City of Colorado Springs*, 763 F. Supp. 3d 1281, 1288–89 (D. Colo. 2025). What's more, there is nothing unconstitutional about allowing a property owner to keep lights on their property or keep a shed close to a property line and on stilts. That is, the alleged "policy or custom" is not even "misconduct." *Id.*

Even assuming *arguendo* that Plaintiffs are correct that Cedar Hills failed to enforce its ordinances as a matter of policy (they are not), there is no connection between Plaintiffs' neighbors' lights and shed and the police officers entering Plaintiffs' home and seizing Janene on April 23. In *Scott v. City of Tulsa*, the court granted summary judgment in favor of the city on a Section 1983 claim where the plaintiff challenged city policies related to police interviews, but the constitutional violation alleged was the withholding of Brady evidence and introduction of fabricated evidence at trial. *See Scott*, 775 F. Supp. at 1204. As the court explained, the plaintiffs did not allege their rights were violated by introducing the testimony obtained in the interviews at trial. Therefore, these policies did not *cause* the alleged constitutional violation. *See id.*

Here, there is even less of a connection. Plaintiffs allege their rights were violated when American Fork police officers entered their home and seized Janene. *See* Complaint ¶¶ 209–361, Ex. A. Plaintiffs' neighbors' lights and shed—things that allegedly happened in 2017 and 2020—had nothing to do with the alleged unlawful entry and use of force by American Fork police officers. Indeed, the Incident did not have anything to do with Plaintiffs' neighbors' lights or shed—it had to do with allegations by the neighbors that Janene was throwing rocks. *See id.* ¶ 211. And Cedar Hills was not involved in the Incident whatsoever. It did not receive a call about Janene's alleged assault on Plaintiffs' neighbor. Goodwin Decl. ¶ 8, Ex. B. Cedar Hills did not decide to issue the citation. *Id.* ¶ 9. American Fork did not even notify Cedar Hills that its

officers were issuing a citation or going to Plaintiffs' home. *Id.* ¶¶ 10–11. Cedar Hills's alleged

failure to enforce its supposed light and shed ordinances back in 2017 and 2020 were certainly

not even close to the "direct cause" or "moving force" behind American Fork officers' entry and

use of force.

2. *Plaintiffs cannot show Cedar Hills failed to train and therefore caused the alleged constitutional violations.*

"A municipality's culpability for a deprivation of rights is at its most tenuous where a

claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "To satisfy

[Section 1983], a municipality's failure to train its employees in a relevant respect must amount

to 'deliberate indifference to the rights of persons with whom the [untrained employees] come

into contact.'" *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

"[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor

disregarded a known or obvious consequence of his action." *See Bd. of Cnty. Comm'rs of Bryan

Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997) (cleaned up). For example, "when city

policymakers are on actual or constructive notice that a particular omission in their training

program causes city employees to violate citizens' constitutional rights, the city may be deemed

deliberately indifferent if the policymakers choose to retain that program." *Connick*, 563 U.S. at

61.

Typically, a plaintiff must show "[a] pattern of similar constitutional violations by

untrained employees . . . to demonstrate deliberate indifference for purposes of failure to train."

*Id.* at 62. But there is a narrow exception that will hold a municipality liable for failure to train

after a single incident when "a violation of federal rights may be a highly predictable

consequence of a failure to equip law enforcement officers with specific tools to handle recurring

situations." *Bryan Cnty.*, 520 U.S. at 409. In either case, it is "not enough to show that there were

general deficiencies in the [municipality's] training program." *Estate of Burnett*, 763 F. Supp. 3d at 1289 (D. Colo. 2025) (quoting *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010)). The plaintiff must "identify how training was inadequate." *Id.* (cleaned up). And to prove causation, the plaintiff must prove "the injury [would] have been avoided had the employee been trained under a program that was not deficient in the identified respect[s]." *City of Canton*, 489 U.S. at 391.

As an initial matter, Cedar Hills did not fail to train. In the Agreement, Cedar Hills and American Fork agreed that American Fork would maintain the responsibility to train its officers. *See* Agreement § 4, Ex. C. American Fork Police Department has specific and detailed policies requiring training for its officers and employees. *See* Policy 207, Ex. H. And since before 2021, American Fork Police Department has provided regular trainings to its officers and employees, and Officer Craig and Officer Blackburn were trained. *See* Training History Reports, Ex. I. Because the officers were undisputedly trained, this is dispositive of the failure-to-train theory for municipal liability. Furthermore, Plaintiffs have not identified any specific failures in the trainings. Nor can they show that the unspecified failure to train would have prevented the alleged constitutional violation. In fact, Defendants have not designated a single expert to opine on the adequacy of American Fork's police trainings.[1]

And finally, Plaintiffs have no evidence that Cedar Hills was deliberately indifferent by failing to train. Indeed, prior to the Incident, Cedar Hills had never received an allegation or complaint that American Fork police had violated the Constitution. Goodwin Decl. ¶¶ 17–18, Ex.

---

[1] Expert testimony about the adequacy of a training program is helpful evidence for a jury. *See Zuchel v. City & Cnty. of Denver, Colo.*, 997 F.2d 730, 742 (10th Cir. 1993). And such expert testimony is likely required to prove single-incident liability under a failure-to-train theory. *See Brown v. Gray*, 227 F.3d 1278, 1287 n.3 (10th Cir. 2000) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)).

B, let alone notice of similar unconstitutional conduct. That is, Cedar Hills had no notice that American Fork's training may be deficient in some way. Without that, there is no dispute that Cedar Hills did not act with deliberate indifference to Plaintiffs' rights. Plaintiffs cannot show Cedar Hills is liable based on a failure to train.

B.  <u>There Is No Evidence that Cedar Hills Acted with Deliberate Indifference.</u>

Plaintiffs must also show Cedar Hills was deliberately indifferent to Plaintiffs' rights. *See Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 770–71 (10th Cir. 2013); *Kuchcinski*, 2019 UT 21, ¶ 34 (cleaned up). They can't. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cnty.*, 520 U.S. at 410. "The deliberate indifference requirement is satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Kuchcinski*, 2019 UT 21, ¶ 34 (cleaned up); *see also Schneider*, 717 F.3d at 771 (cleaned up).

> [D]eliberate indifference may be shown where the municipality has failed to act despite a pattern of repeated constitutional offenses, or where there is evidence that the plaintiff complained to the municipality about a constitutional violation and the municipality did nothing. It can also be established when the need for more or different action is so obvious, and the inadequacy of the current policy or procedure so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need.

*Kuchcinski*, 2019 UT 21, ¶ 34 (cleaned up).

As discussed above, Plaintiffs cannot show a pattern of repeated constitutional offenses. There is nothing about the disputes related to Plaintiffs' neighbors' lighting or shed placement that would have put Cedar Hills on notice that American Fork police officers would allegedly unlawfully enter another's home and seize a person. In fact, Cedar Hills's ordinances are not

15

even tenuously related to the alleged constitutional violations of unlawful entry and excessive use of force. And as already discussed, Cedar Hills had never received any complaint that American Fork police officers violated constitutional rights, including through unlawful entry or excessive force prior to the Incident. Goodwin Decl. ¶¶ 17–18, Ex. B. Therefore, there is no evidence that Cedar Hills had actual or constructive notice that its action or failure to act was substantially certain to result in a constitutional violation. Without that, there is no dispute that Cedar Hills did not act with deliberate indifference to Plaintiffs' rights.

Because it is undisputed that Plaintiffs cannot satisfy the elements to hold Cedar Hills liable for the alleged constitutional violations, the Court should enter summary judgment in Cedar Hills's favor on the constitutional claims against it (i.e., the Third, Fourth, Ninth, and Tenth Causes of Action).

II.  **AS A MATTER OF LAW, PLAINTIFFS CANNOT SUCCEED ON THEIR SECTION 1985 CONSPIRACY CLAIM AGAINST CEDAR HILLS.**

In their Thirteenth Cause of Action, Plaintiffs allege Cedar Hills participated in a conspiracy to deprive Plaintiffs of their rights in violation of 42 U.S.C. § 1985(3).[2] This statute states, in relevant part,

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protections of the laws, or of the equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

---

[2] While the Complaint does not specifically identify subsection (3) as the basis for the claim, it is the only subsection that applies to the allegations. A claim under Section 1985(2) requires "(1) a conspiracy, (2) to deter attendance in court or testimony by force or intimidation or to injure a witness for having appeared in court or testified, and (3) injury to the plaintiff." *Hogan v. Winder*, 762 F.3d 1096, 1113 (10th Cir. 2014). And Section 1985(1) involves a conspiracy to prevent an officer from performing his or her duties. Neither of those were alleged in the Complaint.

16

42 U.S.C. § 1985(3). "The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Castro v. Utah Cnty.*, No. 2:22-cv-00464, 2024 WL 4252940, at *8 (D. Utah Sept. 20, 2024) (quoting *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993)).

To show a conspiracy, a plaintiff must "show a meeting of the minds among various defendants to violate his constitutional rights." *Id.* (cleaned up). Additionally, Section 1985(3) "does not apply to all tortious, conspiratorial interferences with the rights of others, but rather, only to conspiracies motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Tilton*, 6 F.3d at 686. In other words, Section 1985 does not involve any conspiracy to deprive someone of their constitutional rights. It "requires proof that a conspirator's action was motivated by a class-based, invidiously discriminatory animus." *Dixon v. City of Lawton, Okla.*, 898 F.2d 1443, 1447 (10th Cir. 1990) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).[3] There is no evidence to satisfy these elements.

Plaintiffs have not alleged any race-based or class-based discrimination whatsoever. *See generally* Complaint, Ex. A. And there is no evidence of race-based or class-based discrimination in the record. This is dispositive. *See Pueblo of Pojoaque v. State*, 233 F. Supp. 3d 1021, 1139 (D.N.M. 2017) (dismissing a § 1985(3) claim where the Complaint does not include allegations that a class-based "discriminatory purpose motivated the Defendants' actions").

Furthermore, Plaintiffs cannot prove a conspiracy between Cedar Hills and any other Defendant. A conspiracy requires a meeting of the minds between two or more people. But here,

---

[3] In fact, a § 1985(3) claim may be limited only to race-based animus. *See Tilton*, 6 F.3d at 686 (citing *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 836 (1983)).

Cedar Hills did not know about the Incident until after it occurred. Goodwin Decl. ¶ 12, Ex. B. Cedar Hills did not issue the citation, nor was it notified about the citation. *Id.* ¶¶ 9–10. And Cedar Hills did not instruct American Fork about how to interact with Plaintiffs *Id.* ¶ 14. Plaintiffs do not have any evidence that Cedar Hills and any other person had a meeting of the minds to deprive Plaintiffs of their rights. Without evidence of (i) class-based discrimination and (ii) a conspiracy between Cedar Hills and another person, Plaintiffs' Section 1985 claim fails as a matter of law.

### III.   PLAINTIFFS' "CASE APPROPRIATE" CAUSE OF ACTION IS NOT A PROPER CLAIM THAT FAILS AS A MATTER OF LAW.

In their Seventeenth Cause of Action, Plaintiffs allege they "are constitutionally guaranteed to have remedy for their civil injuries" under Article I, § 11 of the Utah Constitution. Complaint ¶¶ 701–708, Ex. A. Article I, section 11 of the Utah Constitution, also known as the "open courts" provision, "was not meant to create a new remedy or a new right of action." *Puttuck v. Gendron*, 2008 UT App 362, ¶ 19, 199 P.3d 971 (cleaned up). "Rather, the open courts provision was intended to place a limitation upon the legislature to prevent that branch of the state government from closing the doors of the courts against any person who has a legal right which is enforceable in accordance with some known remedy." *Id.* (cleaned up). In other words, the open courts provision only provides a potential constitutional challenge to a *legislative action*. *See Bingham v. Gourley*, 2024 UT 38, ¶ 15, 556 P.3d 53.

Here, Plaintiffs have brought claims against municipalities and individual officers for damages they allegedly suffered as a result of alleged unlawful entry and excessive use of force. They do not challenge the constitutionality of any legislative actions.[4] *See generally* Complaint,

---

[4] Plaintiffs never sent notice to the Attorney General's office as required by Rule 24(d) of the Utah Rules of Civil Procedure when challenging the constitutionality of a law.

Ex. A. This is not a valid claim under the open courts provision. Therefore, the Court should grant summary judgment on the Seventeenth Cause of Action.

IV.     **AS A MATTER OF LAW, CEDAR HILLS DID NOT HAVE A DUTY TO INTERVENE OR REPORT THE ALLEGED OFFICER MISCONDUCT.**

In their Twenty-Fifth Cause of Action, Plaintiffs allege Cedar Hills violated Utah Code Ann. § 53-6-210.5 by failing to intervene or report officer misconduct. To summarize, this statute requires "an officer[5] who is present and knowingly observes another officer engage in police misconduct" to "intervene to prevent the misconduct from continuing to occur." Utah Code Ann. § 53-6-210.5(2)(a). It also requires "a law enforcement agency employee" who "is present and knowingly observes an officer engage in police misconduct" to "promptly report the misconduct." *Id.* § 53-6-210.5(3)(a). And it requires "each law enforcement agency in the state" to "adopt written policies that conform with the minimum standards" in Utah Code Ann. § 53-6-210.5(5)(a). It does not have any requirements for a city or municipality outside of a law enforcement agency.

As an initial matter, Utah Code Ann. § 53-6-210.5 was not in effect at the time of the Incident. The Incident occurred on April 23, 2021. *See* Complaint ¶ 232, Ex. A. The statute first became effective over a year after the Incident on May 4, 2022. No one, including Cedar Hills, would have been required to comply with a non-existent statute.

Even if the statute did exist at the time (it did not), it does not include a private right of action. "A private statutory right of action exists when a private party can bring a lawsuit for relief from injuries caused by another's violation of a . . . statute." (cleaned up). *Hayden v. Burt & Payne PC*, 2021 UT App 102, ¶ 8, 501 P.3d 106 (quoting *Buckner v. Kennard*, 2004 UT 78, ¶

---

[5] "'Officer' means the same as peace officer as defined in Section 53-13-102." *See* Utah Code Ann. § 53-6-210.5(1)(c). This includes "(1) law enforcement officers, (2) correctional officers, (3) special function officers; and (4) federal officers." *See* Utah Code Ann. § 53-13-102.

37, 99 P.3d 842). "To determine whether a statute creates a private right of action," Utah state courts "look first to the plain language of the statute for an express indication that a private right of action was intended." *Id.* (cleaned up). "Absent such specific direction from the legislature," Utah courts "are not generally in the habit of implying a private right of action based upon state law." *Id.* (cleaned up). Indeed, "Utah courts have rarely, if ever, found a Utah statute to grant an implied private right of action." *Buckner*, 2004 UT 78, ¶ 43. This is particularly true "when the Legislature has already designated a method of resolution through an administrative agency specifically empowered to handle issues." *Williamson v. Farrell*, 2024 UT App 111, ¶ 32, 557 P.3d 214 (cleaned up).

Utah Code Ann. § 53-6-210.5 is part of the Peace Officer Standards and Training Act (the "**POST Act**") that regulates peace officers and sets forth their certification requirements. *See* Utah Code Ann. § 53-6-101 et seq. The POST Act establishes a council that "has the authority to issue a Letter of Caution, or suspend or revoke the certification of a peace officer." *Id.* § 53-6-211(1)(g); *see also id.* § 53-6-107. Therefore, if a person violates the intervening and reporting requirements set forth in Utah Code Ann. § 53-6-210.5 (or other sections of the POST Act), the peace officer may be disciplined by the council. This is an administrative remedy. Nothing in the POST Act creates a private right of action for a violation. *See generally id.* § 53-6-101 et seq. Therefore, Plaintiffs do not have a private remedy for violations of the POST Act, and their claim fails as a matter of law.

And even if there is a private right of action, the claim also undisputedly fails on the merits. There is no dispute that Cedar Hills is not a law enforcement officer, correctional officer, special function officer, or a federal officer. Nor is it a law enforcement agency employee or even a law enforcement agency. It is a city. What's more, it is a city that does not have a law

enforcement agency. Goodwin Decl. ¶ 5, Ex. B. As such, the provisions of Utah Code Ann. § 53-6-210.5 do not apply to Cedar Hills. Not only that, but it is undisputed that Cedar Hills was not "present" when the alleged police misconduct occurred. *Id.* ¶ 7. Only Officer Craig and Officer Blackburn—American Fork police officers—and Plaintiffs were. *See* Complaint, Ex. A. For these reasons, Cedar Hills cannot be held liable and is entitled to summary judgment on Plaintiffs' Twenty-Fifth Cause of Action.

## V. CEDAR HILLS IS NOT LIABLE UNDER THE DOCTRINE OF RESPONDEAT SUPERIOR FOR AMERICAN FORK'S ACTIONS.

Plaintiffs allege various non-constitutional claims against American Fork and its law enforcement officers. With the Twenty-Sixth Cause of Action, Plaintiffs seek to hold Cedar Hills liable for those claims under the doctrine of respondeat superior. "Respondeat superior liability permits 'employers to be held vicariously liable for the torts their employees commit when the employees are acting within the scope of their employment." *Cordero v. Olson Assocs. P.C.*, 740 F. Supp. 3d 1117, 1125 (D. Utah 2024) (quoting *Drew v. Pac. Life Ins. Co.*, 2021 UT 55, ¶ 56, 496 P.3d 201). Generally, "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." *Magana v. Dave Roth Constr.*, 2009 UT 45, ¶ 22, 215 P.3d 143 (cleaned up). "This general rule recognizes that one who hires an independent contractor and does not participate in or control the manner in which the contractor's work is performed owes no duty of care concerning the safety of the manner or method of performance implemented." *Id.* (cleaned up).

There is an exception called the "retained control doctrine," which will apply respondeat superior to acts or omissions caused by an independent contractor "in *unique circumstances* where an employer of an independent contractor exercises enough control over the contracted work to give rise to a limited duty of care." *Id.* ¶ 23 (cleaned up). To determine "whether an

21

employer exercised sufficient control to create liability under the retained control doctrine," Utah courts "apply the active participant standard." *Id.* ¶ 24. "An employer actively participates if the employer directs that the contracted work be done by use of a certain mode or otherwise interferes with the means and methods by which the work is to be accomplished." *Id.* (cleaned up).

There is no dispute that Cedar Hills contracts with American Fork for public safety services, including law enforcement. *See* Agreement, Ex. C. American Fork is Cedar Hills's independent contractor; not an employee. *See id.* § 4 ("American Fork shall at all times be considered an independent contractor for all purposes under this Agreement . . . . Nothing in this Agreement shall be deemed or construed to create a[n] . . . employer/employee relationship between the parties."). Therefore, Cedar Hills could only be liable for American Fork's alleged torts if Plaintiffs can demonstrate that Cedar Hills retained control over the contracted work. But there is no evidence to make that showing.

There is no evidence that Cedar Hills was an "active participant" in the law enforcement services American Fork provided. The Agreement between Cedar Hills and American Fork is clear that American Fork would be solely responsible for its law enforcement services. They agreed that "[n]either party has the right to exercise any control over the other party, its employees, its Officers or its agents." *Id.* And under the Agreement, American Fork expressly retained "the sole right and authority to . . . direct and control the manner in which its employees and Officers discharge their professional and work duties." *Id.* And in fact, Cedar Hills does not direct American Fork or American Fork Police Department about how to provide their law enforcement services. Goodwin Decl. ¶ 13, Ex. B. And even in this particular instance, Cedar Hills never directed American Fork or American Fork Police Department about how to interact

22

with Plaintiffs. *Id.* ¶ 14. Cedar Hills did not even know about the allegations, the citation, or that American Fork police were going to Plaintiffs' home prior to the Incident. *See id.* ¶¶ 8–12. Cedar Hills could not possibly have actively participated or retained control over this specific Incident.

Because (i) American Fork and its officers are undisputedly independent contractors for Cedar Hills—not employees—and (ii) there is no evidence that Cedar Hills retains control or actively participates in the law enforcement services American Fork provides, Cedar Hills cannot be held liable for American Fork's (or its employees') acts or omissions. The Court should enter summary judgment on the respondeat superior claim against Cedar Hills.

VI.     **AS A MATTER OF LAW, CEDAR HILLS CANNOT BE HELD LIABLE FOR PUNITIVE DAMAGES.**

To the extent any of Plaintiffs' claims remain against Cedar Hills, it cannot be liable for punitive damages, as Plaintiffs request. The United States Supreme Court has held that a municipality cannot be liable for punitive damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 261–71 (1981). Furthermore, Utah law generally prohibits an award of punitive damages against municipalities. *See* Utah Code Ann. § 63G-7-603(1)(a) ("A judgment may not be rendered against a governmental entity for exemplary or punitive damages."). Because Cedar Hills is undisputedly a municipality, Plaintiffs' request for punitive damages against Cedar Hills should be summarily denied.

## CONCLUSION

Because Cedar Hills and its policies have to relation to the Incident, Plaintiffs cannot meet their burden to show Cedar Hills violated their constitutional rights. Nor can they show Cedar Hills participated in a class-based conspiracy to deprive Plaintiffs of their rights. Their "case appropriate" and § 53-6-210.5 claims are not proper claims. And it is undisputed that American Fork is an independent contractor who retained control over the methods by which it

23

performed its law enforcement services. In these circumstances, Cedar Hills cannot be liable for American Fork under a respondeat superior theory. For these reasons and those stated more fully above, Cedar Hills respectfully requests the Court grant summary judgment in its favor on Plaintiffs' claims against it.

DATED this 29th day of June 2026.

BENNETT TUELLER JOHNSON & DEERE

/s/ *Kimberly A. Smith*
H. Craig Hall
Hyrum J. Bosserman
Kimberly A. Smith
*Attorneys for Cedar Hills City*