# EXHIBIT A

## (Second Amended Complaint)

JUSTIN D. HEIDEMAN (USB #8897)
NORMAN W. PEAT, JR. (USB #17836)
**HEIDEMAN & ASSOCIATES**
2696 N. University Ave. Suite 180
Provo, Utah 84604
Tel: (801) 472-7742
Fax: (801) 374-1724
Email: jheideman@heidlaw.com
        npeat@heidlaw.com
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **JANENE THORPE**, an individual; **CHRISTOPHER THORPE, SR.**, an individual; **CHRISTOPHER THORPE, JR.**, an individual; **CHARLIE THORPE**, an individual;<br><br>      Plaintiffs,<br><br>vs.<br><br>**CEDAR HILLS CITY**, a government entity; **AMERICAN FORK CITY**, a government entity; **AMERICAN FORK CITY POLICE DEPARTMENT**, a government entity; **DARREN FALSLEV**, in his official capacity and individual capacity as AMERICAN FORK POLICE CHIEF; **C. SLATE BLACKBURN**, in his official and individual capacities; **PHILLIP W.S. CRAIG**, in his official and individual capacities; **JENNIFER L. NAKAI**, in her official and individual capacities, **KANDACE N. KONECHNY**, in her official and individual capacities; **SETH WIATE**, in his official and individual capacity; and **JOHN** or **JANE DOES**, 1-15, in their individual and/or official capacities;<br><br>      Defendants. | **SECOND AMENDED COMPLAINT VERIFIED AND DEMAND FOR JURY**<br><br><br><br><br><br><br><br><br><br><br><br>Civil No.: 2:23-CV-00242<br>Judge: Hon. David Barlow<br>Magistrate Judge: Hon. Daphne A. Oberg |

COMES NOW, Plaintiffs, JANENE THORPE, CHRISTOPHER TIMOTHY THORPE, CHRISTOPHER TAYLOR THORPE, and CHARLIE THORPE ("Plaintiffs"), by and through the law firm of Heideman & Associates, and hereby complains, alleges, and avers against Defendants, CEDAR HILLS CITY, AMERICAN FORK CITY, AMERICAN FORK CITY POLICE DEPARTMENT, DARREN FALSLEV, C. SLATE BLACKBURN, PHILLIP W.S. CRAIG, JENNIFER L. NAKAI, KANDACE N. KONECHNY, SETH WAITE, and JOHN or JANE DOES, 1-15 (collectively "Defendants") as follows:

## PRELIMINARY STATEMENT

This is a civil rights action in which Plaintiffs seek relief for Defendants' violation of rights guaranteed by the United States Constitution, specifically the Fourth and Fourteenth Amendments as well as the Utah Constitution. These rights are further clarified and supplemented by the Civil Rights Act of 1871, codified as 42 U.S.C. §§ 1983, 1985, 1986, and 1988. Plaintiffs seek compensatory and punitive damages, affirmative and equitable relief, attorney fees, costs, interest, and any other relief as this Honorable Court deems just and equitable. This matter also involves state causes of action for patterns of unlawful behavior and intentional and negligent infliction of emotional distress, negligence for which Plaintiffs seek compensatory and punitive damages, affirmative and equitable relief, attorney fees, costs, interest, and any other relief as this Court deems just and equitable.

## JURISDICTION AND GROUNDS

1. This is an action for injunctive relief and damages pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988 based upon the multiple and continuing violations of Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution.

2. This Court has jurisdiction over Plaintiffs' federal claim under 28 U.S.C. §§ 1331, 1343,

1983, 1985, 1986, and 1988.

3. Jurisdiction also exists under the Declaratory Judgment Act 28 U.S.C. § 2201(a) and 2202.

4. This Court has supplemental jurisdiction over Plaintiffs' Utah state law and common law claims based on Utah state law under 28 U.S.C. § 1367.

5. Venue is proper under 28 U.S.C. §§ 1391 and 1331 because the claims made in this *Second Amended Verified Complaint* occurred and arose in the State of Utah, in this District, and the Central Division

6. Venue is proper in the District of Utah, Central Division under Utah Code Ann. § 63G-7-502, because Defendants, Cedar Hills City, American Fork City, and American Fork City Police Department, are governmental entities or political subdivisions located in Utah County, State of Utah.

7. Plaintiffs have strictly satisfied the *Notice of Claim* requirements under Utah Code Ann. § 63G-7-401 *et seq*.

8. Plaintiffs seek damages under federal law pursuant to the claims for relief specified below, in amounts to be proven at trial.

9. Plaintiffs are seeking damages under Utah state law pursuant to supplemental jurisdiction pursuant to the claims for relief specified below, in amounts to be proven at trial.

10. This Court has authority to award costs and attorney fees under 42 U.S.C. § 1988 and as allowed under Utah state law.

<u>**PARTIES**</u>

11.    Plaintiff, Janene Thorpe ("Janene"), is an individual who resides at 9267 N. Canyon Heights Drive, Cedar Hills City, and is domiciled in Utah County, State of Utah.

12.    Plaintiff, Christopher Timothy Thorpe ("Chris"), is an individual who resides at 9267 N. Canyon Heights Drive, Cedar Hills City, and is domiciled in Utah County, State of Utah.

13.    Plaintiff, Christopher Taylor Thorpe ("Taylor"), is an individual who resides at 9267 N. Canyon Heights Drive, Cedar Hills City, and is domiciled in Utah County, State of Utah.

14.    Plaintiff, Charlie Thorpe ("Charlie"), is an individual who resides at 9267 N. Canyon Heights Drive, Cedar Hills City, and is domiciled in Utah County, State of Utah.

15.    Defendant, Cedar Hills City ("Cedar Hills"), is a political subdivision of the State of Utah, which may be sued in its own name pursuant to law.

16.    The policies of Cedar Hills directly caused Plaintiffs harm, justifying an award of damages against Cedar Hills in Plaintiffs' favor.

17.    Defendant, American Fork City ("AF City"), is a political subdivision of the State of Utah, which may be sued in its own name pursuant to law.

18.    Defendant, American Fork Police Department ("AFPD"), is an agency/department of the AF City that has agency jurisdiction over the Cedar Hills area by virtue of an agreement with Cedar Hills City.

19.    The policies of AF City and AF Police directly caused the Plaintiffs' harm, justifying an award of damages against the City in Plaintiffs' favor.

20. Defendant, American Fork Police Department ("AFPD"), is an agency/department of AF City that has agency jurisdiction over the Cedar Hills area by virtue of an agreement with Cedar Hills City.

21. The policies of AFPD directly caused the Plaintiffs' harm, justifying an award of damages against the AFPD in Plaintiffs' favor under liable under 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

22. Defendant, Darren Falslev ("Chief Falslev"), is the Chief of Police with the authority to act derived from Utah state law and/or the commands and directives of his superiors and is, therefore, a person liable under 42 U.S.C. §§ 1983, 1985, 1986 and 1988.

23. At all times material hereto, Chief Falslev was responsible for enforcing the laws and rules of AFPD and Cedar Hills.

24. Chief Falslev is sued in his official capacity.

25. Defendant, C. Slate Blackburn ("Officer Blackburn"), is a law enforcement officer with the authority to act derived from Utah state law and/or the commands and directives of his superiors and is, therefore, a person liable under 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

26. At all times material hereto, Officer Blackburn was responsible for enforcing the laws, rules, and policies of AFPD and Cedar Hills.

27. Officer Blackburn is sued in his official and personal capacity.

28. Defendant, Phillip W.S. Craig ("Officer Craig"), is a law enforcement officer with the authority to act derived from Utah state law and/or the commands and directives of his superiors and is, therefore, a person liable under 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

29. At all times material hereto, Officer Craig was responsible for enforcing the laws, rules,

and policies of AFPD and Cedar Hills.

30. Officer Craig is sued in his official and personal capacity.

31. Defendant, Jennifer L. Nakai ("Sgt. Nakai"), is a law enforcement officer with the authority to act derived from Utah state law and/or the commands and directives of her superiors and is, therefore, a person liable under 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

32. At all times material hereto, Sgt. Nakai was responsible for enforcing the laws, rules, and policies of AFPD and Cedar Hills.

33. Sgt. Nakai is sued in her official as well as her personal capacity.

34. Defendant, Kandace N. Konechny ("Detective Konechny"), is a law enforcement officer with the authority to act derived from Utah state law and/or the commands and directives of her superiors and is, therefore, a person liable under 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

35. At all times material hereto, Detective Konechny was responsible for enforcing the laws, rules, and policies of AFPD and Cedar Hills.

36. Detective Konechny is sued in her official and personal capacity.

37. Defendant, Seth Waite ("Officer Waite"), is a law enforcement officer with the authority to act derived from Utah state law and/or the commands and directives of his superiors and is, therefore, a person liable under 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

38. At all times material hereto, Officer Waite was responsible for enforcing the laws, rules, and policies of AFPD and Cedar Hills.

39. Officer Waite is sued in his official and personal capacity.

40. Defendants, John or Jane Does, 1-15, are other unnamed City, Department, and/or State employees/entities who, in addition to the named Defendants, are responsible for acts alleged herein.

41. This action is brought against all defendants, including Doe Defendants, in their individual and official capacities.

42. Doe Defendants' authority to act was derived from AF City, Cedar Hills, AFPD, Utah state law, Federal Law, and/or the commands and directives of their superiors.

43. All acts of the individuals and entities were performed under the color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Utah and the Federal Government.

44. Plaintiffs will seek leave of this Court to amend this *Complaint* once the true names and capacities have been ascertained.

### BACKGROUND AND GENERAL ALLEGATIONS

#### GENERAL BACKGROUND

45. Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

46. The AFPD Officers named herein are direct representatives of the American Fork Police Department.

47. The AFPD Officers are under the direct command of the then American Fork Police Chief, Darren Falslev.

48. Chris and Janene Thorpe, with their two sons, Taylor and Charlie, moved into their home, the Thorpe Property, in Cedar Hills on or about June 21, 2016.

49.  The Thorpes soon began experiencing aggression and harassment from their backyard neighbors, Edward and Maria Sanches (individually "Edward" and "Maria," collectively "Sanches") at 9254 Emerald Lake Cove, Cedar Hills.

50.  The rear of the Thorpe Property abuts the middle part of the rear of the Sanches Property.

51.  The Sanches Property extends across the entirety of the back boundary line and beyond both sides of the Thorpe Property. *See Exhibit A Parcel Map.*

52.  Thorpes' backyard extends west from the home ("Upper Backyard"), before sloping sharply down to their lower yard ("Lower Backyard"). *See id.*

53.  The Upper Backyard and Lower Backyard are separated by a retaining wall with an approximate ten-foot height difference. *See id.*

54.  Before the Thorpes moved in, the Sanches treated the Lower Backyard as their own.

55.  Specifically, the Sanches planted trees on/across the boundary line; placed a shed partly on the Lower Backyard; built and maintained the retaining wall; and maintained the Lower Backyard; among other acts of possession and control.

56.  The Thorpes' use of the Lower Backyard opposed the Sanches' open intent to claim it.

57.  The Sanches escalated their acts to purposefully challenge the Thorpes' use of the Thorpe Lower Backyard.

58.  Specifically, the Sanches removed/moved the Thorpes' items; changed boundary line markers; trespassed and refused to move off the Thorpes' property; and harassed the Thorpes when using their Lower and Upper Backyard.

59.  The Sanches furthered their efforts by going onto the Lower Backyard to observe, record, and inspect the Thorpes in the Thorpes' yard and windows without permission and against

repeated requests to stop; placing surveillance cameras (including in places to record the Thorpe Property otherwise unobservable to the Sanches); among other acts threatening the Thorpes' use of their backyard.

60. Cedar Hills, AFPD, and AFPD Officers early on took sides supporting and encouraging the Sanches' actions and actively participating in the Sanches' actions against the Thorpes.

61. This has continued as Cedar Hills, AFPD, and AFPD Officers continue to take no action against the Sanches for continuing actions taken by the Sanches against the Thorpes.

62. Most of the Sanches' claims against the Thorpes occurred in the Thorpes' Lower Backyard.

63. The Sanches claimed the Thorpes were killing trees on "Sanches Property;" dumping yard waste on "Sanches Property;" and claiming trespass by the Thorpes; among other allegations.

64. All of the aforementioned claims by the Sanches occurred in the Thorpe Lower Backyard that the Sanches were trying to take from the Thorpes.

65. Cedar Hills, AFPD, AFPD Officers, never investigated who owned the Lower Backyard.

66. Cedar Hills, AFPD, AFPD Officers threatened the Thorpes with fines, citations, and arrest for the Thorpes' use of their own property while ignoring and failing to properly investigate the violations by the Sanches of trespass, violation of privacy, stalking, and other unlawful acts taken by the Sanches.

67. Cedar Hills, AFPD, AFPD Officers rarely sought out the Thorpes' version of the allegations.

68. AFPD, AFPD Officers rarely investigated or failed to investigate the Sanches' allegations properly, falsified "evidence," and sought charges against Thorpes without sufficient evidence.

69. AFPD, AFPD Officers rarely took the Thorpes' calls.

70. If AFPD, AFPD Officers did take the Thorpes' call, AFPD, AFPD Officers failed to return or follow up with the Thorpes and left the Thorpes without access to AFPD services.

71. AFPD, AFPD Officers instructed the Thorpes not to call or use other emergency services that should be available to the public, including the Thorpes.

72. AFPD, AFPD Officers exhibited a bias against the Thorpes.

73. AFPD, AFPD Officers knew both the Thorpes, and the Sanches videoed backyards.

74. Specifically, AFPD, AFPD Officers were fully aware that the Sanches videoed/surveilled the entirety of the Thorpe Lower and Upper Backyard, and into the Thorpes' home.

75. AFPD, AFPD Officers failed or refused to request this evidence in any law enforcement investigations of alleged Thorpe actions.

76. AFPD's failure to take corrective action against the Sanches' bad acts while addressing most, if not all, of the Sanches' complaints against the Thorpes, encouraged the Sanches to continue and increase their onslaught of accusations and claims against the Thorpes.

77. Cedar Hills, AFPD, AFPD Officers' responses to Sanches' allegations by threatening, intimidating, and failing to address the Sanches' bad acts caused the Thorpes to be unable to use, or to minimally use the Thorpes' backyard because of fear of new allegations, citations, and intimidation by AFPD as well as the continued sanctions of the Sanches' violation of the Thorpes' privacy.

78. The Sanches filed a frivolous quiet title action ("Quiet Title") to try to legally condone the Sanches' unlawful acts to take the Lower Backyard. *See, Fourth Judicial District, Case No. 180300305.*

79. The Sanches' frivolous Quite Title complaint included a trespass action against the Thorpes for using the Thorpes' own Lower backyard. *See id.*

80. The Thorpes counterclaimed, and the Parties ultimately stipulated to the boundary line as asserted by the Thorpes and as represented by the Withers Survey completed on or around February 1, 2019. *See id.*

81. Unhappy with not taking the Lower Backyard, the Sanches increased their harassment of the Thorpes and doubled the efforts to use AFPD, and AFPD officers to damage the Thorpes.

82. AFPD and AFPD Officers continued improperly construing "evidence" against the Thorpes, falsifying it in favor of Sanches' allegations while not properly investigating or even attempting to verify the Sanches' allegations.

83. AFPD and AFPD Officers continued to refuse to respond to or investigate the illegal actions of the Sanches toward the Thorpes and intentionally refused to accept the Thorpes' calls.

84. Threats by AFPD, AFPD Officers increased even though Thorpes only called non-emergency dispatch for issues with the Sanches dispute.

85. Sergeant, Jennifer L. Nakai (Sgt. Nakai") falsely accused the Thorpes of calling the emergency line 911; then threatened the Thorpes with retaliation and criminal charges if the Thorpes did call 911 or complained.

86. On the infrequent occasions when AFPD Officers did respond, AFPD Officers blamed the Thorpes.

87. AFPD Officers continued to threaten the Thorpes or issue baseless citations without sufficient evidence, all while refusing to investigate the Sanches properly.

88. Moreover, AFPD allowed the Sanches to continue to video the Thorpes on the Thorpes' property and into their home, even coming onto the Thorpe property to do so, violating the Quiet Title Settlement which resulted in the dismissal of the Fourth Judicial District, Case No. 180300305.

89. For example, Sergeant Nakai threatened the Thorpes with citations unless the Thorpes immediately changed the lighting in the Thorpes' Lower Backyard (placed to protect against the false allegations) to prevent ambient lighting from entering the Sanches' Property.

90. Sergeant Nakai, Detective Konechny, Officers Craig, and Blackburn utterly ignored video evidence showing no wrongdoing by the Thorpes attempting to intimidate, threaten, or assault the Sanches.

91. Cedar Hills also refused to act when contacted by the Thorpes.

92. Cedar Hills continued to support the Sanches' wrongdoing through its employees' actions.

93. Cedar Hill's Mayor, Denise Anderson, is a close friend of the Sanches.

94. Mayor Anderson and the Sanches are understood to be regularly observed socially.

95. AFPD, AFPD Officers, Chief Falslev allowed AFPD to be tools used by the Sanches to claim the Thorpe Lower Backyard by unlawfully:

a. Allowing AFPD, AFPD Officers to create false reports against the Thorpes when legally using the Thorpes' backyard and creating inaccurate incident reports.

b. Sanctioning false allegations against the Thorpes by failing to investigate or verify.

c. Encouraging ongoing harassment and claims by the Sanches by responding to and supporting complaints by the Sanches without any substantiated evidence.

d. Allowing the Sanches to continue video recording and physical trespasses on the Thorpes' property to continue.

e. Failing to take any action against the Sanches.

f. Sanctioning the violations of the Thorpes' privacy and property rights, preventing the Thorpes' regular use of their property and right to be secure in the Thorpes' home.

g. Encouraging and failing to sanction the Sanches' unlawful acts by accepting video surveillance and interpreting that surveillance video contrary to its substance in favor of the Sanches.

h. Encouraging the Sanches' ongoing harassment by writing reports consistent with only the Sanches' complaints without proper independent investigation and verification.

i. Creating an environment where AFPD and AFPD officers immediately validated all complaints by the Sanches and immediately rejected and presumed the Thorpes acted wrongfully.

j. AFPD's support and failure to condone the Sanches resulted in the Thorpes being unable to use the Thorpes' Upper and Lower Backyards, perform more than minimal yard work, or enjoy other typical uses of the Thorpes' backyard.

k. AFPD's support and failure to condone the Sanches resulted in the Thorpes losing both the enjoyment and use of a significant portion of the Thorpes' property, let alone the caution the Thorpes must use in draping the windows to prevent intrusion into the Thorpes' home by the Sanches.

i. Cedar Hills, AFPD, AFPD Officers fully adopted the ideology of the Sanches as the "good guys" and the Thorpes as "bad guys" and acted, promoted, and created a culture supporting this ideology in their treatment of the Thorpes.

ii. Cedar Hills, AFPD, AFPD Officers violated Utah Law, the Police Officer Code of Conduct, and AFPD's own internal Code of Conduct, policies, and rules.

iii. AFPD, Chief Falslev, and AFPD Officers failed to use best practices in policing actions toward the Thorpes and began denying the Thorpes of the Thorpes Rights guaranteed by the United States and Utah Constitutional.

iv. AFPD, Chief Falslev, and AFPD Officers created a pattern and unconstitutional policy within the AFPD that AFPD Officers were encouraged under the color of Utah state law to not follow state and federal law, best practices, code of police conduct and other required policies as to the Thorpes.

96. Cedar Hills, AFPD, Chief Falslev, and the AFPD Officers bought into the Sanches' adept interpersonal skills to malign the Thorpes and create an expectation and practice within the AFPD to accept, adopt, and falsify "evidence" supporting adverse treatment of the Thorpes.

97. The Thorpes' direct and straightforward manner is not culturally accepted, and disliked by AFPD, resulting in the Thorpes being often misunderstood and mischaracterized.

98. AFPD Sgt. Nakai, Officers Waite, Craig, Blackburn, and Konechny, intentionally and wrongfully interpreted the Thorpes' straightforward, frank mannerisms and attempts to clearly understand what was occurring as being obstructive and non-compliant.

### SPECIFIC POLICE TIMELINE AND ACTIONS

99. On January 13, 2021, through Sgt. Nakai, Adamson, and Officer Nordin's reports, Cedar Hills in Case #211100077 issued three charges against Janene: (1) U.C.A. §76-10-2701, littering on public/private land, C Misdemeanor; (2) U.C.A. §76-10-801, public nuisance, B Misdemeanor; (3) U.C.A. §76-10-102(4)(C), disorderly conduct after being asked to cease, B Misdemeanor.

100. Janene pleaded not guilty to the summons served on January 25, 2021.

101. All three charges filed against Janene in Case #211100077 were dismissed on February 14, 2021, as unsupportable.

102. Charge 1, brought under Utah Code Ann. § 76-10-2701, requires that a person throw items onto another's property without the owner's permission.

103. Charge 1 was unsupported by the information, officer reports, and evidence.

104. The officer reports misstated what the video evidence showed.

105. The information and officer reports did not address the statute's elements, and the statute is not applicable to a person's own property.

106. No authority approached Janene or asked her to cease any acts.

107. Charge 2, brought under Utah Code Ann. § 76-10-804, requires a finding of a public nuisance, which cannot be found on private property not viewable by the public.

108. Moreover, the evidence again was misstated and did not support the charge.

109. Charge 3, brought under Utah Code Ann. § 76-9-102(4), requires that a person did not comply with an officer's request to stop and again requires a public place.

110. The information and officer reports did not address the statute's elements, and the statute is not applicable to a person's own property.

111. No authority approached Janene or asked her to cease any acts.

112. These charges were forwarded by AFPD and AFPD Officers believed to be Sgt. Nakai and Adamson, and Officer Nordin, knowing there was no evidence against the Thorpes.

113. Moreover, dates supplied by Sgt. Nakai and Adamson, and Officer Nordin did not align with any allegations asserted by the Sanches, *i.e.*, cited dates between June 5, 2020, and August 8, 2020, but Count 1 cites September 9, 2020.

114. Sgt. Nakai and Adamson, and Officer Nordin's reports claim the law enforcement officers reviewed video evidence.

115. However, the Sgt's and Officer's summaries of video and other evidence, plainly demonstrate an intentional failure to correctly summarize and adequately describe any proof against the Thorpes or, at a minimum gross or reckless negligence and failure to appropriately investigate and analyze the "evidence" and "allegations."

116. An AFPD Case #20AF0360 initiated on July 4, 2020, by Sgt. Adamson against Janene.

117. Sgt. Adamson's report was based on Sanches' complaint of dog feces, orange peels, and dirty diapers in the Sanches' backyard.

118. The Sanches turned over videos alleging the videos purportedly identified Janene as the culprit.

119. The video shows nothing linking anyone to the alleged acts.

120. Moreover, the Sanches' "video" evidence is inconsistent when the Sanches constantly video the Sanches' property, the Thorpe Property, and the Thorpes.

121. The only "proof" is Edward's claiming the culprits **must** be the Thorpes in retaliation for the Quiet Title Settlement.

122. Proper investigation by AFPD Officers would clearly illustrate the Sanches lost the Quiet Title, the Lower Backyard was the Thorpes, the Sanches were forced to move the shed on the Thorpe Property, were told to stop surveilling/trespassing on Thorpe Property, and more importantly, that it was the Sanches who were retaliating.

123. Detective Murray followed up with Edward but made no other investigative efforts.

124. No one from AFPD asked, discussed, or requested any information from the Thorpes.

125. Detective Murray's failure to investigate was consistent with AFPD, Chief Falslev, and AFPD Officers' policy and pattern to believe and accept the Sanches' side in any dispute between the two neighbors and to find reasons to charge the Thorpes.

126. Detective Murray's report says that Edward knew he had no proof for AFPD to act.

127. Detective Murray stated he watched all of Edward's videos and saw no evidence of a perpetrator and that there was no probable cause of a crime.

128. Yet, Detective Murray affirmatively acted against Janene and submitted the case to Cedar Hills' prosecutors for screening resulting in unfounded charges against Janene.

129. No other authority from AFPD asked, discussed, or even requested any information from the Thorpes.

130. AFPD and AFPD Officers knew both the Thorpes and Sanches videoed their yards (the Sanches surveilling both) but refused to request said video, at least from the Thorpes.

131. Had AFPD done so, AFPD would have discovered that the neighborhood is frequented by dogs, coyotes, raccoons, and other wild animals that defecate on the neighborhood yards, as captured on video by the Thorpes.

132. AFPD and Sgt. Nakai and Adamson, Detective Murray, and Officer Nordin chose to follow AFPD's pattern and policy by seeking charges against the Thorpes without sufficient probable cause or evidence.

133. AFPD and AFPD Officers intentionally and willfully chose to use the authority of law to abuse the legal system to threaten and traumatize the Thorpes because of AFPD and AFPD Officers' biases.

134. On July 15, 2020, Cedar Hills' prosecutor declined to file charges against the Thorpes.

135. Unsatisfied, the Sanches continued their ongoing barrage of complaints against the Thorpes to the AFPD.

136. Many of these complaints were made to Sgt. Nakai, who then continued to welcome and entertain the Sanches' complaints while ignoring and not properly investigating any counter information from the Thorpes.

137. The Sanches reasserted the same or similar complaints against the Thorpes.

138. This time, asserting that someone threw chicken bones and other garbage on the Sanches' property.

139. Once again, no evidence showed any wrongdoing by any of the Thorpes.

140. Moreover, other explanations for the Sanches' complaints existed but AFPD refused to consider any other possibilities.

141. The Sanches then alleged that the Thorpes, specifically Janene, threw a rock at Maria.

142. The Sanches provided a "new" video with a "media created" on September 16, 2020, at 12:44, asserting new wrongdoing by Janene.

143. Interestingly, however, this "new" video was the same video submitted in support of the complaint on July 9, 2020

144. Responding to the "new" incident, Sgt. Nakai responded to the Sanches' home.

145. Sgt. Nakai documented three allegations: (1) the trash complaint (feces, food, diapers with excrement); (2) rocks thrown at Maria; and (3) verbal abuse toward Maria done by Janene.

146. There is no video or audio of Janene or any of the Thorpes performing any of the actions.

147. Additionally, Edward provided a video for Sgt. Nakai.

148. Again, Edward's video failed to illustrate any of the allegations, so, Edward then fabricated the narration contrary to what the video actually depicted.

149. Sgt. Nakai intentionally did not provide the full video in discovery requests associated with Case #211100077.

150. Rather, Sg.t Nakai provided a doctored, zoomed version of the phone video, which illustrates that "someone" tossed yard waste underhand onto the Thorpe Lower Backyard, but not who.

151. Sgt. Nakai, determined to punish the Thorpes, demanded charges against the Thorpes despite no investigation or contact with the Thorpes.

152. Furthermore, Sgt. Nakai refused to request any video from the Thorpes, knowing the Thorpes would have a video that was contrary to the Sanches allegations.

153. The Sanches continued the harassment alleging Janene intentionally sprayed Edward with water.

154. Again, the video provided by the Sanches video did not show what the Sanches asserted.

155. Specifically, the Sanches' video showed the water streaming from the Upper to the Lower Backyard directed at the bottom of a tree trunk on the Thorpe property the Quiet Title Settlement required them to maintain.

156. There is the expected spray passing both sides of the trunk onto the Sanches property.

157. Edward stands several feet to the north, away from the stream.

158. Edward films the "assault" as he purposely walks directly into the stray spray around the bottom of the tree trunk.

159. No change in the stream was made.

160. Edward then yells, "juvenile and pathetic."

161. The spray is immediately redirected away.

162. The individual spraying is never shown and never heard saying or yelling anything at Edward.

163. Edward then yells at the sprayer to "get a life."

164. Shortly after, the water is turned off.

165. Edward stays and continues to video surveillance.

166. Edward then observes Brittney Thorpe in the Upper Backyard, and yells at her: "dumbass daughter."

167. Brittney does not respond to Edward.

168. Shortly after, Chris is heard above asking someone, "Do you need more dirt anywhere?"

169. The camera turns to the property line showing Maria videoing the Upper Backyard; then turns up, showing Chris doing yard work, and Edward yells, "Oh boy, tough guy. Tough guy."

170. Going closer, Edward yells at Brittney: "Hey Cutie, how are ya?" "You're so intimidating."

171. The Thorpes do not respond or engage during the entire incident.

172. AFPD Officers, specifically Sgt. Nakai, reviewed this video to find Janene (although never shown) to be the aggressor.

173. Based on Sgt. Nakai's improper investigation attempted to charge Janene.

174. The Thorpes' videos from the same time period confirm the Thorpes were not the aggressors.

175. Sgt. Nakai intentionally abused her authority under the color of Utah state law, picked a side, pre-determined the Thorpes to be at fault, falsified evidence in a law enforcement report, failed to investigate properly, and wrongfully attempted to charge Janene knowing it was unsupported by any valid evidence.

176. The Thorpes did not call the police on Edward's trespass and harassment at this time, because the Thorpes knew AFPD and AFPD Officers would not respond.

177. More importantly, the Thorpes did not use the assistance that is available to **all** other citizens because of the biases of AFPD and AFPD Officers.

178. Officer Nordin states he reviewed the video, but then misstates and falsifies the evidence claiming among other things that Edward asked Janene to stop and that Brittney said rude things to him, despite no video evidence showing the same.

179. Upon information and belief, Officer Nordin was with AFPD since the Sanches' complaints started, knew AFPD's attitude, unconstitutional policy, and treatment toward the Thorpes and acted in step with it.

180. Upon information and belief, Officer Nordin regularly worked with and was trained by Sgt. Nakai.

181. Officer Nordin, Sgt. Nakai, AFPD, and AFPD Officers' pattern and unconstitutional policy against the Thorpes are consistent with the agency and its employees' intentional, knowing, or gross negligence in the false law enforcement reports.

182. Like Sgt. Nakai, Officer Nordin knowingly, intentionally, or with gross or reckless negligence made no effort to correctly investigate prior to requesting charges against Janine.

183. Upon information and belief, Sgt. Nakai and Officer Nordin intentionally wrote their reports in a manner with the sole purpose of having charges filed against Janene contrary to the evidence.

184. After the charges were dismissed for lack of evidence, the Sanches tried again.

185. On April 22, 2021, Maria called AFPD with a new complaint.

186. Officer Waite took Maria's call.

187. Upon information and belief, Officer Waite had been with AFPD during prior allegations made by the Sanches against the Thorpes, had knowledge of AFPD's attitude and unconstitutional policy and treatment of the Thorpes, as well as worked regularly with Sgt. Nakai.

188. Upon information and belief, Sgt. Nakai was a superior to Officer Waite.

189. Officer Waite created a false report alleging Janene threw rocks at Maria while Maria was in her own backyard.

190. Officer Waite reported he viewed the Sanches' video but summarized the video incorrectly and falsely to make it appear that Janene had thrown rocks at Maria.

191. The video Officer Waite reviewed, IMG_3169~video.MOV, is inconsistent with his "official" incident report.

192. There are no sounds of pinging rocks, as Officer Waite reports, nor is Janene shown throwing rocks at Maria.

193. What this video does show is Maria whispering, "**Well, this should get Janene!**" before she puts down her phone, and then disappears behind the phone.

194. Approximately eight seconds later, a rock comes into view from the right-hand side of the screen to hit the rock wall.

195. This rock is plainly being thrown by Maria, or another **on the Sanches'** property.

196. This rock was thrown about 5 feet below where Janene was kneeling in the Upper Backyard.

197. More importantly, it is **physically impossible** that Janene could have thrown the rock in the direction it traveled.

198. Later Janene is bent over, head down behind bushes picking up and tossing something underhand onto **the Thorpes' Lower Backyard** and nowhere near Maria, who has not moved.

199. Despite Maria claiming she feared injury, Maria did not move or run away.

200. Officer Waite's summary does not match the actual footage he claims to have reviewed.

201. Officer Waite requests no additional footage from the Thorpes or Sanches and makes no attempt to communicate with the Thorpes or properly investigate these allegations.

202. The Thorpes' videos of the same illustrate that Janene did not intentionally throw anything at Maria.

203. The disparity between the video provided by Maria and Officer Waite's summary is consistent with prior false summaries prepared by Officer Nordin, Sgt. Nakai, and Detective Murray and consistent with AFPD and AFPD Officers' practice and unconstitutional policy toward the Thorpes.

204. Case #21AF03282 was generated the same day dispatch received the complaint on April 22, 2021.

205. AFPD policy requires that incident reports be completed by the end of the AFPD Officers' shift.

206. Regardless, against AFPD policies, Officer Waite waited to generate the incident report until April 26, 2021, four days after the incident occurred on April 21, 2021.

207. Officer Waite failed to contact Janene, asserting the failure was due to time constraints and call volume.

208. Yet Officer Waite apparently had plenty of available time to walk the Sanches' property with Maria, in addition to reviewing Maria's story and video.

209. The following day, April 23, 2021, Officers Craig and Blackburn illegally forced entry into the Thorpe Property, without probable cause, or a valid warrant, assaulting and battering the Thorpes.

210. Officer Waite only writes the incident report after the assault on the Thorpes occurred on April 23, 2021, in a manner that falsifies the evidence and appears to be written to justify Officers Craig and Blackburn's illegal actions by claiming Janene was "dangerous."

211. Again, unsatisfied that the Thorpes were not charged with the Sanches' April 22, 2021, complaint, Maria then fabricates new claims of rocks being thrown by Janene on April 23, 2021.

212. Maria then provided Officer Blackburn with the April 22, 2021, video, and a new video.

213. In this new video, no rocks are seen, but something lands on the Thorpe property approximately ten feet away from Maria.

214. Maria stands at the edge of the property, where she claims rocks were being thrown at her but does not move or run or **show any concern or fear of danger**.

215.  Officer Blackburn reports, "[t]he video recorded on 4/23/21 was unable to catch a suspect however you can clearly hear multiple loud thuds landing near where Maria was standing."

216.  Nothing shows where items causing the "thuds" allegedly landed or came from.

217.  The Sanches provide no other video despite having cameras trained on both yards.

218.  Contrary to Officer Waite's claims that AFPD was "too busy" to call Janene on the April 22, 2021, complaint, Officers Blackburn, and Craig responded to Maria's April 23, 2021, complaint.

219.  Officers Blackburn and Craig then prepared a citation and went to the Thorpes to serve the citation.

220.  Officers Blackburn and Craig again sought no video from either the Thorpes or Sanches or no explanation from the Thorpes, despite no imminent harm preventing the officers from making a thorough investigation.

221.  Officer Blackburn and Craig's intent was to interpret and falsify facts against Janene to justify a citation, as Officer Blackburn and Craig had animus toward Janene.

222.  If Officer Blackburn and Craig had properly investigated the complaint, the officers would have discovered that Janene, could not have committed the alleged actions,

223.  Janene **was not even home** at the time the alleged actions occurred on April 23, 2021, between the hours of approximately 3:00 p.m. and 7:00 p.m.

**AFPD UNLAWFUL ENTRY AND ASSAULT ON THE THORPES**

224.  On April 23, 2020, Officers Blackburn, Craig, and Waite, determined to cite Janene based solely on the questionable allegations of Maria and with no identifiable perpetrator or any substantive evidence.

225. With insufficient evidence and no proper investigation, Officer Blackburn created the citation with two charges against Janene: (1) Assault Attempt to do Bodily Injury to Another, 76-5- 102(1)(A) and (2) Disorderly Conduct After Being Asked to Cease, 76-9-102(4)(B).

226. In 2021, Utah Code Ann. § 76-5-102(1) defined assault as: "(a) an attempt, with unlawful force or violence, to do bodily injury to another." (In May 2022, Utah Code Ann. § 76-5-102 was amended).

227. Neither Janene nor the Thorpes were informed of the citation or charges before service.

228. Neither Janene nor the Thorpes were told to stop the alleged actions by any authority.

229. Officer Blackburn signed the sworn certification of the citation certifying and attesting to his "knowledge" and "belie[f]" that Janene committed the claimed offense.

230. However, and falsely attested to as above, Officer Blackburn's report states he had no knowledge of who threw the rock.

231. Officer Blackburn's sworn certification identifies the charge for only the April 23, 2021, allegation and for a single incident despite making two separate charges.

232. Officers Blackburn and Craig then lazily ambled to the Thorpes' door on April 23, 202.

233. Both officers wore body cameras which started recording as they walked to the door.

234. The Thorpes also had a door camera which, upon sensing movement, began recording.

235. Officer Blackburn knocked with his right hand holding Janene's citation in his left hand.

236. Officer Blackburn returned his left hand to his side as he and Officer Craig waited for the door to open.

237. Officer Craig stood approximately a few feet in front of the door; his thumbs snugly tucked in his vest.

238. Neither officer discussed any safety concerns or plans as the officers approached and waited at the door.

239. Both officers appeared relaxed and unconcerned about any possible threats as the officers waited.

240. When Chris halfway opened the door, Officers Blackburn and Craig maintained their relaxed approach to the encounter despite Chris' right hand remaining behind the door.

241. Chris was not asked to present his hands, and it was clear that neither of the officers had any personal safety concerns as the officers maintained the same relaxed position.

242. Officer Blackburn stepped toward the door, introduced himself, and asked for Janene.

243. Chris confirmed that Janene was home, and Officer Backburn asked to talk to her.

244. Chris asked why the officers needed to speak to her.

245. Officer Craig said, "He could not talk to Chris because it is about Janene".

246. Officer Craig again asks if he could talk to Janene.

247. Chris again asks, "Sure. Why?"

248. Because of Janene's medical issues, the repeated prior wrongful charges against Janene, prior threats, and intimidation by AFPD Officers, Officers Blackburn, and Craig's clear antagonism and disdain of the Thorpes, Chris was understandably cautious and concerned.

249. Janene was still emotionally and physically weak from her brain tumor surgery; shaky on her feet after relearning to walk; struggled with memory; easily confused; and easily talked into agreeing to untrue things that happened because she did not trust her memory.

250. Prior interactions with AFPD and Janene's prior experience with being wrongfully charged did nothing but significantly disturb and impact Janene emotionally, causing increased and harmful anxiety, stress, and emotional turmoil.

251. Chris was understandably protective of Janene and sheltered her from additional stressors that could potentially cause her additional medical and emotional harm.

252. Janene previously was served a citation by Officer Nordin, who told the Thorpes that she did not have to sign or physically accept a citation.

253. An officer could write on the citation her refusal to sign and leave it in the doorway and leave.

254. Chris questioned the Officers' need to talk to Janene directly since Officer Nordin told them they could leave the citation at the door.

255. Officer Craig told Chris he could not tell him why he wanted to speak with Janene.

256. Officer Craig's statement is incorrect and unlawful.

257. Chris also knew there was no requirement, no warrant was produced for Chris to get his wife, and said, "Okay, you don't need to talk to her either," and closed the front door.

258. Officer Blackburn and Officer Craig stood looking at each other for a moment.

259. Not being able to serve the citation how he wanted, Officer Craig rang the doorbell and knocked.

260. Officer Crain then changed to an aggressive stance placing his left foot on the door threshold.

261. Chris partially opened the door once more and listened to Officer Craig.

262. Officer Craig stated the officers just needed to talk to Janene "real quick."

263.  Chris asked if they were under arrest.

264.  The conversation continued as follows:

> Officer Craig: "She is."
> Christopher: "Why?"
> Officer Craig: "We can't tell you that. It's not about you."
> Christopher: "I'm her husband."
> Officer Craig: "I understand, but it's about her, not about you."
> Christopher: "She's under arrest?"
> Officer Craig: "She is. So, we need to talk to her. She's not going to jail, but she is under arrest."
> Christopher: "Is she going to be read her Miranda rights?"
> Officer Craig: "She will. If we have questions for her."

265.  Acting under the color of Utah state law, Officer Craig intentionally misrepresented that Janene was under arrest to get compliance from Chris instead of just leaving the citation.

266.  Under Utah Law, including Utah Code Ann. §§ 77-7-1 and 77-7-2, Officer Craig did not have a warrant and, by law, could not arrest Janene based on the charges in the citation and because **no crime had been committed in his presence by Janene**.

267.  Chris had no obligation to open the door, to talk to the police, or to get Janene.

268.  Even if an arrest was warranted and justified, at this point, neither officer had contact with Janene or had seen Janene, and without contact, an arrest had not, and cannot, been made.

269.  Neither Officer Blackburn nor Craig showed or presented to Chris a warrant allowing entrance into the Thorpe home to arrest Janene.

270.  Neither Officer Blackburn nor Craig showed or presented to Chris a warrant requiring Chris to bring Janene to the door or to allow any extraction of Janene.

271.  Even if an arrest was warranted and justified, Utah Code Ann. § 77-7-6 sets forth the manner of making the arrest:

> The person making the arrest shall inform the person being arrested of his intention, cause, and authority to arrest him. Such notice shall not be required when: (a) there is reason to believe the notice will endanger the life or safety of the officer or another person or will likely enable the party being arrested to escape; (b) the person being arrested is actually engaged in the commission of, or an attempt to commit, an offense; or (c) the person being arrested is pursued immediately after the commission of an offense or an escape.

Utah Code Ann. § 77-7-6(1).

272.  Under Utah Code Ann. § 77-7-7,

> If a person is being arrested and flees or forcibly resists after being informed of the intention to make the arrest, the person arresting may use reasonable force to effect the arrest. Deadly force may be used only as provided in Section 76-2-404.

*Id.*

273.  At this point, neither Officer Blackburn nor Craig informed Janene of the intention to arrest her; the cause of her arrest; or their authority to arrest her, nor did they inform Chris.

274.  No element of the requirements for Janene's arrest was present pursuant to the aforementioned Utah statutes.

275.  Mr. Thorpe told Officer Craig, "One second," and attempted to close the door to his home.

276.  Officer Craig stopped its closure, moving his foot partially across the threshold, all the while keeping his thumbs tucked under his vest while ordering: "Don't shut the door."

277.  Chris knew his rights and knew that without a warrant, Officer Blackburn nor Craig could not prevent Chirs from closing his door or requiring further communication with the officers.

278.  Chris was not under arrest, nor was he accused of performing any criminal offenses at this time, and the conversation continued:

Chris:  I am allowed to shut my door.
Officer Craig: No.
Chris:  Yeah, I actually am.
Officer Craig: No. (shakes head side to side—thumbs still tucked inside
armpits of vest).
Chris:  You're allowed to move your foot.
Officer Craig: No. (shakes head side to side)
Chris:  Yes, you're allowed to move your foot.
Officer Craig: No (shakes head side to side). The citation is for assault,
and I'm not letting you go in there…
Chris:  Assault?
Officer Craig: …to grab weapons. Yes. So, she can come out here and we
can talk about it, or we can go in and get her.

279. The video shows Chris continued to speak calmly, exhibited no aggression, spoke rationally, and provided no evidence of violence or antagonism towards either Officer Blackburn or Craig.

280. Both Officer Blackburn and Craig continued to maintain a casual and unconcerned demeanor.

281. Officer Craig's vocalizations showed his frustrations at being unable to serve the citation his way on Janene.

282. Officer Craig now told Chris that: "the citation is for assault."

283. Not to be thwarted, Officer Craig escalated the situation, made unlawful statements, took unlawful actions, and increasingly made foundationless emotional accusations.

284. Specifically, Officer Craig asserted that Chris closing the door to grab weapons, basing the claims on the throwing rock citation.

285. Officer Craig's irrational escalation is consistent with AFPD and AFPD Officers' pattern and unconstitutional policy of bias toward the Thorpes.

286. AFPD, AFPD Officers, and Officer Craig had experience with the Thorpe/Sanches dispute, knew that the Thorpes were frustrated, had the Thorpes call out on inaccuracies of law and fact, but had never shown any violence, weapons, or any physical aggression.

287. Because of the constant threat and fear of wrongful actions against them, the Thorpes learned the law for the sole purpose of what AFPD and Officers could/could not do to protect themselves.

288. As a result of AFPD, and AFPD Officer's prior actions, misrepresentations, Chris did not simply accept Officer Blackburn or Craig's unlawful demands, and instead sought understanding, questioned the validity of their actions.

289. As a result, AFPD and in this specific situation, Officer Craig and Blackburn did not appreciate Chris' knowledge of their rights and questioning of the unlawful demands.

290. Officer Craig's actions and statements of are exemplative of AFPD's pattern and unconstitutional policy against Janene and the Thorpes, including unlawful actions, misstatements of law, misrepresentations, and use of authority to wrongfully intimidate and threaten.

291. Officer Craig further escalated the situation by stating, "So, she can come out here and we can talk about it, or we can go in and get her" contrary to Utah law.

292. Officer Craig allowed Chris to keep the door partially closed and did nothing as Chris left the door and went inside out of Officer Craig's sight with no show of concern for his safety.

293. Officer Craig's report stated that he could see someone standing beyond the doorway through the crack between the door and the wall (Taylor Thorpe) but again showed no concern.

294. Chris returned with Janene and as expected, with no weapons in hand.

295. Officer Blackburn focused on coaxing Janene outside: "Alright Janene, if you can just come out and talk to us."

296. Both she and Chris properly objected.

297. Not to be deterred, Officer Craig pointed to the threshold and ordered: "come right here."

298. Both she and Chris objected again.

299. Chris said they would listen to the Officers, but would not talk to them, pursuant to the Thorpes' lawyers' advice.

300. At this point, neither Officer had informed Janene that she was under arrest.

301. Nor was there any action or appearance that she was under arrest.

302. Officer Blackburn informed Janene of her citation for assault and disorderly conduct.

303. Janene, dumbfounded, told Officer Blackburn that she was not even home earlier that afternoon/evening and could not have performed the alleged actions.

304. Officer Blackburn dismissed her statements and said, "So, you can sign this, or you don't have to."

305. Officer Blackburn's instructions mirrored Officer Nordin's in a prior citation service.

306. Janene knew she had no legal obligation to go to the threshold, outside, or sign the citation.

307. Chris asked, "How long ago was this?" referring to the alleged incident.

308. Officer Craig, escalating again, shook his head back and forth and stated, "No, you said you don't want to talk so we're not going to talk."

309. Officer Craig turned to Janene, ordering her, "You can sign it," referring to the citation.

310. Janene instead followed Officer Blackburn's statement that she was not required to sign the citation.

311. Believing the interaction was done, there was no warrant, and Janene was not under arrest, Chris said, "Okay, thank you. We'll talk to you later," and began to close the front door.

312. Officer Craig losing his cool, further escalated by moving his left foot further into the home to block the door from closing and stating, "Don't you . . ."

313. Officer Craig angrily turned back to Janene and demanded, "Sign it. It's a charge."

314. Chris restated Officer Blackburn's prior statement, "We do not have to sign it," and was almost able to close the door.

315. Again, Janene was not told that she was under arrest nor read any of her Miranda rights.

316. Officer Craig began yelling, "You do not . . . ," then threw both hands against the door, violently shoving the door open and illegally forcing into the Thorpe home.

317. Officer Blackburn simultaneously used his right foot to force the door open following Officer Craig through the door into the home.

318. The Thorpes did nothing to precipitate the Officers' escalation and aggressiveness.

319. No Thorpe in the home had performed **any** illegal actions.

320. No one involved was in any immediate harm or risk of life.

321. But for Janene not going outside or signing the citation, she and Chris followed directions previously provided to them by a law enforcement officer.

322. Janene's fight-or-flight response overtook her.

323. Terrified by two much larger officers ferociously barreling into invading the Thorpes' home for no legally justifiable reason, with Officer Craig charging directly at her, Janene, in her terror, raced back into the adjacent open area front room, frantic to escape harm.

324. Officer Craig forced Chris to the side in his pursuit of Janene, making no effort to neutralize Chris or otherwise indicate fear for his or Officer Blackburn's personal safety but, despicably, focused solely on defenseless Janene.

325. As Janene retreated, she passed her son, Taylor, who had been observing the interaction.

326. As Officer Craig barreled toward him in his pursuit of his mother, Taylor instinctively and protectively raised his hands, pleading with Officer Craig to stop, scared for himself and his mother.

327. Officer Craig initiated contact with Taylor, and forced Taylor aside, to run down Janene.

328. Officer Craig locked onto Janene's left hand, applying significant, and uncalled-for, force to Janene's arm.

329. Officer Craig violently, abruptly yanked Janene, and started dragging her toward the entryway.

330. After forcing Chris from the doorway, Officer Blackburn sauntered to the front room holding a clipboard in his left hand and fumbling with the citation with his right.

331. Officer Blackburn did nothing to secure Chris or Taylor, turned his back to them, exposed his weapon side to Taylor, and showed no safety concern from the Thorpe men.

332. After latching onto Janene's arm, Officer Craig wrenched Janene into a standing position, clenching Janene's left arm between both Officer Craig's hands.

333. Officer Blackburn attached to Janene's right arm with his left hand while still holding the clipboard by his right hand, raised his right hand to increase control over Janene's arm, and slammed the clipboard into Janene's face, jaw and neck, knocking Janene out of breath, and was later discovered that Officer Blackburn's actions dislocated Janene's jaw.

334. When Janene finally could, an injured, battered, traumatized, and bruised Janene pulled back and yelled out, "Get this out of my face!" and started reacting emotionally to the violent trauma being inflicted on her from both sides and from both officers.

335. Fearing the impact of further attacks from Officer Blackburn or Craig due to Janene's brain tumor, Chris started trying to calm Janene to prevent further damage from the officers' illegal attack.

336. Chris came to her, repeated Janene's name to get her to focus, to help her calm down, reduce her fear, and prevent her having any further major medical emergencies.

337. Taylor, also concerned about his mother's state and knowing the results therefrom, came to Janene to comfort her saying, "Mom, mom, mom, calm down."

338. Officer Craig released his right-hand vice grip on Janene's arm and told everyone to calm down.

339. Realizing he (Officer Craig) was still clamped onto Janene; he released his other hand from Janene's arm.

340. Officer Craig then placed his right hand on Janene's left shoulder in a sickening attempt to console her.

341. For the first time, Officer Craig spoke in a conciliatory tone and used mannerisms to de-escalate contrary to his prior tone and mannerisms that escalated the confrontation.

342. Officer Craig then tried to explain and justify the officer's appalling, violent and terrifying actions accosting Janene and her family.

343. Officer Blackburn, however, continued to stand with Janene tightly gripping her right upper arm.

344. Contrary to his prior instruction, Officer Blackburn unbelievably ordered Janene to sign the citation.

345. Chris, rightfully angry after watching his wife being assaulted by those who are supposed to serve and protect, reminded Officer Blackburn that she was not required to sign, Officer Blackburn despicably admonished Chris by saying, "We are not done here."

346. Chris corrected Officer Blackburn and stated, "You are done here."

347. Officer Blackburn then further pressured the Thorpes, stating, "Okay, you guys do need to accept this copy of the citation."

348. Christ, again, reminded Officer Blackburn that he could set the citation on the ground.

349. Officer Blackburn finally released Janene's arm.

350. Officer Blackburn and Craig, realizing their unlawful escalation, unlawful entry, and unlawful use of excessive force kept trying to explain away and justify their actions and assaults on the Thorpes.

351. Officer Blackburn and Craig's actions upended the Thorpes' security and trust that the Thorpes' were safe in their own home, particularly from law enforcement who took an oath to uphold the law, protect and serve.

352. Officer Blackburn and Craig remained standing in the living room and refused to leave.

353. Chris, pointing to the open front door, demanded the officers to leave-at least twenty-five times.

354. Starting to leave the home, Officer Craig started saying he did not want to turn his back on Chris even though up until that time, both officers disregarded the three Thorpe men, had turned their backs to them, exposed their weapons to them, and shown no fear while terrorizing a feeble woman.

355. The Thorpes showed no aggression but instead were proactively working to calm the situation.

356. Back at the threshold, Officer Craig still tried to rationalize the unlawful behavior, assault and battery, and continued to misstate Utah Law: "With you guys retreating back before we were done with the process, that gives me grounds to go in and detain her."

357. Janene told them that the Officers hurt her and caused her injuries.

358. Neither Officer attempted to offer Janene help but continued excusing their bad acts.

359. Neither Officer arrested anyone in the home, no unlawful acts had been performed in either officer's presence.

360. Although both Officer Blackburn and Craig manufactured and falsified evidence after.

361. While not assaulted by the Officers, the Thorpes' youngest son, Charlie witnessed the entire assault by the Officers.

362. Janene could not calm down.

363. Janene experienced extreme emotional distress from the illegal assault and battery.

364. The assault resulted in a concussion, for which Janene is still being treated.

365. The assault resulted in a dislocated jaw, for which Janene is still being treated.

366. The assault resulted in severe bruising and cuts from Officer Blackburn and Craig's fingernails to both Janene's upper and lower arms; severe bruising on her upper leg; permanent bruises on her lower left leg; and a torn ligament that Janen is still receiving treatment from for her right foot.

367. Janene is now suffering from significant Post Traumatic Stress Disorder (PTSD) for which Janene is still being treated; nightmares; and trauma responses upon seeing police in the community, among other physical and emotional injuries.

368. Janene, nor any of the other Thorpes, feel safe in their own home.

369. Chris Thorpe has experienced extreme emotional distress from the assault on him and from witnessing the appalling assault on his wife.

370. Chris still has nightmares; looks over his shoulder when out and about; fears loud knocks at the door; suffers from PTSD; and is also receiving emotional therapy and treatment.

371. Chris is even more protective of his wife than before and is fearful of letting her out of his sight.

372. Chris, nor any of the other Thorpes, feel safe in their own home.

373. Taylor Thorpe, who was 26 years old at the time, experienced extreme emotional distress, from witnessing those who swore an oath to protect and serve violently assault and injure his mother.

374. Taylor now suffers from nightmares, PTSD, and significantly reduced trust and fear of law enforcement officers.

375. Taylor works in the medical industry in a Hospital Emergency Room.

376. Taylor, observing his mother being violently assaulted by law enforcement, greatly impacted Taylor's ability to effectively do his job.

377. Specifically, each and every time Taylor sees a law enforcement officer enter the ER, Taylor instinctively checks on his mom regularly to make sure she is safe.

378. Charlie Thorpe, who was 18 years old at the time, has experienced extreme emotional distress, nightmares, PTSD, inability to sleep, reduced trust, and increased fear of law enforcement, especially the AFPD.

379. Because of the violent, entirely avoidable, and abhorrent assault and battery on Janene, all of the Thorpes have a significant reduction in trust in law enforcement.

380. Because of the violent, entirely avoidable, and abhorrent assault and battery on Janene, all of the Thorpes deeply fear for their safety and security while **in their own home**.

381. Unbelievably, the Sanches continue their harassment and conspiracy to harm the Thorpes by continuing to video the Thorpes in their yard and their home.

382. AFPD refuses to take any action against the Sanches because of AFPD and AFPD Officers' repeated pattern of biased based, and unconstitutional policy concerning the Thorpes.

383. AFPD and AFPD Officers continued to make baseless threats to the Thorpes since the incident.

384. AFPD and AFPD Officers only ceased these unwarranted, illegal, and unconstitutional threats when the Thorpes served their *Initial Intent to Sue* (Notice of Claims) pursuant to Utah Code Ann. § 63G-7-101 *et seq.* on April 12, 2022.

385.   The Thorpes continue through therapy to be proactive in securing their home in an attempt to prevent any illegal actions, such as the illegal forceable entry by Officer Blackburn and Craig from occurring again.

386.   Because of the violent, entirely avoidable, and abhorrent assault and battery on Janene, the Thorpes subsequently purchased and professionally installed non-breakable window film.

387.   Because of the violent, entirely avoidable, and abhorrent assault and battery on Janene, the Thorpes have purchased and professionally installed a Mesh-tech Security Screen door that is virtually un- penetrable in an attempt to regain even the slightest sense of security.

388.   The extreme emotional distress and PTSD the Thorpes now suffer from is severely beyond what a reasonable prudent person could endure.

389.   The Thorpes have lost all faith in law enforcement and the city government in which the Thorpes live.

390.   The Thorpes now live in constant fear of outside harm as they know those who swore an oath to serve and protect them will not do so should an incident occur in the future.

391.   Nevertheless, the Thorpes continue to rehabilitate their trust and faith in law enforcement in hopes the Thorpes can reestablish that law enforcement really are the "good guys."

392.   Every time there is any media/news report of law enforcement unlawfully hurting/killing civilians, the Thorpes reexperience the trauma they suffered on the night of April 23, 2021, and lose all hope of an honorable and trustworthy law enforcement agency.

393.   The Thorpes struggle daily to live and conduct any business in their community because of AFPD and AFPD Officers who serve American Fork, Cedar Hills, and other jurisdictions.

**AFPD ACTIONS AFTER THE ASSAULT**

394. After Officers Blackburn and Craig's unlawful acts, AFPD, AFPD Officers, Chief Falslev and Officers Blackburn, Craig, Waite, Detective Konechny, and Sergeant Nakai, began a "cover-up" of the incident and initiated a despicable smear campaign against the Thorpe family.

395. AFPD, AFPD Officers, Chief Falslev and Officers Blackburn, Waite, Craig, Detective Konechny, and Sgt. Nakai conspired to fabricate reports to attempt to justify the actions taken by Officers Blackburn and Craig.

396. AFPD, AFPD Officers, Chief Falslev and Officers Blackburn, Craig, Waite, Detective Konechny, and Sgt. Nakai conspired to create false and misleading reports regarding the precipitating claims against Janene.

397. AFPD, AFPD Officers, Chief Falslev and Officers Blackburn, Craig, Waite, Detective Konechny, and Sgt. Nakai conspired to create false and misleading reports regarding the unlawful acts taken by Officers Blackburn and Craig on April 23, 202.

398. Officer Blackburn's report, consistent with Officer Blackburn's citation for the alleged rock-throwing incident, and **contrary to all video footage,** claimed the reason Officer Blackburn and Craig unlawfully forced entry and unlawful use of force occurred because:

> Officer Craig opened the door due to both Janene and Christopher retreating into the residence without me having issued the citation. Officer Craig stopped Janene from fleeing and began bringing her back to the front door. I assisted Officer Craig to bring her back so the citation could be issued.

399. Officer Blackburn's report contains no legal justification for the forcible entry into the Thorpes' home, for any arrest, for the assault or battery, or for any actions either Officer Blackburn or Craig took.

400. Simply put, Officer Blackburn lied on an official law enforcement report and Utah Law does not support either of his or Officer Craig's actions.

401. Officer Craig's report contrary to the footage of the loathsome violent assault and battery on Janene and the Thorpe family.

402. Specifically, Officer Craig asserts in his report: "While I was escorting Mrs. Thorpe, Son Thorpe, and Mr. Thorpe grabbed onto Mrs. Thorpe making it so I could not escort her out of the residence."

403. Simply put, Officer Craig lied on an official law enforcement report and Utah Law does not support either of his or Officer Craig's actions.

404. Contrary to Officer Craig's report, Officer Blackburn further the fabrications stating, "While in the living room officers decided to let Janene go . . ."

405. Contrary to Officer Blackburn and Craig's fabricated report, because there was no arrest, no cause under Utah Law for an arrest, no warrant, and no lawful justification for Officer Blackburn or Craig to enter the Thorpe home, **there cannot be any resisting of arrest**.

406. Neither Officer Blackburn nor Craig's fabricated report sets forth **any lawful explanation or statement** of exigency justifying Officer Blackburn and Craig's forceable and violent entry into the Thorpe residence and committing the revolting and devastating assault and battery on Janene.

407. Officer Blackburn's fabricated report fails to set forth or even reference any exigency for the forceable and violent entry into the Thorpe residence and committing the revolting and devastating assault and battery on Janene.

408. Officer Blackburn's fabricated report fails to reference any threat or fear for anyone's safety justifying the forceable and violent entry into the Thorpe residence and committing the revolting and devastating assault and battery on Janene.

409. Furthermore, Officer Waite, against police policy, waited to write his report for the April 22, 2021, complaint Maria made until April 26, 2021.

410. Officer Waite, despite the clear understanding that protocol requires the report submitted same day as the complaint, delayed until after the unlawful entry, unbelievable use of force, assault, and battery of Janene and the Thorpes.

411. Officer Waite's delayed, inaccurate, or falsified summary of the Sanches' video was purposely designed to create a false impression of violence by the Thorpes.

412. Officer Waite's delayed, inaccurate, or falsified summary of the Sanches' video was purposely submitted after the assault against the Thorpes occurred.

413. Officer Waite's delayed, inaccurate, or falsified summary of the Sanches' video was purposely submitted to further the conspiracy with Officer Blackburn, Craig, Sgt. Nakai and AFPD.

414. Officer Blackburn falsely stated in the report that "[t]he Thorpes have been a problem with the police department for a while and have unexpected behaviors when dealing with police."

415. Officer Blackburn provided no explanation or examples of the alleged behaviors.

416. Prior to April 23, 2021, no written report set forth any unexpected behaviors, threats of violence, or other inappropriate/illegal actions by the Thorpes to justify the illegal and devastating actions by Officer Blackburn or Criag.

417. Neither Officer Blackburn nor Craig discussed any actions or concerns while approaching the Thorpe home on April 23, 2021, which would indicate **any** concern for "unexpected behaviors," concerns for safety, or other inappropriate/illegal actions by the Thorpes.

418. Instead, AFPD and AFPD Officers willfully chose not to properly investigate allegations by the Sanches against the Thorpes.

419. AFPD and AFPD Officers willfully and intentionally failed to follow up on complaints by the Thorpes.

420. AFPD and AFPD Officers consciously failed to respond to calls from the Thorpes, and looked for means to target cite Janene and the Thorpes to charge with.

421. On April 23, 2021, when the Thorpes called AFPD dispatch about Officers Craig and Blackburn's assault and other actions on Janene, Chris, Taylor, and Charlie asked to speak with a higher authority about the incident and specifically requested that someone other than Sgt. Nakai addressed the issue because of Sgt. Nakai's known animus against them.

422. AFPD purposely and intentionally sent Sgt. Nakai, despite knowing the Thorpes requested anyone other than Sgt. Nakai had suffered an unbelievably traumatizing event at the hands of AFPD.

423. AFPD purposely and intentionally dispatched Sgt. Nakai to further uncalled for and deliberate antagonization to the Thorpes.

424. The Thorpes called AFPD to send a different sergeant to take their report and statement.

425. A different sergeant from AFPD arrived the following day, photographed Janene's injuries, handed the Thorpes a witness report, and left.

426. AFPD failed to follow up with the Thorpes regarding the incident, made no further inquiry into Janene's injuries, or even attempted to apologize to the Thorpes.

427. Astonishingly, both Taylor and Chris were charged with "Obstruction and Interference with an Officer."

428. Interestingly, shortly after, all charges were dropped against Taylor and Chris.

429. AFPD and AFPD Officers' response to the unlawful forcible entry, unlawful use of force, assault, and battery; to the actions and statements contrary to law performed by Officers Blackburn and Craig; failure to investigate the Thorpes' complaints regarding the incident, or other Thorpe complaints; falsifying reports to misrepresent video footage; maltreatment and purposely and intentionally withholding of rights available to other citizens of Cedar Hills is consistent with the unconstitutional policy of AFPD and AFPD Officers toward the Thorpes.

430. After the unlawful and violent assault, the Sanches continued the physical and video trespass and harassment onto the Thorpe Property, which AFPD refuses to investigate.

431. Despicably, the Sanches then fabricated new false complaints to Detective Konechny and Sgt. Garcia for actions by the Thorpes in the Thorpe Upper backyard, claiming it was retaliation to the assault charges.

432. Edward reported, "they had been advised by Officers to stay away from the property line and keep their doors locked in case of retaliation," confirming AFPD animus against Thorpes.

433. Although Detective Konechny did at least speak with Janene about the Sanches new fabricated complaint, once again, the report filed by Detective Konechny misrepresented the video footage.

434. Detective Konechny's report contains no evidence of any investigation or videos asked for or obtained from the Thorpes.

435. Detective Konechny reports that she reviewed **all prior cases** and that the "**Thorpes have been instigating and exhibiting disorderly conduct toward the Sanches over the last 4 years**" despite there being not a single shred of evidence supporting Detective Konechny's report.

436. Detective Konechny states, "Thorpes have ALWAYS been uncooperative with police and difficult to have contact with. On many occasions the Thorpes do not answer their phones or doors during an investigation."

437. Detective Konechny's statements are contrary to prior Officers' statements, including Officer Waite's report that he did not contact the Thorpes, internal officer statements to not take their calls, and the Thorpes' video evidence that the officers did not come by their home to investigate, as well as the Officers failed to call or follow up with the Thorpes on allegations.

438. Moreover, Chris's opening of the door to Officers Craig and Blackburn on April 23, 2021, and the Thorpes' calm demeanor during and after the incident contradicts Detective Konechny's report.

439. When the Thorpes questioned AFPD for the failure to follow Utah Law, refused to be AFPD punching bag, AFPD reacted by labeling the Thorpes as "uncooperative" and "difficult."

440. Detective Konechny adopted the unconstitutional policy of treatment and bias toward the Thorpes established and maintained among the AFPD.

441. Pursuant to this established and maintained unconstitutional AFPD policy for the Thorpes, Detective Konechny issued findings against only Janene.

442. Detective Konechny asserted that only Janene violated retaliation and stalking statutes and again issued Janene an unfounded citation.

443. On May 3, 2021, Detectives Konechny and Sgt. Garcia again met with the Sanches on the property line between the Sanches and the Thorpes' Lower Backyard.

444. Detectives Konechny, Sgt. Garcia, the Sanches all took pictures of the Thorpes Upper Backyard and windows.

445. Detectives Konechny, Sgt. Garcia, the Sanches seemed bothered by the Thorpes sign in their back window that stated, "Don't look in the bedroom windows."

446. Detectives Konechny nor Sgt. Garcia made any attempt to talk to the Thorpes.

447. On June 10, 2022, Officer Godfrey called Janene threatening Janene would be charged with a crime if Janene called the American Fork Hospital.

448. American Fork Hospital is the treating hospital for Janene's injuries the night of April 23, 2020, violent assault, and battery.

449. Officer Godfrey gave no explanation.

450. More importantly, Officer Godfrey had no legal basis to threaten Janene with charges to communicate with her health care providers.

451. AFPD continued its unlawful and unconstitutional pattern and policy of animus against the Thorpes.

452. AFPD continued to create an environment of fear and to prevent the Thorpes from accessing public resources in case of emergencies that are available to every citizen.

453. AFPD continued to provide to fail to investigation or provide any proper and legal justification for any of the agency or its employees actions.

454. AFPD continued to be supported by Cedar Hills, AF City, in its policies and actions of the Officers in direct opposition to their written policies, to the law, and to the Utah and United States Constitutions in their treatment of and interactions with the Thorpes.

### FIRST CAUSE OF ACTION
(*42 U.S.C. 1983 (2023) Deprivation of Rights*)[1]
(As to Officers Craig and Blackburn)

455. Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

456. Defendants, Officers Craig, and Blackburn, acting under color of Utah state law and under their authority as employees of the AFPD, violated the federal constitutional and statutory law when Officers Craig and Blackburn performed an unlawful trespass, search and

---

[1] "To state a claim under section 1983, plaintiffs must make [only] two allegations. First, they must allege "'that they have been deprived of a right "secured by the Constitution and the laws" of the United States."' *Millet v. Logan City,* 2006 UT App 466, 147 P.3d 971, 974, citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 930, 102 S. Ct. 2744 (1982) (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-56, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978)). And second, they must allege that the deprivation was caused by a party acting "under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980).

seizure, restraint and arrest, assault and battery, and use of force when Officers Craig and Blackburn entered the Thorpe home and held the Thorpes without consent, without probable cause or a warrant, and without exigent circumstances.

457. Defendants' actions caused Janene, Chris, Taylor, and Charlie Thorpe to suffer bodily harm and deprived Janene, Christopher, Charlie, and Taylor of the right to be secure in their home against unreasonable trespass, search and seizure, restraint and arrest, and use of force in violation of the Fourth and Fourteenth Amendment of the United States Constitution and Utah Constitution.

458. Defendants knew their actions violated Janene, Chris, Taylor, and Charlie's right to be free from unlawful trespass, searches and seizure, restraint and arrest, and use of force and knowingly and willfully violated those rights.

459. The illegality of Defendants' actions was well established at the time of this conduct.

460. As a direct and proximate result of the unconstitutional and unlawful conduct of Defendants, as set forth above, Janene, Chris, Taylor, and Charlie suffered injuries and damage including, but not limited to, physical injury, and mental and emotional anguish.

461. Defendants' actions were done with egregious, intentional, or reckless disregard and indifference to the rights of Janene, Chris, Taylor, and Charlie and the likelihood of causing emotional distress and other harm.

462. Defendants acted intentionally with ill will and spite towards the Thorpes in violation of their federally protected rights, such that their violations were performed maliciously or wantonly.

463.     Defendants' actions are in violation of both the Fourth and Fourteenth Amendments of the United States and the Utah Constitutions.

464.     The violation of Plaintiffs' rights is actionable under 42 U.S.C. § 1983.

465.     Plaintiffs are entitled to judgment against Defendants, jointly and severally, under § 1983 for damage in an amount to be proven at trial, but not less than one million dollars.

466.     Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than one million dollars.

467.     Plaintiffs are entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

468.     Plaintiffs are entitled to punitive damages under 42 U.S.C. § 1983 and as otherwise allowed by law.

**SECOND CAUSE OF ACTION**
(*42 U.S.C. 1983 (2023) Deprivation of Rights*)[2]
(As to *Defendants* AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, and AFPD Officers)

469.     Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

470.     Defendants, AFPD, Chief Falslev, and AFPD Officers had a custom of targeting the Thorpes, and in particular, Janene Thorpe.

471.     Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, and AFPD Officers had a custom of not taking, responding to, or acting on calls/complaints/and actions alleged by the Thorpes.

---

[2] *See supra n.1.*

472.    Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, and AFPD Officers had a custom of exhibiting prejudicial behavior against the Thorpes, and in particular, Janene Thorpe.

473.    Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, and AFPD Officers had a custom, pattern, and unconstitutional policy of making threats and intimidation against the Thorpes, and in particular, Janene Thorpe.

474.    Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, and AFPD Officers had a custom, pattern, and unconstitutional policy of exercising preferential behavior toward the Sanches to the detriment of the Thorpes, and in particular, Janene Thorpe.

475.    Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, and AFPD Officers had a custom, pattern, and unconstitutional policy of misrepresenting evidence received by the Sanches against the Thorpes in order to obtain charges against the Thorpes, and in particular, Janene Thorpe.

476.    Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, and AFPD Officers had a custom, pattern, and unconstitutional policy writing and coordinating reports in a manner to protect its department and officers from their unlawful actions performed egregiously, intentionally, and or with reckless disregard.

477.    Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, and AFPD Officers had a custom, pattern, and unconstitutional policy of failing to or not properly investigating actions as alleged against or by the Thorpes, by not questioning the Thorpes; by not responding to the Thorpes, by not obtaining all applicable evidence in any complaints by or against the Thorpes, and in particularly the Thorpes.

478. Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, and AFPD Officers intentionally, negligently, or recklessly failed or were indifferent to training or supervising its officers as to unlawful search and seizure, unlawful forcible entry, unlawful restraint and arrest, unlawful excessive use of force, and other improper or unlawful use of authority.

479. Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, and AFPD Officers intentionally, negligently, or recklessly failed to take action, to train, or otherwise prevent the unlawful and improper actions within its law force to prevent such unlawful, improper and unconstitutional actions from being performed against its citizens and in particular citizens to which it had an obvious bias.

480. Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, and AFPD Officers had a custom, unconstitutional policy, and pattern of condoning the type of actions taken against the Thorpes as complained herein.

481. Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, and AFPD Officers' customs, policies, and patterns resulted in an AFPD custom of egregious actions and bias toward the Thorpes.

482. Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, and AFPD Officers' customs, policies, and patterns of automatically attributing bad acts and intentions toward the Thorpes without sufficient evidence.

483. Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, and AFPD Officers' customs, policies, and patterns of determining the Thorpes were automatically guilty of any alleged actions, and as a result of acting with reckless disregard in their treatment, escalation, interactions, and responses to the Thorpes.

484. Defendant AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, and AFPD Officers' customs and animus toward the Thorpes, and in particular, Janene Thorpe, directly resulted in its Defendant Officers' unlawful actions toward the Thorpes as set forth herein, including and not limited to unlawful search and seizure, unlawful detention, unlawful use of force, unlawful forcible entry, among other unlawful actions.

485. As a direct and proximate result of Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, and AFPD Officers' customs and biases, Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, and AFPD Officers' conduct toward the Thorpes resulted in the violations of the constitutional rights of Janene, Chris, Taylor, and Charlie under the Fourth and Fourteenth Amendments of the United States Constitution.

486. As a result of Defendant AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, and AFPD Officers' unconstitutional conduct, the Thorpes were harmed and suffered injury including but not limited to physical, emotional, and financial harm.

487. Defendants' actions were done with egregious, intentional, or reckless disregard and indifference to the constitutionally protected rights of Janene, Chris, Taylor, and Charlie and the likelihood of causing emotional distress and other harm.

488. Defendants acted intentionally with ill will and spite towards the Thorpes in violation of their federally protected rights, such that their violations were performed maliciously or wantonly.

489. The violation of Plaintiffs' rights is actionable under 42 U.S.C. § 1983.

490. Plaintiffs are entitled to judgment against Defendants, jointly and severally, under that section for damage in an amount to be proven at trial, but not less than one million dollars.

491.   Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than one million dollars.

492.   Plaintiffs are entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

493.   Plaintiffs are entitled to punitive damages under 42 U.S.C. § 1983 and as otherwise allowed by law.

### THIRD CAUSE OF ACTION
(*42 U.S.C. § 1983 (2023) Depravation of Rights*)[3]
(As to Defendants, Cedar Hills City, American Fork City, and AFPD)

494.   Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

495.   Defendant, Cedar Hills City, intentionally entered into and hired AFPD to perform vital services for Cedar Hills.

496.   Defendants, Cedar Hills City, American Fork City, and their respective political subdivisions, including the American Fork Police Department, Defendants' AFPD maintained unconstitutional policies, customs, supervision, or practices that violated constitutionally protected rights of Plaintiffs.

497.   Defendants failed to have a written policy in place or, if a written policy exists, customarily did not follow or ensure that such practices were followed and failed to appropriately supervise those it contracted with to perform vital functions for them.

---

[3] *See supra n. 1.*

498. Had Defendants' policies, rules, practices, and laws in place regarding excessive force in serving citations, making arrests, search and seizure, and other unconstitutional practices in their performing duties associated with interacting with individuals alleged to have committed a crime, such as Janene, as well as other bystanders, and home residents, of whom unlawful trespass, search and seizure, arrest and restraint, assault and force is used against, Defendants failed to take reasonable efforts to ensure that such policies, rules, practices and laws were enforced among its employees and contracted entities used to perform its vital services.

499. Defendants failed to adequately train and educate employees and subdivisions regarding the employees' constitutional duties, excessive use of force, use of force and its reasonableness based on the circumstances, alternative methods for serving citations not requiring force, for appropriately identifying and distinguishing between characteristics and circumstances of imminent threat of bodily harm to officers or bystanders, of laws associated with serving a citation, among other policies that would have prevented the excessive use of force and in the absence of reasonable suspicion creating a routine of unconstitutional behavior, in deliberate indifference and disregard of the welfare of the public at large-including Plaintiffs.

500. Defendants had policies, rules, practices, and laws in place regarding the search and seizure of Plaintiffs' home without any consent, probable cause, warrant, or exigent circumstances.

501. Defendants had policies, rules, practices, and laws in place regarding the assault and arrest of Plaintiffs without any consent, probable cause, warrant, or exigent circumstances.

502. Defendants failed to adequately train and educate employees regarding the constitutional rights of its citizens as to privacy in their homes, the unlawful search and seizure of a home, unlawful use of force, unlawful restraint and arrest, and other constitutional rights when there is and when there is no reasonable suspicion, probable cause, exigent circumstances or warrant to the extent that there is a creation of a routine practice of unconstitutional behavior, in deliberate indifference to the welfare of the public at large, including the

503. Defendants failed to have a written policy regarding the procedure on how to effectively serve a misdemeanor citation on a person at their home without violating their and bystanders/residents of the home's constitutional rights or had a written policy that, according to custom and practice, was not customarily followed.

504. By not requiring, instituting, or supervising such a training program, by not having a written policy, and/or failing to enforce such policy, and/or to properly supervise, these Defendants showed egregious, reckless disregard and deliberate indifference to the welfare of the public at large, including these Plaintiffs.

505. Defendants' actions are in violation of both the Fourth and Fourteenth Amendments of the United States and the Utah Constitutions.

506. The violation of Plaintiffs' rights is actionable under 42 U.S.C. § 1983.

507. Plaintiffs are entitled to judgment against Defendants, jointly and severally, under § 1983 for damage in an amount to be proven at trial, but not less than one million dollars.

508. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than one million dollars.

509. Plaintiffs are entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

510. Plaintiffs are entitled to punitive damages under 42 U.S.C. § 1983 and as otherwise allowed by law.

## FOURTH CAUSE OF ACTION
*(42 U.S.C. 1983 (2023) Depravation of Rights)*[4]
(As to Defendant, Cedar Hills City)

511. Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

512. Defendant, Cedar Hills City, intentionally entered into and hired AFPD to perform vital services for Cedar Hills.

513. Defendant, Cedar Hills City egregiously or deliberately failed to or was indifferent to training or supervising AFPD and AFPD Officers and did not ensure that appropriate training occurred as to unlawful search and seizure, unlawful forcible entry, unlawful excessive use of force, unlawful restraint and arrest, the impact of bias and conflict of interest and the resultant unconstitutional actions, and as to taking or prevent actions within its law force to prevent such unlawful and unconstitutional actions from being performed against its citizens-and in particular citizens to which it had an obvious bias.

514. Such customs, actions, and deliberate indifference by Defendant, Cedar Hills City, proximately caused and resulted the biases, unlawful actions, and failure of the AFPD and

---

[4] *See supra n. 1.*

AFPD Officers in its actions leading to and causing the unlawful acts of its Officers toward the Thorpes.

515. Defendant, Cedar Hills City's, customs, biases, and deliberate failure to require, ensure, train, or supervise directly caused customs, biases, and unconstitutional actions toward the Thorpes by AFPD and AFPD Officers, including and not limited to unlawful search and seizure, unlawful detention and arrest, unlawful use of force, unlawful forcible entry, among other unlawful actions.

516. As a result of Defendant, Cedar Hills City, customs, actions, and egregious and deliberate indifference to training and supervision of AFPD and AFPD Officers, Plaintiffs were harmed, and their constitutional rights were violated.

517. Defendants' actions are or directly and proximately resulted in violation of both the Fourth and Fourteenth Amendments of the United States.

518. The violation of Plaintiffs' rights is actionable under 42 U.S.C. § 1983.

519. Plaintiffs are entitled to judgment against Defendants, jointly and severally, under § 1983 for damage in an amount to be proven at trial, but not less than one million dollars.

520. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than one million dollars.

521. Plaintiffs are entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

**FIFTH CAUSE OF ACTION**
(*Under 42 U.S.C. § 1983 (2023) Depravation of Rights*)[5]
(As to Defendants, Officer Craig, and Officer Blackburn)

522.    Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

523.    Defendants, Officer Craig, and Officer Blackburn acting under the color of Utah state law and under their authority as employees of the AFPD, acted with excessive force against Janene in the service of a misdemeanor citation beyond what was reasonably necessary to perform the service and in violation of law.

524.    Defendants, Officer Craig, and Officer Blackburn performed such actions:

   a.    knowing the nature of the crime alleged against Janene at the time the force was applied;

   b.    knowing or should have known or had a reasonable expectation of knowledge as to the circumstances surrounding the service of the misdemeanor citation based on a history of no prior threats to officer safety by the Thorpes, including Janene;

   c.    observing and experiencing no threat of harm, immediate or otherwise, by the Thorpes;

   d.    not informing Janene or any of the Thorpes that one or all was under arrest;

   e.    otherwise knowing and regularly using less hostile, alternative methods to serve citations not requiring any use of force or physical interaction between them and Janene;

   f.    stating availability of alternative methods of service;

---

[5] *See supra n. 1.*

g. when Janene, knowing her rights, did not intentionally resist Defendants but only acknowledged the availability of alternative less-confronting means to receive the citation;

h. when Chris knowing their rights, did not intentionally resist Defendants but only acknowledged the availability of alternative, less-confronting means to receive the citation;

i. knowing and not observing any other lives at risk or risk to life or physical harm during or before the service of the citation;

j. when Defendants were culpable for creating the escalated interaction by incorrectly misrepresenting the law and not using known and admitted alternative means of service;

k. when there was nothing under law justifying any arrest of Janene or any of the Thorpes;

l. when there was no warrant as to Janene or any of the Thorpes;

m. when there was nothing under law justifying any restraint/detention of Janene or any of the Thorpes in their home;

n. when there was nothing under law justifying entrance into the home by the Defendants;

o. when there was nothing under law justifying any use of force against Janene or the Thorpes;

p. when Defendants initiated any and all escalation;

q.  when it was practical for Defendants to give warning of imminent use of force before escalating, but did not;

r.  when it was a situation where a reasonable officer, would have and should have accurately perceived a mistaken fact - no threat or any perceived threat from any of the Thorpes, including Janene, in their interactions with the Thorpes;

s.  when Defendants' actions did not suggest any fear or harm from Janene or the Thorpes;

t.  when there was no probable cause for a reasonable officer to believe Janene or any other Thorpe had or was committing a crime involving the infliction or threatened infliction of serious physical harm to any person;

u.  when the Officers' actions and statements before and after their use of excessive force against Janene and the Thorpes showed no perception of any imminent threat of harm;

v.  when the actions the Officers took was not reasonable or proportional to any actions performed by Janene or the Thorpes;

w.  when the actions the Officers took were in violation of the law.

525.  Defendants, Officer Craig and Officer Blackburn's, actions caused Janene to suffer bodily harm, and severe emotional distress and deprived Janene of the right to be secure in her person against the unlawful and excessive use of force, unlawful entry into her home, and unlawful detention in violation of the Fourth and Fourteenth Amendment of the Constitution of the United States.

526. Defendants knew their actions violated Janene's right to be free from unlawful and excessive use of force, unlawful entry into her home, and unlawful detention in violation of the Fourth and Fourteenth Amendments of the United States but proceeded to violate those rights without due regard.

527. As a direct and proximate result of the unconstitutional conduct of Defendants, as set forth above, Janene suffered significant injuries and damage including, but not limited to, physical, mental, and emotional anguish.

528. Defendants' actions were done with egregious, intentional, or reckless disregard and indifference to the rights of Janene and the likelihood of causing emotional distress and other harm.

529. Defendants acted intentionally with ill will and spite towards the Thorpes in violation of their federally protected rights, such that their violations were performed maliciously or wantonly.

530. The violation of Janene's rights is actionable under 42 U.S.C. § 1983.

531. Plaintiffs are entitled to judgment against Defendants, jointly and severally, under § 1983 for damage in an amount to be proven at trial, but not less than one million dollars.

532. Janene is entitled to general and special damages in an amount to be determined at trial.

533. Janene is entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

534. Janene is entitled to punitive damages under 42 U.S.C. § 1983 and as otherwise allowed by law.

<u>SIXTH CAUSE OF ACTION</u>
(*Under 42 U.S.C. § 1983 (2023) Depravation of Rights*)[6]
(As to Defendants, Officer Craig, and Officer Blackburn)

535. Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

536. Defendants, Officer Craig, and Officer Blackburn, acting under the color of Utah state law and under their authority as employees of the AFPD, acted with excessive force against, unlawfully entered and detained, and otherwise acted unlawfully as described herein against Chris, Taylor, and Charlie Thorpe in the service of a misdemeanor citation at their home on Janene beyond what was reasonably necessary to perform the service and in violation of the law.

537. Defendants, Officer Craig, and Officer Blackburn performed such actions:

    a.    knowing the nature of the crime alleged against Janene and that there were no allegations of crime against Chris, Taylor, and Charlie at the time of the unlawful acts;

    b.    knowing or should have known or had a reasonable expectation of knowledge as to the circumstances surrounding the service of the misdemeanor citation based on a history of no prior threats to officer safety by the Thorpes, including Janene;

    c.    observing and experiencing no threat of harm, immediate or otherwise, by the Thorpes to anyone as well as no risk to life during or before the service of the citation;

---

[6] *See supra n. 1.*

d.   when Chris, Taylor, and Charlie were not under arrest and were never informed that they were under arrest by Defendants;

e.   when the Defendants knew the availability of alternative methods to serve the citation not requiring signature, placing it on the Thorpes doorstep, not requiring any use of force or physical interaction among Christopher, Charlie, and Taylor and the Defendants, Officer Craig, and Officer Blackburn;

f.   when the Defendants stated the availability of alternative methods to serve the citation not requiring a signature, placing it on the Thorpes' doorstep, not requiring any use of force or physical interaction among Christopher, Charley, and Taylor, and Defendants still performed the unlawful actions;

g.   when the Thorpes, as well as Janene, knowing her rights, were not resisting the Defendants but acknowledging there was no legal requirement that the Defendants be allowed into their home, that Janene sign or physically take the citation directly from the Defendants;

h.   when there were no other lives at risk;

i.   otherwise knowing and regularly using less hostile, alternative methods to serve citations - not requiring any use of force or physical interaction between them and Janene;

j.   stating availability of alternative methods of service;

k.   when Janene knowing her rights, did not intentionally resist Defendants but only acknowledged the availability of alternative less-confronting means to receive the citation;

l.  when Chris knowing their rights, did not intentionally resist Defendants but only acknowledged the availability of alternative less-confronting means to receive the citation;

m.  knowing and not observing any other lives at risk or risk to life or physical harm during or before the service of the citation;

n.  when Defendants were culpable for creating the escalated interaction by incorrectly misrepresenting the law and not using known and admitted alternative means of service;

o.  when there was nothing under law justifying any arrest of Janene or any of the Thorpes;

p.  when there was no warrant as to Janene or any of the Thorpes;

q.  when there was nothing under law justifying any restraint/detention of Janene or any of the Thorpes in their home;

r.  when there was nothing under law justifying entrance into the home by the Defendants;

s.  when there was nothing under law justifying any use of force against Janene or the Thorpes;

t.  when Defendants initiated any and all escalation;

u.  when it was practical for Defendants to give warning of imminent use of force before escalating, but did not;

v.  when it was a situation where a reasonable officer, would have and should have accurately perceived a mistaken fact i.e., that there was no threat or any perceived

threat from any of the Thorpes, including Janene, in their interactions with the Thorpes;

w. when Defendants' actions did not suggest any fear or harm from Janene or the Thorpes;

x. when there was no probable cause for a reasonable officer to believe Janene or any other Thorpe had or was committing a crime involving the infliction or threatened infliction of serious physical harm to any person;

y. when the Defendants' actions and statements before and after Defendants' use of excessive force against Janene and the Thorpes showed no perception of any imminent threat of harm;

z. when the actions Defendants took were not reasonable or proportional to any actions performed by Janene or the Thorpes;

aa. aa. When the actions the Officers took were in violation of the law;

538. Defendants' actions caused Chris, Taylor, and Charlie to suffer bodily harm, severe emotional distress, and deprived Janene of the right to be secure in their persons against the unlawful and excessive use of force, unlawful entry into her home, and from unlawful detention in violation of the Fourth and Fourteenth Amendment of the Constitution of the United States.

539. Defendants' actions further caused severe emotional distress and anguish to Chris, Taylor, and Charlie as bystanders of the unlawful entry, physical force, detention, and other excessive and unlawful actions taken against Janene in their presence.

540. Defendants knew their actions violated Chris, Taylor, and Charlie's right to be free from unlawful excessive force, trespass, and entry into their home, detention, and restraint, but proceeded to violate those rights.

541. The illegality of Defendants' actions was established at the time of this conduct.

542. As a direct and proximate result of the unconstitutional conduct of Defendants, as set forth above, Chris, Taylor, and Charlie suffered injuries and damage including, but not limited to, physical, mental, and emotional anguish.

543. Defendants' actions were done with egregious, intentional, or reckless disregard and indifference to the rights of Janene, Chris, Taylor, and Charlie and the likelihood of causing emotional distress and other harm.

544. Defendants' actions toward Janene, Chris, Taylor, and Charlie were outrageous, intolerable, and offensive against the generally accepted standards of decency and morality.

545. Defendants acted intentionally with ill will and spite towards the Thorpes in violation of their federally protected rights, such that their violations were performed maliciously or wantonly.

546. The violation of Chris, Taylor, and Charlie's rights is actionable under 42 U.S.C. § 1983.

547. Plaintiffs are entitled to judgment against Defendants, jointly and severally, under § 1983 for damage in an amount to be proven at trial, but not less than one million dollars.

548. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than one million dollars.

549. Plaintiffs are entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

550. Plaintiffs are entitled to punitive damages under 42 U.S.C. § 1983 and as otherwise allowed by law.

**SEVENTH CAUSE OF ACTION–**
*(Under 42 U.S.C. § 1983 (2023) Depravation of Rights)*[7]
(As to Defendant, Officer Craig)

551. Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

552. Defendant, Officer Craig, acting under the color of Utah state law and under his authority as an employee of the AFPD, unlawfully entered the Thorpe home and unlawfully detained Chris and Janene Thorpe during the service of a misdemeanor citation at the Thorpe home beyond what was reasonably necessary to perform the service of the misdemeanor citation as set forth more fully in the causes of actions above.

553. Defendant with full knowledge that no valid warrant existed, that there was no probable cause to arrest Janene nor to detain Chris; that Defendant had not otherwise attempted to arrest Janene or Chris, that Chris was under no lawful requirement to bring Janene to the door; that neither Chris nor anyone else in the home had manifested any actions of or indications of threat toward the Officers or anyone else; and that there were other lawful alternatives available for the Officers' service of the citation on Janene, unlawfully entered the Thorpe home by placing his foot inside the door to prevent its closure, unlawfully detained Chris by not allowing him to close his door until he got Janene, making false statements that Janene was under arrest, wrongfully requiring Janene to come outside of

---

[7] *See supra n. 1.*

the home while unlawfully detaining them, and otherwise unlawfully entering the home; and acted with unlawful force toward Janene, Chris, Charlie, and Taylor Thorpe.

554. Defendant's unlawful actions caused Janene and the Thorpes to suffer bodily harm and deprived Janene and the Thorpes of their right to be secure in their persons against the use of excessive force in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States.

555. Defendant knew his actions violated the Thorpes' right to be free from unlawful excessive force, trespass and entry into the home, and restraint and detention, but proceeded to violate those rights.

556. The illegality of the Defendant's actions was established at the time of this conduct.

557. Defendant's actions toward Janene and the Thorpes were outrageous, intolerable, and offensive against the generally accepted standards of decency and morality.

558. As a direct and proximate result of the unconstitutional conduct of Defendant, Janene, Chris, Taylor, and Charlie suffered significant injuries and damages including, but not limited to, mental and emotional anguish.

559. Defendants' actions were done with egregious, intentional, or reckless disregard and indifference to the rights of Janene, Chris, Taylor, and Charlie and the likelihood of causing emotional distress and other harm.

560. Defendant acted intentionally with ill will and spite towards the Thorpes in violation of their federally protected rights, such that his violations were performed maliciously or wantonly.

561. The violation of Plaintiffs' rights is actionable under 42 U.S.C. § 1983.

562.    Plaintiffs are entitled to judgment against Defendant, Officer Craig, under § 1983 for damage in an amount to be proven at trial, but not less than one million dollars.

563.    Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than one million dollars.

564.    Plaintiffs are entitled to attorney fees and costs against Defendant under 42 U.S.C. § 1988.

565.    Plaintiffs are entitled to punitive damages under 42 U.S.C. § 1983 and as otherwise allowed by law.

**EIGHTH CAUSE OF ACTION**
*(Under 42 U.S.C. § 1983 (2023) Depravation of Rights)*[8]
(As to Defendant, Officer Blackburn)

566.    Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

567.    Defendant, Officer Blackburn, acting under color of Utah state law and under his authority as an employee of the AFPD, took no action to stop, restrain, or prevent Officer Craig's unlawful entry into the Thorpe home and use of excessive force against Janene, Chris, Taylor and Charlie, and Chris and Janene's unlawful detention as set forth in the causes of actions during the service of a misdemeanor citation beyond what was reasonably necessary to perform the service.

568.    Defendant did nothing to stop, de-escalate, or otherwise prevent Officer Craig's unlawful actions knowing that Officer Craig acted beyond what was reasonably necessary based on the circumstances and were unlawful.

---

[8] *See supra n. 1.*

569. Defendant observed Officer Craig's escalation, including his false statements that Chris was required to bring Janene to the door, that Janene was under arrest, that Janene was required to sign the citation, despite no requirement to do so, and Officer Craig's unlawful entry into the Thorpe home when he used his foot to prevent Chris from closing his door and unlawful detention when Chris was not under arrest and when the Officers had no warrant, probable cause or any other lawful manner to detain Chris and prevent his closure of his door, upon Officer Craig's entry into the Thorpe home and ensuing use of force.

570. Defendant's failure to act and prevent Officer Craig's unlawful actions caused Janene and the Thorpes to suffer bodily harm and deprived the Thorpes of their right to be secure in her person against the use of excessive force in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States.

571. Defendant knew his failure to act violated the Thorpes' right to be free from the unlawful excessive force but proceeded to violate those rights.

572. The illegality of the Defendant's actions was established at the time of this conduct.

573. Defendant's actions were done with egregious, intentional, or reckless disregard and indifference to the rights of Janene, Chris, Taylor, and Charlie and the likelihood of causing emotional distress and other harm.

574. Defendant's actions toward Janene, Chris, Taylor, and Charlie were outrageous, intolerable, and offensive against the generally accepted standards of decency and morality.

575. Defendant acted intentionally with ill will and spite towards the Thorpes in violation of their federally protected rights, such that his violations were performed maliciously or wantonly.

576. As a direct and proximate result of the unconstitutional conduct of Defendants, as set forth above, Janene, Chris, Taylor, and Charlie suffered significant injuries and damage, including, but not limited to, mental and emotional anguish.

577. The violation of Janene, Chris, Taylor, and Charlie's constitutional rights under the United States is actionable under 42 U.S.C. § 1983.

578. Plaintiffs are entitled to judgment against Defendant, Officer Blackburn, jointly and severally, under § 1983 for damages jn an amount to be proven at trial, but not less than one million dollars.

579. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than one million dollars.

580. Plaintiffs are entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

581. Plaintiffs are entitled to punitive damages under 42 U.S.C. § 1983 and as otherwise allowed by law.

## NINTH CAUSE OF ACTION
*(Under 42 U.S.C. § 1983 (2023) Depravation of Rights)*[9]
(As to All Defendants)

582. Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

583. Defendants, AFPD, Cedar Hills City, American Fork City, Chief Falslev, Sgt. Nakai, Detective Konechny, Officer Craig, and Officer Blackburn, acting under the color of Utah

---

[9] *See supra n. 1.*

state law and under their authority as employees of the AFPD, deprived the Thorpes of their constitutional due process rights under the Fourteenth Amendment.

584. Defendants deliberately sought to deprive the Thorpes of access to and protection of law enforcement and other lifesaving services, their right to the use and enjoyment of their real property, without notice, the opportunity to be heard, and a decision by a neutral decision-maker.

585. Defendants took action to intentionally falsify records, misrepresent facts and evidence in matters involving Janene and the Thorpes, threaten Janene and the Thorpes, intentionally not take calls from Janene or the Thorpes, to create a policy, pattern, and culture against Janene and the Thorpes, to not take action against individuals violating the law and the Thorpes rights, to support and protect individuals and officers who took unlawful action against the Thorpes, and to otherwise intimidate, threaten, and cause the Thorpes to fear to use their property, to feel safe and protected in their home, and to lose their constitutional rights under both the United States Constitution.

586. Defendants singled out the Thorpes in their unlawful and unconstitutional treatment.

587. Defendants' actions toward the Thorpes demonstrated a personal animus against the Thorpes, which caused them to take such unlawful and unconstitutional actions.

588. Defendants' actions were based on a personal animus toward the Thorpes.

589. Defendants acted intentionally with ill will and spite towards the Thorpes in violation of their federally protected rights, such that their violations were performed maliciously or wantonly.

590. Defendants' actions resulted in the Thorpes being denied their constitutional rights under both the Fourth and Fourteenth Amendments of the United States Constitutions.

591. As a direct and proximate cause of the unlawful and unconstitutional conduct of Defendants, as set forth above, Janene, Chris, Taylor, and Charlie suffered injuries and damage including, but not limited to, physical injury, and mental and emotional anguish.

592. Defendants' actions are in violation of both the Fourth and Fourteenth Amendments of the United States Constitution.

593. Defendants' actions were done with egregious, intentional, or reckless disregard and indifference to the rights of Janene, Chris, Taylor, and Charlie and the likelihood of causing emotional distress and other harm.

594. The violation of Plaintiffs' rights is actionable under 42 U.S.C. § 1983.

595. Plaintiffs are entitled to judgment against Defendants, jointly and severally, under that section for damage in an amount to be proven at trial.

596. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than one million dollars.

597. Plaintiffs are entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

598. Plaintiffs are entitled to punitive damages under 42 U.S.C. § 1983 and as otherwise allowed by law.

**TENTH CAUSE OF ACTION**
*(42 U.S.C. 1983 (2023), Utah Constitution, Art. I, § 7 and Art, 7, § 14 Depravation of Rights)*[10]
(As to Defendant, Cedar Hills City)

599.  Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

600.  Utah Constitution, Article I, Section 7, provides that "No person shall be deprived of life, liberty, or property, without due process of law."

601.  Utah Constitution, Article I, Section 14, provides that people have the right "to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, particularly describing the place to be searched, and the person or thing to be seized."

602.  Defendant, Cedar Hills City, acted under the color of Utah state law.

603.  Acting under the color of Utah state law, Defendant intentionally entered into and hired AFPD to perform vital services for Cedar Hills.

604.  Defendant owed a duty to use reasonable care in investigating and contracting with law enforcement agencies to perform its law enforcement and citizen protection.

605.  Defendant owed a duty to Plaintiffs to ensure that no conflict of interest existed in its relationship with AFPD that would result in inaccurate, unlawful, biased enforcement of the law and use of police powers in its interactions with its citizens.

606.  Defendant failed to use reasonable care and acted with negligence when it:

---

[10] *See supra n. 1.*

a.   Failed to supervise, properly train, and ensure that adequate supervision and training was occurring by the contract law enforcement agency;

b.   Failed to supervise and properly train its employees regarding conflict of interest, bias, and proper interaction between its employees and other contracted agencies;

c.   Failed to ensure that its laws were properly investigated and enforced.

607.   As a result of Defendant's negligence and reckless disregard for the safety and unlawful treatment of its citizens, Plaintiffs were harmed and suffered greatly as a result of Defendant's negligence, and Defendant is liable to Plaintiffs.

608.   As a result of the above-described conduct, Plaintiffs have suffered, and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of enjoyment of life, physical pain and suffering, and as a result, Plaintiffs should be awarded damages and attorney fees as allowed by law.

609.   The Thorpes have experienced significant physical pain and suffering as well as significant emotional distress, and all Plaintiffs, and in particular, Janene, have and will continue to incur and should be awarded expenses for medical and psychological treatment, physical therapy, and counseling, among other expenses, including interest and attorney fees as allowed by statute.

610.   The violation of Plaintiffs' rights is actionable under 42 U.S.C. § 1983 and they are entitled to judgment against Defendants, jointly and severally, under that section for damage in an amount to be proven at trial, but not less than one million dollars.

611.   Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than one million dollars.

612. Plaintiffs are entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

613. Plaintiffs are entitled to punitive damages under 42 U.S.C. § 1983 and as otherwise allowed by law.

**ELEVENTH CAUSE OF ACTION**
(*42 U.S.C. §§ 1985 and 1986(2023) Conspiracy*)
(As to Defendants, Officer Craig, and Officer Blackburn)

614. Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

615. On or about April 23, 2021, Defendants, Officer Craig, and Blackburn, acting under color of Utah state law, combined their efforts to engage in tortious conduct towards the Thorpes.

616. Together, Defendants conspired, "either directly or indirection, to deprive Plaintiffs "equal protections of the law," and/or of "equal privileges and immunities under the laws." 42 U.S.C. § 1985.

617. Together, Defendants deprived the Thorpes, and in particular, Janene Thorpe, of their federally protected rights to be free from search and seizure in her own home, to unlawful restraint and arrest, and from the unlawful use of force as guaranteed under the United States Constitutions as set forth in the above causes of action, *supra*.

618. Defendants had a meeting of the minds on their objective or course of actions demonstrated through Defendants' combined efforts as asserted above, *supra*.

619. Defendants agreed to take whatever actions it took to serve the citation on Janene, including conducting an unlawful trespass, search and seizure, use of excessive force, or any other lawful or lawful means to sign the citation.

620. Defendants agreed to take whatever actions it took, whether it was in deprivation of Janene's civil rights and whether it was unlawful or not, to get Janene out of the home to serve the citation and to try to unlawfully arrest her.

621. Defendants acting under the color of Utah state law and did, in fact, perform such unlawful actions that deprived Janene of her constitutional rights, of her right to be secure in her own home, as well as unlawfully arrested and detained Janene and used unlawful and excessive force against her.

622. Defendants acted intentionally with ill will and spite towards Janene in violation of her federally protected rights, such that their violations were performed maliciously or wantonly.

623. As a result of the above-described conduct, Plaintiffs have suffered, and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of enjoyment of life, physical pain and suffering, and as a result, Plaintiffs should be awarded damages and attorney fees as allowed by law; Janene has and will continue to incur and should be awarded her expenses for medical and psychological treatment, physical therapy, and counseling, among other expenses, including interest and attorney fees as allowed by statute.

624. The violation of Plaintiffs' rights is actionable under 42 U.S.C. § 1985.

625. Plaintiffs are entitled to judgment against Defendants, jointly and severally, under § 1985 for damage in an amount to be proven at trial, but not less than one million dollars.

626. Plaintiffs are entitled to judgment against Defendants, jointly and severally, under § 1986 for damage in an amount to be proven at trial, but not less than one million dollars.

627. Plaintiffs are entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

628. Plaintiffs are entitled to punitive damages under 42 U.S.C. § 1983 and as otherwise allowed by law.

### TWELFTH CAUSE OF ACTION
(*42 U.S.C. § 1985 (2023) Conspiracy*)
(As to Defendants, Officer Craig, and Officer Blackburn)

629. Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

630. On or about April 23, 2021, Defendants, Officer Craig, and Blackburn, acting under color of Utah state law, combined their efforts to engage in tortious conduct towards the Thorpes.

630. Together, Defendants conspired, "either directly or indirection, to deprive Plaintiffs "equal protections of the law," and/or of "equal privileges and immunities under the laws." 42 U.S.C. § 1985.

631. Together, Defendants deprived the Thorpes, and in particular, Janene Thorpe, of their federally protected rights to be free from search and seizure in her own home, to unlawful restraint and arrest, and from the unlawful use of force as guaranteed under the United States Constitutions as set forth in the above causes of action, *supra*.

632. Defendants had a meeting of the minds on their objective or course of actions demonstrated through Defendants' combined efforts as asserted above, *supra*.

633. Defendants had a meeting of the minds to deprive Chris, Taylor, and Charlie Thorpe of their federally protected rights to be free from search and seizure in their own home, to

unlawful restraint and arrest, and from the unlawful use of force as guaranteed under the United States and Utah Constitutions as set forth in the above causes of action.

634. Defendants agreed to take whatever actions it took to serve the citation on Janene, including conducting an unlawful trespass, search and seizure, use of excessive force, or any other lawful or lawful means against anyone in the Thorpe home to sign the citation.

635. Defendants agreed to take whatever actions it took, whether it was in deprivation of Janene or her family's civil rights and whether it was unlawful or not, to get Janene out of the home to serve the citation and to try to unlawfully arrest her.

636. Defendants acting under color of Utah state law and did, in fact, perform such unlawful actions that deprived Chris, Taylor, and Charlie of their constitutional rights, of their right to be secure in their own home, as well as unlawfully arrested and detained them in their own home and used unlawful and excessive force against them in attempt to arrest and detain Janene.

637. As a result of the above-described conduct, Plaintiffs have suffered, and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of enjoyment of life, physical pain and suffering, and as a result, Plaintiffs should be awarded damages and attorney fees as allowed by law.

638. The Thorpes have experienced significant physical pain and suffering as well as significant emotional distress, and all Plaintiffs, and in particular Janene, have and will continue to incur and should be awarded her expenses for medical and psychological treatment, physical therapy, and counseling, among other expenses, including interest and attorney fees as allowed by statute.

639. The violation of Plaintiffs' rights is actionable under 42 U.S.C. § 1985.

640. Plaintiffs are entitled to judgment against Defendants, jointly and severally, under § 1985 for damage in an amount to be proven at trial, but not less than one million dollars.

641. Plaintiffs are entitled to judgment against Defendants, jointly and severally, under § 1986 for damage in an amount to be proven at trial, but not less than one million dollars.

642. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than one million dollars.

643. Plaintiffs are entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

644. Plaintiffs are entitled to punitive damages under 42 U.S.C. § 1985 and as otherwise allowed by law.

**THIRTEENTH CAUSE OF ACTION**
(*Under 42 U.S.C. § 1985 (2023) Conspiracy*)
(As to All Defendants)

645. Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

646. After the April 23, 2021, incident, Defendants AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, Officer Blackburn, Officer Craig, Officer Wiate and other AFPD Officers, acting under color of Utah state law, conspired to deprive Janene, Christopher, Taylor and Charlie Thorpe of their federally protected rights to be secure in their own home, to be free from search and seizure in their own home, to unlawful restraint and arrest, and from the unlawful use of force as guaranteed under the United States Constitutions as set forth in

the above causes of action by conspiring together to take actions to cover up and misrepresent the events of April 23, 2021.

647.   Together, Defendants conspired, "either directly or indirection, to deprive Plaintiffs "equal protections of the law," and/or of "equal privileges and immunities under the laws." 42 U.S.C. § 1985.

648.   Together, Defendants had a meeting of the minds to deprive the Thorpes, and in particular, Janene Thorpe, of their federally protected rights to be free from search and seizure in their own home, to unlawful restraint and arrest, and from the unlawful use of force as guaranteed under the United States Constitutions as set forth in the above causes of action, *supra*.

649.   Defendants had a meeting of the minds on their objective or course of actions demonstrated through Defendants' combined efforts as asserted above, *supra.*

650.   Together, Defendants had a meeting of the minds to make false misrepresentations regarding their prior interactions and prior actions of AFPD and other AFPD Officers with the Thorpes to justify their unlawful actions and deprivation of the Thorpes' rights.

651.   Together, Defendants had a meeting of the minds to and did falsify or otherwise misrepresent evidence provided to Defendants by the Sanches in their reports in order to justify the unlawful and unconstitutional actions of Defendants, Officer Craig, and Officer Blackburn in their violation of Plaintiffs' rights on April 23, 2021.

652.   Together, Defendants had a meeting of the minds to perform other acts, including but not limited to agreeing that Defendants, Detective Konechny, and Sgt. Nakai, who were openly biased against the Thorpes, further "investigated" and made reports on the April 23, 2021,

incident and intentionally made false statements and misrepresentations regarding said incident and interactions with the Thorpes for the specific purpose of attempting to cover up Officer Blackburn and Officer Craig's unlawful actions.

653. Together, Defendants had a meeting of the minds to and did proliferate a continuing culture after the incident against the Thorpes, including making disparaging comments and statements against the Thorpes, misrepresenting Defendants' interactions toward the Thorpes, including threats of future arrest and retaliation by AFPD Officers if the Thorpes used their Upper and Lower Backyard; depriving the Thorpes use of their property.

654. As a result of the above-described conduct, Plaintiffs have suffered, and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of enjoyment of life, physical pain and suffering, and as a result, as well as significant emotional distress, and all Plaintiffs, and in particular, Janene has and will continue to incur and should be awarded their expenses for medical and psychological treatment, physical therapy, and counseling, among other expenses, including interest and attorney fees as allowed by statute.

655. The violation of Plaintiffs' rights is actionable under 42 U.S.C. § 1985.

656. Plaintiffs are entitled to judgment against Defendants, jointly and severally, under § 1985 for damage in an amount to be proven at trial, but not less than one million dollars.

657. Plaintiffs are entitled to judgment against Defendants, jointly and severally, under § 1986 for damage in an amount to be proven at trial, but not less than one million dollars.

658. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than one million dollars.

659.     Plaintiffs are entitled to attorney fees and costs against Defendants, jointly and severally, under 42 U.S.C. § 1988.

660.     Plaintiffs are entitled to punitive damages under 42 U.S.C. § 1985 and as otherwise allowed by law.

**FOURTEENTH CAUSE OF ACTION**
(*Utah Code Ann. §76-10-1601, et. seq, Pattern of Unlawful Activity*)
(As to Defendants, AFPD, and AFPD Officers)

661.     Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

662.     At all times herein, AFPD Officers were employees of the Defendant, American Fork Police Department.

663.     At all times herein, AFPD allowed its officers to perform the following unlawful actions and behaviors to create a pattern of unlawful behaviors in violation of Utah Code Ann. §76-10-1601 *et seq.*[11]

664.     Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, Officer Blackburn, Officer Craig, Officer Waite, and other AFPD Officers engaged in a pattern of unlawful behavior and have acted, engaged in, requested, or intentionally aided other persons to

---

[11] Utah Code Ann. §76-10-1602(2) defines a "Pattern of unlawful activity" means engaging in conduct which constitutes the commission of at least three episodes of unlawful activity, which episodes are not isolated, but have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics. Taken together, the episodes shall demonstrate continuing unlawful conduct and be related either to each other or to the enterprise. At least one of the episodes comprising a pattern of unlawful activity shall have occurred after July 31, 1981. The most recent act constituting part of a pattern of unlawful activity as defined by this part shall have occurred within five years of the commission of the next preceding act alleged as part of the pattern.

engage in conduct that was unlawful or attempted to do so in violation of Utah Code Ann. § 76-10-1601, *et. seq.* as including but not limited to the following actions:

a. On April 23, 2021, Defendants, Officer Blackburn, and Officer Craig violently assaulted and battered the Thorpes in their home as defined and in violation of Utah Code Ann. §§ 76-5-102, and 103 when the officers forcibly and despicably attacked the Thorpes.

b. On April 23, 2021, Defendants Officer Blackburn, and Officer Craig violated Utah Code Ann. §§ 76-8-201 and 202 by committing official misconduct in their egregious, willful, and unlawful acts toward the Thorpes, including but not limited to Defendants egregious and intentional or reckless disregard of the Utah and United States Constitution when the officers unlawfully and forcibly entered, detained, assaulted, and battered the Thorpes in their home among other unlawful actions.

c. On April 23, 2021, Defendants Officer Blackburn, and Officer Craig violated Utah Code Ann. §§ 76-8-201 and 202 by committing official misconduct through Defendants' egregious, willful, and unlawful acts toward the Thorpes, including but not limited to Defendants' egregious and intentional or reckless disregard of the Utah and United States Constitution when Defendants unlawfully entered, detained, assaulted, and battered the Thorpes in their home among other unlawful actions.

665. AFPD and AFPD Officers supported and encouraged Defendants, Officer Blackburn, and Officer Craig's actions and allowed a cover-up to occur.

666. Defendants AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, Officer Blackburn, Officer Craig, Office Waite, and other AFPD Officers violated Utah Code Ann. §§ 76-8-201 and 202 by committing official misconduct in their egregious, willful and unlawful acts toward the Thorpes, including acting egregiously, intentionally, or with reckless disregard in altering, excluding or misrepresenting evidence and information in police reports including after Officer Blackburn and Officer Craig's unlawful actions; failing to properly investigate allegations against the Thorpes or to investigate actions complained by the Thorpes; attempting to threaten and take actions to prevent the Thorpes from being able to use their outside property; refusing to enforce the law; allowing biases to influence Defendants' actions; and otherwise by Defendants' actions toward the Thorpes and Defendants' failure to act in support of the Thorpes including their failure to stop the Sanches from videoing the Thorpes in their yard, home, and property.

667. Defendants AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, Officer Blackburn, Officer Craig, Officer Waite, and other AFPD Officers violated Utah Code Ann. § 76-8-504 by making false statements that Defendants, knew or should have known to be untrue, some of which were made under a form bearing notification that the false statements were punishable, which were provided to prosecutors with the intent to deceive the prosecutors or other officers, in a manner that either knowingly created a false impression or was misleading, or with which the Defendants knew or should have known were false.

668. Defendants' unlawful actions caused direct and proximate harm to Plaintiffs, including physical, emotional, financial, and other harm.

669. Defendants' unlawful actions have caused Plaintiffs to feel unsafe both in their home and in their yard and unable to regularly use their yard for fear of what Defendants may do to them.

670. Defendants' actions were done with wanton, malicious, egregious, intentional, or reckless disregard and indifference to the rights of Janene, Chris, Taylor, and Charlie and the likelihood of causing emotional distress and other harm.

671. Defendants should be jointly and severally liable to Plaintiffs for the harm and damages they have caused them.

672. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than two million dollars pursuant to Utah Code Ann. § 76-10-1605(1).

673. Plaintiffs are entitled to attorney fees as allowed by Utah State law pursuant to Utah Code Ann. § 76-10-1605(2).

674. Plaintiffs are entitled to punitive damages as allowed by Utah State law.

### FIFTEENTH CAUSE OF ACTION
(*Utah Code Ann. §76-10-1601, et. seq, Pattern of Unlawful Activity*)
(As to Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, Officer Blackburn, Officer Craig, Officer Waite, and other AFPD Officers)

675. Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

676. Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, Officer Blackburn, Officer Craig, Officer Waite, and other AFPD Officers engaged in a pattern of unlawful behavior and have acted, engaged in, requested, or intentionally aided other persons to engage in conduct that was unlawful or attempted to do so in violation of Utah Code Ann. § 76- 10-1601, *et. seq.* as follows:

677. Defendants, Officer Blackburn, and Officer Craig violently assaulted and battered the Thorpes in their home as defined and in violation of Utah Code Ann. §§ 76-5-102, and 103 when the officers forcibly attacked the Thorpes.

678. Defendants, Officer Blackburn, and Officer Craig violated Utah Code Ann. §§ 76-8-201 and 202 by committing official misconduct in their egregious, willful, and unlawful acts toward the Thorpes, including but not limited to Defendants' egregious and intentional or reckless disregard of the Utah and United States Constitution when Defendants unlawfully entered, detained, assaulted, and battered the Thorpes in their home among other unlawful actions.

679. Defendants, Officer Blackburn, and Officer Craig violated Utah Code Ann. §§ 76-8-201 and 202 by committing official misconduct in their egregious, willful, and unlawful acts toward the Thorpes, including but not limited to Defendants' egregious and intentional or reckless disregard of the Utah and United States Constitution when they unlawfully entered, detained, assaulted, and battered the Thorpes in their home among other unlawful actions.

680. Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, Officer Blackburn, Officer Craig, Officer Waite, and other AFPD Officers violated Utah Code Ann. §§ 76-8-201 and 202 by committing official misconduct in their egregious, willful and unlawful acts toward the Thorpes, including acting egregiously, intentionally, or with reckless disregard in altering, excluding or misrepresenting evidence and information in police reports-including doing so after Officer Blackburn, Officer Craig's unlawful actions, in failing to properly investigate allegations against the Thorpes or to investigate actions

complained by the Thorpes, in attempting to threaten and take actions to prevent the Thorpes from being able to use their outside property, in not enforcing the law; allowing biases to influence their actions; and otherwise by their actions toward the Thorpes and their failure to act in support of the Thorpes including Defendants' collective efforts in the failure to stop the Sanches from videoing the Thorpes in their yard, home, and property.

681. Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, Officer Blackburn, Officer Craig, Officer Waite, and other AFPD Officers violated Utah Code Ann. § 76-8-504 by making false statements that Defendants knew or should have known to be untrue, some of which were made under a form bearing notification that the false statements were punishable, which were provided to prosecutors with the intent to deceive the prosecutors or other officers, in a manner that either knowingly created a false impression or was misleading, or with which Defendants knew or should have known were false.

682. Defendants' unlawful actions caused direct and proximate harm to Plaintiffs, including physical, emotional, financial, and other harm.

683. Defendants' unlawful actions have caused Plaintiffs to feel unsafe both in their home and in their yard and unable to regularly use their yard for fear of what Defendants may do to them.

684. Defendants' actions were done with egregious, intentional, or reckless disregard and indifference to the rights of Janene, Chris, Taylor, and Charlie and the likelihood of causing emotional distress and other harm.

685. Defendants should be jointly and severally liable to Plaintiffs for the harm and damages they have caused them.

686. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than two million dollars pursuant to Utah Code Ann. § 76-10-1605(1).

687. Plaintiffs are entitled to attorney fees as allowed by Utah State law pursuant to Utah Code Ann. § 76-10-1605(2).

688. Plaintiffs are entitled to punitive damages as allowed by law.

**SIXTEENTH CAUSE OF ACTION**
(*Violations of Article I, § 14 of Utah Constitution – Unreasonable Searches*)
(As to Defendants, AFPD, Chief Falslev, Officer Blackburn, and Officer Craig)

689. Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

690. Chris Thorpe clearly and expressly communicated to Defendants, Officer Craig and Officer Blackburn, employees, and agents of the American Fork Police Department under Chief Falslev's command, that the officers were not allowed into their home.

691. Chris respectfully requested that the document be left on the doorstep for Janene as allowed by Utah law.

692. Officer Craig and Officer Blackburn acting under the color of Utah state law ignored Chris and instead unlawfully and forcibly entered into the Thorpe home.

693. Officer Craig and Officer Blackburn forced their way into the Thorpe home and began violently assaulting and battering Janene.

694. Officer Craig and Officer Blackburn did not have a warrant for entry to the Thorpe home or for Janene's arrest.

695. Officer Craig and Officer Blackburn's actions are a direct violation of Chris, Janene, Taylor, and Charlie Thorpe's Utah Constitutional Right against unreasonable searches or seizures.

696. Officer Craig and Officer Blackburn are agents of the American Fork Police Department and are under the direct command of Darren Falslev, the American Fork Police Chief.

697. Defendants should be jointly and severally liable to Plaintiffs for the harm and damages caused.

698. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than one million dollars.

699. Plaintiffs are entitled to attorney fees as allowed by law.

700. Plaintiffs are entitled to punitive damages as allowed by law.

### SEVENTEENTH CAUSE OF ACTION
*(Case Appropriate under Article I, § 11 of Utah Constitution – Redress of Injuries)*
(As to All Defendants)

701. Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

702. Plaintiffs have suffered serious injury in violation of their State Constitution rights by all the named Defendants.

703. Plaintiffs are constitutionally guaranteed to have remedy for their civil injuries under the State Constitution.

704. Defendants have violated Plaintiffs' Civil Rights.

705. Defendants should be jointly and severally liable to Plaintiffs for the harm and damages caused.

706. Plaintiffs are entitled to general and special damages in an amount to be determined at trial, but not less than one million dollars.

707. Plaintiffs are entitled to attorney fees as allowed by law.

708. Plaintiffs are entitled to punitive damages as allowed by law.

**EIGHTEENTH CAUSE OF ACTION**
(*For Violations of Article I, § 7 of The Utah Constitution – Due process of law*)
(As to Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, Officer Craig, Officer Blackburn, and Officer Waite)

709. Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

710. AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, Officer Craig, Officer Blackburn, and Officer Waite, and other AFPD Officers repetitively delivered or caused to be delivered citations and charges to Plaintiffs' house, with most of the citations and charges being levied against Janene Thorpe.

711. Defendants repeatedly did so without thoroughly investigating the claims asserted against the Thorpes nor following the correct procedures of law before issuing the citations and/or charges.

712. Officer Murray submitted a charge against Janene Thorpe although Officer Murray recognized that the charge had no merit beforehand.

713. Officer Craig and Officer Blackburn illegally forced entry into the Thorpe home, assaulted and battered Janene in an appalling attempt to force Janene to sign a citation that had been improperly levied against her.

714. Sgt. Nakai, Detective Konechny, Officer Murray, Officer Nordin, Officer Craig, and Officer Blackburn repeatedly and directly threatened the Thorpes regarding actions the

Thorpes had not taken and without even attempting to validate any claim pursuant to readily available evidence Defendant flatly ignored.

715. Defendants are jointly and severally liable to Plaintiffs for the harm and damages caused.

716. Plaintiffs are entitled to general and special damages in an amount to be determined at trial.

717. Plaintiffs are entitled to attorney fees as allowed by law.

718. Plaintiffs are entitled to punitive damages as allowed by law.

### NINETEENTH CAUSE OF ACTION
(*Civil Assault*)
(As to Defendants, Officer Craig, and Officer Blackburn)

719. Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

720. On April 23, 2021, Defendants, Officer Craig, and Officer Blackburn came to the Thorpe home on or around with a citation for Janene.

721. Defendants sought entry to the Thorpe home without any appropriate warrant or probable cause that Janene had committed a crime in Defendants' presence.

722. The Thorpe's denied the officer's entry calmly requested Defendants leave the citation at the door and attempted to close the door.

723. Officer Craig engaged in inappropriate behavior that escalated the situation while talking with Christ at the door of the home.

724. After repeated requests to leave the citation, Officer Craig became enraged and violently forced entry into the Thorpe's house.

725. Officer Craig aggressively pursued Janene, which included forcing his way past Taylor, with no concern for his or any other party's safety.

726. Officer Blackburn followed suit, forcibly entering the Thorpe home in a violent, aggressive, menacing manner.

727. Defendants caused Christ, Janene, and Taylor to fear immediate and severe bodily harm to their persons.

728. Defendants then proceeded to violently assaulted the Thorpes, in particular, Janene, which resulted in sever bodily and psychological damage.

729. Defendants are jointly and severally liable to Plaintiffs for the harm and damages caused.

730. Plaintiffs are entitled to general and special damages in an amount to be determined at trial.

731. Plaintiffs are entitled to attorney fees as allowed by law.

732. Plaintiffs are entitled to punitive damages as allowed by law.

### TWENTIETH CAUSE OF ACTION
(*Civil Battery*)
(As to Defendants, Officer Craig, and Officer Blackburn)

733. Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

734. On April 23, 2021, Defendants, Officer Craig, and Officer Blackburn forced their way into the Thorpe home with the specific intent to batter the Thorpes.

735. Once Officer Craig was in the Thorpe home, Officer Craig forced Christopher to the side, with no fear of his or any other party's safety, for the sole purpose of pursuing Janene.

736. Officer Craig also forced Taylor to the side during his unlawful pursuit of Janene.

737. Once Officer Craig reached Janene, Officer Craig aggressively and unlawfully placed his hands on Janene's arm, battering Janene.

738. Officer Craig continued to batter Janene, yanked her arm in an attempt to drag Janene back violently and unlawfully towards the threshold of the home.

739. Officer Blackburn violently battered Chris while unlawfully forcing his way past Chris upon forcing his way into the Thorpe home to assist Officer Craig's assault and battery upon Janene.

740. Once Officer Craig had dragged Janene to the front door, Officer Blackburn placed his hands upon Janene with the specific intent to batter her, grabbed Janene's other arm causing injury.

741. Janene's suffered severe injuries to her body through Defendants' assault and battery.

742. Chris and Taylor also sustained injuries from being assaulted and battered by Defendants.

743. Defendants are jointly and severally liable to Plaintiffs for the harm and damages caused.

744. Plaintiffs are entitled to general and special damages in an amount to be determined at trial.

745. Plaintiffs are entitled to attorney fees as allowed by law.

746. Plaintiffs are entitled to punitive damages as allowed by law.

### TWENTY-FIRST CAUSE OF ACTION
(*Civil Trespassing*)
(As to Defendants, Officer Craig, and Officer Blackburn)

747. Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

748. On April 23, 2021, Chris expressly denied Officer Craig and Officer Blackburn entry to the Thorpe house.

749. Defendants without a valid warrant or probable cause a crime had been committed in their presence had no legal justification or right to enter the Thorpe house without permission.

750. When Christ tried to close the door the second time, Officer Craig physically prevented the door from closing, interfering with Plaintiffs lawful right to prevent unwanted persons from entering the Thorpe home.

751. After becoming enraged, Officer Craig violently and forcibly entered the Thorpe home without a valid warrant or probable cause a crime had been committed in their presence, or without permission by the Thorpes with the specific intent to cause injury to the Thorpes, in particular, Janene.

752. Following suit, Officer Blackburn violently and forcibly entered the Thorpe home without a valid warrant or probable cause a crime had been committed in their presence, or without permission by the Thorpes with the specific intent to cause injury to the Thorpes, in particular, Janene.

753. Defendants are jointly and severally liable to Plaintiffs for the harm and damages caused.

754. Plaintiffs are entitled to general and special damages in an amount to be determined at trial.

755. Plaintiffs are entitled to attorney fees as allowed by law.

756. Plaintiffs are entitled to punitive damages as allowed by law.

**TWENTY-SECOND CAUSE OF ACTION**
(*False Imprisonment*)
(As to Defendants, Officer Craig, and Officer Blackburn)

757. Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

758. On April 23, 2021, Defendants, Officer Craig, and Officer Blackburn forcibly and violently restrained Janene against her will.

759. False imprisonment begins the second Defendants restrained Janene against her will.

760. Neither Defendant asked nor received permission to violently detain Janene.

761. Neither Defendant had a valid warrant or any sort of legal justification to detain Janene.

762. Janene was held against her will and suffered false imprisonment.

763. Defendants are jointly and severally liable to Plaintiffs for the harm and damages caused.

764. Plaintiffs are entitled to general and special damages in an amount to be determined at trial.

765. Plaintiffs are entitled to attorney fees as allowed by law.

766. Plaintiffs are entitled to punitive damages as allowed by law.

**TWENTY-THIRD CAUSE OF ACTION**
(*Intentional Infliction of Emotional Distress*)
(As to Defendants, AFPD, Officer Craig, and Officer Blackburn)

767. Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

768. On April 23, 2021, Defendants, Officers Craig, and Officer Blackburn unlawfully and violently forced entry into Thorpe home with the purpose of causing harm to the Thorpes, in particular, Janene.

769. Chris and Taylor were unlawfully and violently forced to the side as Officer Craig pursued and detained Janene.

770. Officer Blackburn, following suit, unlawfully and violently forced entry into the Thorpe house.

771. Chris and Taylor frantically observed Defendants assault and battery on Janene who Defendants had physically detained without any legal justification for doing so.

772. As a result of Defendants' unlawful detention, assault and battery on Janene, Janene suffered extreme emotional distress.

773. Janene's anguish was so prevalent that Christ and Taylor both made efforts to calm her down.

774. Defendants intentionally inflicted extreme emotional and mental distress on the Thorpes, in particular, Janene.

775. Defendants knew or should have known that Defendants' actions or inactions involved an unreasonable risk of extreme distress that would result in emotional damage.

776. The misconduct of Defendants was outrageous and intolerable in that it offends generally and professionally accepted standards of decency and morality.

777. Moreover, AFPD sanctioned and supported Defendants' actions.

778. Defendants are all severally liable to Plaintiffs for the harm and damage caused.

779. Plaintiffs are entitled to general and special damages in an amount to be determined at trial.

780. Plaintiffs are entitled to attorney fees as allowed by law.

781. Plaintiffs are entitled to punitive damages as allowed by law.

**TWENTY-FOURTH CAUSE OF ACTION**
(*Intentional Infliction of Emotional Distress*)
(As to Defendants, AFPD, Officer Craig, and Officer Blackburn)

782. Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

783. On April 23, 2021, Defendants, Officers Craig, and Officer Blackburn unlawfully and violently forced entry into Thorpe home with the purpose of causing harm to the Thorpes, in particular, Janene.

784. Chris and Taylor were unlawfully and violently forced to the side as Officer Craig pursued and detained Janene.

785. Officer Blackburn, following suit, unlawfully and violently forced entry into the Thorpe house.

786. Chris and Taylor frantically observed Defendants assault and battery on Janene who Defendants had physically detained without any legal justification for doing so.

787. As a result of Defendants' unlawful detention, assault and battery on Janene, Janene suffered extreme emotional distress.

788. Janene's anguish was so prevalent that Christ and Taylor both made efforts to calm her down.

789. Defendants negligently inflicted extreme emotional and mental distress on the Thorpes, in particular, Janene.

790. Defendants, under the misconduct described herein, knew or should have known that Defendants' actions or inactions involved an unreasonable risk of extreme distress that would result in emotional damage.

791. The misconduct of Defendants was outrageous and intolerable in that it offends generally and professionally accepted standards of decency and morality.

792. Moreover, AFPD sanctioned and supported Defendants' actions.

793. Defendants are all severally liable to Plaintiffs for the harm and damage caused.

794. Plaintiffs are entitled to general and special damages in an amount to be determined at trial.

795. Plaintiffs are entitled to attorney fees as allowed by law.

796. Plaintiffs are entitled to punitive damages as allowed by law.

**TWENTY-FIFTH CAUSE OF ACTION**

(*Violation of Utah Code Ann. § 53-6-210.5 – Duty to intervene and Report Officer* Misconduct)
(As to All Defendants)

797.    Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

798.    Under Utah Code Ann. § 53-6-210.5, police officers have a duty to stop and/or report misconduct done by other police officers.

799.    On April 23, 2021, Defendants, Officer Craig, and Officer Blackburn made egregious, malicious, violent, and unlawful acts of misconduct upon the Thorpes.

800.    Defendants failed to report any misconduct or took action to intervene.

801.    AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, and Officer Waite, and other AFPD Officers were aware of the actions taken by Officer Criag, and Officer Blackburn.

802.    No Defendant took any action to intervene, report, or otherwise act regarding these unlawful acts by Officer Craig and Officer Blackburn.

803.    Furthermore, Sgt. Nakai, Detective Konechny, and Officer Waite created false reports in an effort to cover-up and/or support the unlawful misconduct of Officer Craig and Officer Blackburn.

804.    No Defendant took any action to intervene, report, or otherwise act regarding these unlawful acts of Sgt. Nakai, Detective Konechny, and Officer Waite.

805.    Defendants are liable to Plaintiffs for the harm and damage caused.

806.    Plaintiffs are entitled to general and special damages in an amount to be determined at trial.

807.    Plaintiffs are entitled to attorney fees as allowed by law.

808.    Plaintiffs are entitled to punitive damages as allowed by law.

**TWENTY-SIXTH CAUSE OF ACTION**
(*Respondeat Superior*)
(As to Chief Falslev, AFPD, Cedar Hills City, American Fork City)

809.   Plaintiffs hereby incorporate and re-allege all previous paragraphs as though set forth fully herein.

810.   Chief Falslev, Sgt. Nakai, Detective Konechny, Officer Craig, Officer Blackburn, and Officer Waite, are law enforcement officer for the American Fork Police Department.

811.   All of the named Defendants above represent and are agents of the AFPD.

812.   All of the named Defendants above are bound by the statutes, rules, ordinances, and policies enforced by the AFPD, Cedar Hills City, and American Fork City.

813.   AFPD was operating under the oversight direction and control of American Fork City.

814.   Cedar Hills contracted with American Fork City and/or AFPD for law enforcement services of AFPD and provided oversight direction and control of AFPD's operations in its city boundaries.

815.   All of the named Defendants above were acting within their scope of employment when citations were served upon the Thorpes, or the Thorpes were harassed, Defendants falsified evidence, ignored, endangered, and continuously intervened with the Thorpe's life.

816.   All of the named Defendants above, within the scope of their employment, caused the Thorpes to suffer harm.

817.   Chief Falsley, AFPD, Cedar Hills City, and American Fork City are jointly and severally liable to Plaintiffs for the harm and damages caused.

818.   Plaintiffs are entitled to general and special damages in an amount to be determined at trial.

819.   Plaintiffs are entitled to attorney fees as allowed by law.

820.    Plaintiffs are entitled to punitive damages as allowed by law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants in the causes of actions as follows:

1.    First Cause of Action as against Defendants, Officer Craig, and Officer Blackburn:

    a.    For Plaintiffs' general and special damages in an amount to be determined at trial, but not less than one million dollars under 42 U.S.C. § 1983.

    b.    For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988.

    c.    For punitive damages as allowed by law under 42 U.S.C. § 1983.

    d.    For interest as provided by law.

    e.    For such other and further relief as the Court deems equitable, just, and reasonable.

2.    Second Cause of Action as against Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, and AFPD Officers:

    a.    For Plaintiffs' general and special damages in the amount at trial, but not less than one million dollars, under 42 U.S.C. § 1983.

    b.    For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988.

    c.    For punitive damages as allowed by law under 42 U.S.C. § 1983.

    d.    For interest as provided by law.

    e.    For such other and further relief as the Court deems equitable, just, and reasonable.

3. Third Cause of Action as against Defendants Cedar Hills City, American Fork City and American Fork Police Department:

    a. For Plaintiffs' general and special damages in the amount at trial, but not less than one million dollars, under 42 U.S.C. § 1983.

    b. For punitive damages as allowed by law under 42 U.S.C. § 1983.

    c. For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988.

    d. For interest as provided by law.

    e. For such other and further relief as the Court deems equitable, just, and reasonable.

4. Fourth Cause of Action as against Defendant, Cedar Hills City:

    a. For Plaintiffs' general and special damages in the amount at trial, but not less than one million dollars, under 42 U.S.C. § 1983.

    b. For punitive damages as allowed by law under 42 U.S.C. § 1983.

    c. For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988.

    d. For interest as provided by law.

    e. For such other and further relief as the Court deems equitable, just, and reasonable.

5. Fifth Cause of Action as against Defendants, Officer Craig, and Officer Blackburn:

    a. For Plaintiffs' general and special damages in the amount at trial, but not less than one million dollars, under 42 U.S.C. § 1983.

    b. For punitive damages as allowed by law under 42 U.S.C. § 1983.

    c.      For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988.

    d.      For interest as provided by law.

    e.      For such other and further relief as the Court deems equitable, just, and reasonable.

6.    Sixth Cause of Action as against Craig, and Officer Blackburn:

    a.      For Plaintiffs' general and special damages in the amount at trial, but not less than one million dollars, under 42 U.S.C. § 1983.

    b.      For punitive damages as allowed by law under 42 U.S.C. § 1983.

    c.      For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988.

    d.      For interest as provided by law.

    e.      For such other and further relief as the Court deems equitable, just, and reasonable.

7.    Seventh Cause of Action as against Defendant Craig:

    a.      For Plaintiffs' general and special damages in the amount at trial, but not less than one million dollars, under 42 U.S.C. § 1983.

    b.      For punitive damages as allowed by law under 42 U.S.C. § 1983.

    c.      For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988.

    d.      For interest as provided by law.

    e.      For such other and further relief as the Court deems equitable, just, and reasonable.

8.    Eighth Cause of Action as against Defendant, Officer Blackburn:

a. For Plaintiffs' general and special damages in the amount at trial, but not less than one million dollars, under 42 U.S.C. § 1983.

b. For punitive damages as allowed by law under 42 U.S.C. § 1983.

c. For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988.

d. For interest as provided by law.

e. For such other and further relief as the Court deems equitable, just, and reasonable.

9. Ninth Cause of Action as against all Defendants:

a. For Plaintiffs' general and special damages in the amount at trial, but not less than one million dollars, under 42 U.S.C. § 1983.

b. For punitive damages as allowed by law under 42 U.S.C. § 1983.

c. For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988.

d. For interest as provided by law.

e. For such other and further relief as the Court deems equitable, just, and reasonable.

10. Tenth Cause of Action as against Defendant, Cedar Hills City:

a. For Plaintiffs' general and special damages in the amount at trial, but not less than one million dollars, under 42 U.S.C. § 1983, Utah Constitution, Art. I, § 7 and Art. 7, § 14.

b. For punitive damages as allowed by law under 42 U.S.C. § 1983.

c. For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988.

d. For interest as provided by law.

e. For such other and further relief as the Court deems equitable, just, and reasonable.

11. Eleventh Cause of Action as against Defendants, Officer Craig, and Officer Blackburn:

    a. For Plaintiffs' general and special damages in the amount at trial, but not less than one million dollars, under 42 U.S.C. §§ 1985 and 1986.

    b. For punitive damages as allowed by law under 42 U.S.C. §§ 1985 and 1986.

    c. For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988.

    d. For interest as provided by law.

    e. For such other and further relief as the Court deems equitable, just, and reasonable.

12. Twelfth Cause of Action as against Defendants, Officer Craig, and Officer Blackburn"

    a. For Plaintiffs' general and special damages in the amount at trial, but not less than one million dollars, under 42 U.S.C. §§ 1985 and 1986.

    b. For punitive damages as allowed by law under 42 U.S.C. §§ 1985 and 1986.

    c. For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988.

    d. For interest as provided by law.

    e. For such other and further relief as the Court deems equitable, just, and reasonable.

13. Thirteenth Cause of Action as against all Defendants:

    a. For Plaintiffs' general and special damages in the amount at trial, but not less than one million dollars, under 42 U.S.C. §§ 1985 and 1986.

    b. For punitive damages as allowed by law under 42 U.S.C. §§ 1985 and 1986.

c.  For Plaintiffs' attorney fees and costs incurred in this action under 42 U.S.C. § 1988.

d.  For interest as provided by law.

e.  For such other and further relief as the Court deems equitable, just, and reasonable.

14. Fourteenth Cause of Action as against Defendants, AFPD, and AFPD Officers:

a.  For Plaintiffs' general and special damages due to Defendants unlawful conduct in an amount to be determined at trial, but not less than two million dollars, under Utah Code Ann. § 76-10-1601*, et. Seq.*

b.  For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

c.  For punitive damages as allowed by law under Utah Law.

d.  For interest as provided by law.

e.  For such other and further relief as the Court deems equitable, just, and reasonable.

15. Fifteenth Cause of Action as against Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, Officer Blackburn, Officer Craig, Officer Waite, and other AFPD Officers:

a.  For Plaintiffs' general and special damages due to Defendants unlawful conduct in an amount to be determined at trial, but not less than two million dollars, under Utah Code Ann. § 76-10-1601*, et. Seq.*

b.  For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

c.  For punitive damages as allowed by law under Utah Law.

d.  For interest as provided by law.

e.  For such other and further relief as the Court deems equitable, just, and reasonable.

16. Sixteenth Cause of Action as against Defendants, AFPD, Chief Falslev, Officer Blackburn, and Officer Craig:

   a. For Plaintiffs' general and special damages due to Defendants' unlawful conduct in violations of Article I, § 14 of Utah Constitution in an amount to be determined at trial, but not less than one million dollars.

   b. For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

   c. For punitive damages as allowed by law under Utah law.

   d. For interest as provided by law.

   e. For such other and further relief as the Court deems equitable, just, and reasonable.

17. Seventeenth Cause of Action as against all Defendants:

   a. For Plaintiffs' general and special damages due to Defendants' unlawful conduct pursuant to Article I, § 11 of Utah Constitution – Redress of Injuries in an amount to be determined at trial, but not less than one million dollars.

   b. For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

   c. For punitive damages as allowed by law under Utah law.

   d. For interest as provided by law.

   e. For such other and further relief as the Court deems equitable, just, and reasonable.

18. Eighteenth Cause of Action as against Defendants, AFPD, Chief Falslev, Sgt. Nakai, Detective Konechny, Officer Craig, Officer Blackburn, and Officer Waite:

   a. For Plaintiffs' general and special damages due to Defendants' unlawful conduct in violations of Article I, § 7 of The Utah Constitution – Due process of law in an amount to be determined at trial, but not less than one million dollars.

b.    For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

c.    For punitive damages as allowed by law under Utah law.

d.    For interest as provided by law.

e.    For such other and further relief as the Court deems equitable, just, and reasonable.

19.    Nineteenth Cause of Action as against Defendants, Officer Craig, and Officer Blackburn:

a.    For Plaintiffs' general and special damages due to Defendants' unlawful conduct in an amount to be determined at trial, but not less than one million dollars. For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

b.    For punitive damages as allowed by law under Utah law.

c.    For interest as provided by law.

d.    For such other and further relief as the Court deems equitable, just, and reasonable.

20.    Twentieth Cause of Action as against Defendants, Officer Craig, and Officer Blackburn:

a.    For Plaintiffs' general and special damages due to Defendants' unlawful conduct in an amount to be determined at trial, but not less than one million dollars.

b.    For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

c.    For punitive damages as allowed by law under Utah law.

d.    For interest as provided by law.

e.    For such other and further relief as the Court deems equitable, just, and reasonable.

21.    Twenty-first Cause of Action as against Defendants, Officer Craig, and Officer Blackburn:

a.    For Plaintiffs' general and special damages due to Defendants' unlawful conduct in an amount to be determined at trial, but not less than one million dollars.

b.    For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

c.   For punitive damages as allowed by law under Utah law.

d.   For interest as provided by law.

e.   For such other and further relief as the Court deems equitable, just, and reasonable.

22.   Twenty-second Cause of Action as against Defendants, Officer Craig, and Officer Blackburn:

a.   For Plaintiffs' general and special damages due to Defendants' unlawful conduct in an amount to be determined at trial, but not less than one million dollars.

b.   For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

c.   For punitive damages as allowed by law under Utah law.

d.   For interest as provided by law.

e.   For such other and further relief as the Court deems equitable, just, and reasonable.

23.   Twenty-third Cause of Action as against Defendants, AFPD, Officer Craig, and Officer Blackburn:

a.   For Plaintiffs' general and special damages due to Defendants' unlawful conduct in an amount to be determined at trial, but not less than one million dollars.

b.   For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

c.   For punitive damages as allowed by law under Utah law.

d.   For interest as provided by law.

e.   For such other and further relief as the Court deems equitable, just, and reasonable.

24.   Twenty-fourth Cause of Action as against Defendants, AFPD, Officer Craig, and Officer Blackburn:

a. For Plaintiffs' general and special damages due to Defendants' unlawful conduct in an amount to be determined at trial, but not less than one million dollars.

b. For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

c. For punitive damages as allowed by law under Utah law.

d. For interest as provided by law.

e. For such other and further relief as the Court deems equitable, just, and reasonable.

25. Twenty-Fifth Cause of Action as against all Defendants:

a. For a finding of Respondeat Superior as to AFPD, Cedar Hills City, and American Fork City.

b. For Plaintiffs' general and special damages due to Defendants' unlawful conduct in an amount to be determined at trial, but not less than one million dollars.

c. For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

d. For punitive damages as allowed by law under Utah law.

e. For interest as provided by law.

f. For such other and further relief as the Court deems equitable, just, and reasonable.

26. Twenty-Sixth Cause of Action as against Defendants, Chief Falslev, AFPD, Cedar Hills City, American Fork City:

a. For a finding of Respondeat Superior as to Defendants, Chief Falslev, AFPD, Cedar Hills City, American Fork City.

b. For Plaintiffs' general and special damages due to Defendants' unlawful conduct in an amount to be determined at trial, but not less than one million dollars.

c. For Plaintiffs' attorney fees and costs incurred in this action under Utah law.

d.      For punitive damages as allowed by law under Utah law.

e.      For interest as provided by law.

f.      For such other and further relief as the Court deems equitable, just, and reasonable.

SIGNED and DATED this 26th day of October 2023.

HEIDEMAN & ASSOCIATES
*/s/ Norman W. Peat, Jr.*
NORMAN W. PEAT, JR.
*Attorney for Plaintiffs*

## VERIFICATION

STATE OF UTAH     )
                        :ss.
COUNTY OF UTAH    )

On this 23rd day of October 2023, personally appeared JANENE THORPE and CHRISTOPHER TIMOTHY THORPE, Plaintiffs in the above-captioned *Second Amended Verified Complaint*. JANENE THORPE and CHRISTOPHER TIMOTHY THORPE, being first duly sworn upon oath, depose and state that they have read the foregoing *Second Amended Verified Complaint*, knows, and understands the contents thereof, and that the same is true to the best of their own knowledge, and affirms as their sworn testimony to the best of their knowledge and based on a reasonable inquiry into facts presently known, to which they verify as their affidavit and affirms under penalty of criminal perjury.

DATED this _____23rd_____ day of __October__ 2023.


_____
JANENE THORPE, Plaintiff

_____
CHRISTOPHER TIMOTHY THORPE, Plaintiff


SUBSCRIBED and SWORN to before me this 23rd day of __October__ 2023.

HARRISON GYGI
Notary Public - State of Utah
Comm. No. 729256
My Commission Expires on
Feb 7, 2027

_____
NOTARY PUBLIC in and for the State of Utah
My Commission expires: 2/7/2023

**VERIFICATION**

STATE OF ___UTAH___ )
:ss.
COUNTY OF ___UTAH___ )

On this 23ᴿᴰ day of October 2023, personally appeared CHRISTOPHER TAYLOR THORPE, Plaintiff in the above-captioned *Second Amended Verified Complaint*. CHRISTOPHER TAYLOR THORPE, being first duly sworn upon oath, depose and state that he has read the foregoing *Second Amended Verified Complaint*, knows, and understands the contents thereof, and that the same is true to the best of his own knowledge, and affirms as his sworn testimony to the best of his knowledge and based on a reasonable inquiry into facts presently known, to which he verifies as his affidavit and affirms under penalty of criminal perjury.

DATED this __23ᴿᴰ__ day of __OCTOBER__ 2023.

_____, PLAINTIFF
CHIRSTOPHER TAYLOR THORPE, Plaintiff

SUBSCRIBED and SWORN to before me this 23ᴿᴰ day of __OCTOBER__ 2023.

_____
NOTARY PUBLIC in and for the State of Utah
My Commission expires: __10-26-25__

KIERRA LINDSEY
Notary Public - State of Utah
Comm. No. 721113
My Commission Expires on
Oct 26, 2025

## VERIFICATION

STATE OF __UTAH__ )
                          :ss.
COUNTY OF __UTAH__ )

On this 23ʳᵈ day of October 2023, personally appeared CHRISTOPHER TAYLOR THORPE, Plaintiff in the above-captioned *Second Amended Verified Complaint*. CHRISTOPHER TAYLOR THORPE, being first duly sworn upon oath, depose and state that he has read the foregoing *Second Amended Verified Complaint*, knows, and understands the contents thereof, and that the same is true to the best of his own knowledge, and affirms as his sworn testimony to the best of his knowledge and based on a reasonable inquiry into facts presently known, to which he verifies as his affidavit and affirms under penalty of criminal perjury.

DATED this __23ᴿᴰ__ day of __OCTOBER__ 2023.

_____, PLAINTIFF
CHIRSTOPHER TAYLOR THORPE, Plaintiff


SUBSCRIBED and SWORN to before me this 23ᵇᵈ day of __OCTOBER__ 2023.

_____
NOTARY PUBLIC in and for the State of Utah
My Commission expires: __10-26-25__

KIERRA LINDSEY
Notary Public - State of Utah
Comm. No. 721113
My Commission Expires on
Oct 26, 2025