H. Craig Hall (1307)
Hyrum J. Bosserman (16404)
Kimberly A. Smith (17598)
BENNETT TUELLER JOHNSON & DEERE
3165 East Millrock Drive, Suite 500
Salt Lake City, Utah 84121
Telephone: (801) 438-2000
Email: chall@btjd.com; hbosserman@btjd.com; ksmith@btjd.com

*Attorneys for Cedar Hills City*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH – CENTRAL DIVISION

| | |
|---|---|
| JANENE THORPE, an individual; CHRISTOPHER THORPE, Sr., an individual, CHRISTOPHER THORPE, Jr., an individual; CHARLIE THORPE, an individual,<br><br>  Plaintiff,<br><br>  vs.<br><br>CEDAR HILLS CITY, a government entity; AMERICAN FORK CITY, a government entity; AMERICAN FORK CITY POLICE DEPARTMENT, a government entity; DARREN FALSLEV, in his official capacity as AMERICAN FORK CITY POLICE CHIEF; C. SLATE BLACKBURN, in his official and individual capacities; PHILLIP W.S. CRAIG, in his official and individual capacities; JENNIFER L. NAKAL in her official and individual capacities; KANDACE N. KONECHNY, in her official and individual capacities; SETH WIATE, in his official and individual capacity; and JOHN or JANE DOES 1-15, in their individual and/or official capacities;<br><br>  Defendants. | **MOTION FOR SUMMARY JUDGMENT ON CEDAR HILLS CITY'S FIRST CROSSCLAIMS AGAINST AMERICAN FORK CITY**<br><br>Case No. 2:23-cv-00242<br><br>Judge David Barlow<br><br>Magistrate Daphne A. Oberg |

1

Crossclaim Plaintiff Cedar Hills City (**"*Cedar Hills*"**) by its counsel of record and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby submits this Motion for Summary Judgment (the **"*Motion*"**) on Cedar Hills' First Crossclaim against Crossclaim Defendant American Fork City (**"*American Fork*"**).

### I. STATEMENT OF PREFERRED DISPOSITION

Plain language provides the best evidence of intent. In a written Public Safety Service Agreement (the **"*Agreement*"**), Cedar Hills contracted to pay significant funds to American Fork in exchange for police services. Under the Agreement, American Fork retained complete control over the American Fork Police Department (**"*AFPD*"**) and its officers (the **"*AFPD Officers*"**). The parties agreed that neither would be liable for any damages caused by the negligent or wrongful actions of the other or the other's employees. And American Fork agreed that it and its employees would comply with the law in their performance of the Agreement.

Plaintiffs Janene Thorpe, Christoper Thorpe, Sr., Christopher Thorpe, Jr., and Charile Thorpe (collectively, the "*Thorpes*") sued Cedar Hills, American Fork, AFPD, and the AFPD Officers, after the AFPD Officers allegedly entered their home unlawfully on April 23, 2021 (the "*Incident*"). All of the Thorpes claims arise out of and stem from this Incident. Notwithstanding the fact that Cedar Hills was not involved in the Incident or the alleged unlawful entry and excessive use of force by the AFPD Officers, American Fork has refused to recognize its duty to indemnify Cedar Hills in this case. Cedar Hills asks that the Court enforce the plain language of the Agreement by granting summary judgment on its First Claim for Relief in its crossclaim against American Fork.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

<u>The Public Safety Service Agreement</u>

1.      In or about 2019, Cedar Hills and American Fork entered into a Public Safety Service Agreement (the "***Agreement***"). *See* Agreement (CH000001–04), attached as "<u>Exhibit A</u>," and incorporated by reference; Declaration of Chandler Goodwin ("***Goodwin Decl.***") ¶ 6, attached as ""<u>Exhibit B</u>," and incorporated by reference.

2.      American Fork agreed to provide police, animal control, fire, and EMS services to Cedar Hills in exchange for payment. Agreement § 1, Ex. A.

3.      Cedar Hills has always timely paid according to its obligations under the Agreement. Goodwin Decl. ¶ 7, Ex. B.

4.      Under the Agreement, American Fork was responsible "for all police matters in Cedar Hills." Agreement § 1, Ex. A.

5.      The Agreement provides that "[n]either party has the right to exercise any control over the other party, its Officers or its agents." *Id.* § 4.

6.      American Fork "retain[ed] the sole right and authority to recruit, hire, promote, discipline, demote, discharge, determine rates of pay for, establish the terms . . . of employment of, and/or to direct and control . . . its employees and Officers." *Id.*

7.      The AFPD Officers acted exclusively as employees of American Fork. *See id.;* Goodwin Decl. ¶¶ 9-13, Ex. B.

8.      Cedar Hills had no control over the AFPD or the AFPD Officers. Goodwin Decl. ¶¶ 10-11, Ex. B.

3

9.      Cedar Hills never trained, disciplined, directed, or instructed the AFPD Officers. *Id.*

10.     Cedar Hills generally is not informed or given notice prior to when AFPD Officers respond to emergency calls or handle other police matters. *Id.* ¶ 12.

11.     Under the Agreement, American Fork agreed to "comply with any and all federal, state and local laws, regulations and ordinances related to the terms of [the] Agreement." Agreement § 6, Ex. A.

12.     American Fork also agreed to "comply with all federal, state and local laws, ordinances, statutes, rules and regulations governing the employment of its workers." *Id.* § 6.

13.     The Agreement provides that "[n]either party hereto shall be liable for *any* damages proximately resulting from the negligent or wrongful acts of omissions of the other party or the other party's employees or agents in the performance of [the] Agreement." *Id.* § 7 (emphasis added).

14.     American Fork therefore agreed that Cedar Hills would not be responsible for any damages caused by American Fork's negligent or wrongful acts or omissions in carrying out public safety services within Cedar Hills. *Id.*

The Alleged Unlawful Entry Incident

15.     On April 23, 2021, the AFPD Officers attempted to issue a citation for Assault and Disorderly Conduct to Janene Thorpe at her home in Cedar Hills, wherein AFPD Officers allegedly entered the Thorpes' home unlawfully and used excessive force on Janene Thorpe (the "***Incident***"). *See generally* Second Amended Complaint, Ct. Dkt. 55.

16.    In their Second Amended Complaint, the Thorpes bring a variety of claims against Cedar Hills arising out of the Incident, including claims related to unlawful entry, excessive force, and respondeat superior. *See generally id.*

17.    No Cedar Hills employee or official was involved in the Incident. Goodwin Decl. ¶ 12.

18.    Cedar Hills was not given notice prior before the AFPD Officers went to and entered the Thorpes' home on the date of the Incident. *Id.* ¶ 14.

19.    No Cedar Hills employee was involved in the alleged Incident or any subsequent response (including investigation, discipline, and training). *Id.* ¶¶ 15-16.

20.    Cedar Hills was not aware of the Incident until after it occurred. *Id.* ¶ 17.

<u>American Fork Refuses to Acknowledge Its Duty to Indemnify</u>

21.    American Fork apparently disputes any duty to indemnify Cedar Hills in this lawsuit. *See generally* American Fork's Answer to Cedar Hills' Crossclaim, Ct. Dkt. 11/29/2023.

22.    Cedar Hills has incurred and continues to incur significant legal fees in defending the lawsuit. *See* Cedar Hills Legal Fees Payment History (CH000358–362), attached as "<u>Exhibit C</u>," and incorporated by reference; Goodwin Decl. ¶¶ 19-20.

23.    Additionally, the Thorpes specifically seek judgment against Cedar Hills in this lawsuit stemming from the Incident. *See* Second Amended Complaint at 104–114, Ct. Dkt. 55.

**III. ARGUMENT**

Under Rule 56 "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a

5

matter of law." *Thao v. Grady Cnty. Crim. Justice Auth.*, 159 F.4th 1214, 1227 (10th Cir. 2025) (cleaned up). "[A] movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003). "Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* To survive summary judgment, "[t]he nonmovant must then bring forth specific facts showing a genuine issue for trial" that are "clearly identified through affidavits, deposition transcripts, or incorporated exhibits." *Thao*, 159 F.4th at 1227 (cleaned up). Here, summary judgment on Cedar Hills' First Crossclaims for indemnification is warranted based on the undisputed facts.

There is simply no way to give effect to the plain language of Section 7 of the Agreement without requiring American Fork to indemnify Cedar Hills for the exclusive actions of AFPD during the Incident. Under the plain language of the Agreement, Cedar Hills cannot be responsible for the negligence and misconduct of AFPD employees and officers. This Court should hold American Fork its clear obligations and grant summary judgment on Cedar Hills' Frist Claim for Relief in its crossclaim.

A.      The Plain Language of the Agreement Requires American Fork to Indemnify Cedar Hills

"Under Utah law,[1] '[i]ndemnity contracts are subject to the same rules of construction as other contracts; thus we read the contract as a whole and harmonize and give effect to all provisions.'" *Devs. Sur. & Indem. Co. v. Barlow*, 628 F. App'x 980, 983 (10th Cir. 2015) (quoting *Pavoni v. Nielsen*, 2000 UT App 74, ¶ 19, 999 P.2d 595). "When interpreting a contract, a court first looks to the contract's four corners to determine the parties' intentions, which are controlling." *Fairbourn Commercial, Inc. v. Am. Hous. Partners, Inc.,* 94 P.3d 292, 295 (Utah

---

[1] The Agreement specifically provides that all disputes arising out the Agreement will be governed by Utah law. *See* Agreement § 12, Ex. A.

2004). "If that language 'is unambiguous[,] a court determines the parties' intentions from the plain meaning of the contractual language as a matter of law.'" *Barlow*, 628 F. App'x at 983 (cleaned up). "A contract provision is ambiguous if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Id.* (cleaned up). Simply because the parties over the meaning of a provision does not create an ambiguity in the plain language of the contract. *See Mind & Motion Utah Investments, LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 24, 367 P.3d 994.[2]

Here, there is no way to give effect to the plain language of Section 7 of the Agreement without requiring American Fork to indemnify Cedar Hills in this lawsuit, including paying for its fees and costs herein. Section 7 reads: "Neither party hereto shall be liable for any damages proximately resulting from the negligent or wrongful acts or omissions of the other party or the other party's employees or agents in the performance of this Agreement." Agreement, § 7, Ex. A. The parties clearly intended that Cedar Hills would not be liable or responsible for American

---

[2] While there are some cases in Utah that suggest indemnification contracts must be strictly construed, "the rule of those cases . . . applies when an agreement purports to indemnify for *another's* negligent conduct." *Devs. Sur. & Indem. Co. v. Barlow*, 628 F. App'x 980, 983 n.2 (10th Cir. 2015) (emphasis added); *see also Freund v. Utah Power & Light Co.*, 793 P.2d 362, 370 (Utah 1990) "[A]n indemnity agreement which purports to make a party respond for the negligence of another [party to the agreement] should be strictly construed."). When an indemnification clause does not require indemnification for the *indemnitee's* own negligence, the policy concerns motivating the strict construction rule do not arise. *See Pickhover v. Smith's Management Corp.*, 771 P.2d 664, 666–667 (Utah Ct. App. 1989) ("The strict construction rule seems to have arisen primarily to appease the concern that one who is not financially responsible for the consequences of his or her own negligence will be less careful in his or her behavior toward others.") Thus, contracts that do not create such an indemnification scheme are not subject to strict construction, but instead ordinary rules of contract interpretation apply. *Barlow*, 628 F. App'x 980, 983 n.2. Here, the Agreement does not purport to require American Fork to indemnify Cedar Hills for *Cedar Hills'* own negligence or that of its employees. Instead, it does the opposite—stating that neither city will be liable for the actions of the other city or the other city's employees. So strict construction does not apply and the Agreement should be interpreted according to ordinary contract principles.

7

Fork Officers' negligence or misconduct. *See id*. Indeed, there is no real way to read Section 7 differently. This provision was integral to the Agreement. And American Fork should be obligated to comply with its terms and indemnify Cedar Hills for AFPD Officers' misconduct.

Reading Section 7 as a broad indemnification provision is supported by other provisions within the Agreement. *See Barlow*, 628 F. App'x at 983 ("[I]ndemnity contracts are subject to the same rules of construction as other contracts; thus we read the contract as a whole and harmonize and give effect to all provisions.'"). For example, the Agreement makes clear that American Fork would exclusively retain the right to control their Officers and employees. *See* Agreement § 4, Ex. A ("Neither party has the right to exercise any control over the other party, its employees, its Officers or its agents[.]"). Additionally, the Agreement provides that Cedar Hills would not be involved in the hiring, supervising, or training of the AFPD Officers. *See id*. In other words, the parties agreed that American Fork would retain complete control over their Officers in every manner. It makes sense that American Fork would therefore make clear that Cedar Hills would not be responsible for American Fork Officers' negligence and misconduct and would indemnify Cedar Hills in the event that suit was brought.

Similarly, the Agreement provides that American Fork and its Officers and employees would "comply with any and all federal, state and local laws, regulations and ordinances related to the terms of [the] Agreement." Agreement § 6, Ex. A. And American Fork agreed to "comply with all federal, state and local laws, ordinances, statutes, rules and regulations governing the employment of its workers." *Id.* If American Fork expressly agreed that it would follow all laws in carrying out the public services, including law enforcement, within Cedar Hills, construing Section 7 as an indemnification provision reinforces and supports Section 6 obligations.

In short, the Agreement carefully spells out that American Fork will control, supervise, and train all of its Officers. It also clarifies that Cedar Hills has no right to control American Fork employees. Further, it makes clear that AFPD Officers will comply with all laws in carrying out the Agreement and conducting law enforcement activities. And to ensure that Cedar Hills would not be responsible for American Fork's shortfalls, the parties expressly agreed that Cedar Hills would be indemnified under Section 7. The plain language of Section 7 requires American Fork to indemnify Cedar Hills for "any damages" stemming from their Officers negligence and misconduct. The Second Amended Complaint and the Incident it details therein clearly involves American Fork employees and Officers. The Court should enter summary judgment in favor of Cedar Hills on its First Crossclaim and declare that American Fork has a duty to indemnify Cedar Hills for all damages stemming from the Incident and this lawsuit, including all attorney fees and costs Cedar Hills has incurred in this case.

B.      There is No Dispute that American Fork Solely Caused the Incident and the Damages Stemming Therefrom

In addition to the clear terms of Section 7, there is no dispute that the AFPD Officers were responsible for the Incident and the alleged damages arising therefore. It is undisputed that the AFPD Officers were employees and Officers of American Fork. It is disputed that Cedar Hills did not control the AFPD Officers or their conduct. And it is undisputed that American Fork was responsible for recruiting, hiring, training, instructing, promoting, disciplining, demoting, discharging, paying, establishing terms and conditions of employment for, providing benefits for, directing, and controlling the Officers. *See* Agreement §§ 4, 6.

Further, it is undisputed that the AFPD Officers were solely involved in the conduct surrounding the Incident. Goodwin Decl. ¶¶ 9-17. Cedar Hills did not participate in the Incident or even have knowledge of the events giving rise to the Incident until after the AFPD Officers

9

had already had the altercation with the Thorpes. *Id.* Additionally, when the Officers entered the Thorpes' home on the day of the Incident, they were acting as agents, employees, and Officers of American Fork. American Fork trained them. American Fork supervised them. American Fork hired them. In other words, American Fork employees and Officers solely carried out the allegations relating the Incident.

The Thorpes' lawsuit arises out of the alleged negligent or wrongful acts or omissions of American Fork and its employees and agents, including AFPD. The basis of the Thorpes' entire case stems from the AFPD Officers' actions during the Incident. *See generally* Second Amended Complaint, Ct. Dkt. 55.  Unfortuneatly, the Thorpes sued both Cedar Hills and American Fork. Since Cedar Hills was not involved in the Incident that gives rise to all of the Thorpes' claims, the Court should enter summary judgment in favor of Cedar Hills on its First Claim for Relief in its crossclaim.

In sum, if the case results in judgment against Cedar Hills, it will be "liable for . . . damages proximately resulting from the negligent or wrongful acts of [American Fork's] employees . . . in the performance of [the] Agreement." Such a result would be contrary to the plain language of the clear contractual terms that Cedar Hills bargained for. The only way to give effect to the plain language of Section 7 is to require American Fork to indemnify Cedar Hills in this case. The Court should grant summary judgment and declare that American Fork is responsible to indemnify and hold Cedar Hills from "any damage" stemming from this case, including the attorney fees and costs Cedar Hills has already incurred, and will continue to incur.

## IV. CONCLUSION

Plain language is the best evidence of intent. American Fork explicitly agreed that Cedar Hills would not be liable for any damages stemming from the negligence or misconduct of

American Fork employees or Officers. If American Fork is not required to indemnify Cedar Hills, the result will be precisely inverted—Cedar Hills will be liable for the actions of American Fork's employees and Officers. This Court should decline to read Section 7 out of the Agreement. Cedar Hills respectfully requests that the Court grant this Motion and enter summary judgment against American Fork on Cedar Hills' First Claim for Relief in its crossclaim.

DATED this 29th day of June, 2026.

BENNETT TUELLER JOHNSON & DEERE

/s/ *Kimberly A. Smith*
H. Craig Hall
Hyrum J. Bosserman
Kimberly A. Smith
*Attorneys for Cedar Hills City*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June, 2026, a true and correct copy of the

foregoing **MOTION FOR SUMMARY JUDGMENT ON CEDAR HILLS CITY'S FIRST**

**CROSSCLAIMS AGAINST AMERICAN FORK CITY** was served by the method indicated

below, to the following:

| | | |
|---|---|---|
| Robert L. Janicki | ( ) | U.S. Mail, Postage Prepaid |
| Michael L. Ford | ( ) | Facsimile |
| STRONG & HANNI | (X) | E-Filed |
| 9350 South 150 East, Suite 500 | ( ) | E-Mail |
| Sandy, Utah 84070 | | |
| rjanicki@strongandhanni.com | | |
| mford@strongandhanni.com | | |
| *Attorneys for American Fork City, American* | | |
| *Fork City Police Department, Darren Falslev,* | | |
| *C. Slate Blackburn and Phillip W.S. Craig* | | |

| | | |
|---|---|---|
| Gary R. Guelker | ( ) | U.S. Mail, Postage Prepaid |
| JENSEN & GUELKER PPLC | ( ) | Facsimile |
| 747 East South Temple Ste 130 | (X) | E-Filed |
| Salt Lake City, Utah 84102 | ( ) | E-Mail |
| jgudenkauf@rlattorneys.com | | |
| *Attorneys for American Fork City, American* | | |
| *Fork City Police Department, Darren Falslev,* | | |
| *C. Slate Blackburn and Phillip W.S. Craig* | | |

| | | |
|---|---|---|
| Christopher Thorpe Sr. | ( ) | U.S. Mail, Postage Prepaid |
| Janen Thorpe | ( ) | Facsimile |
| Christopher Thorpe Jr. | ( ) | E-Filed |
| Charlie Thorpe | (X) | E-Mail |
| 9267 N. Canyon Heights Drive | | |
| Cedar Hills, Utah 84062 | | |
| cjbhtc89@gmail.com | | |

/s/ Samantha Ruiz